Party Name, Address, Telephone &
FAX Nos. & Email Address:
Ralph Sanders
1251 W Bishop
Santa Ana, CA 92703

RALPH E SANDERS
1251 W BISHOP
SANTA ANA, CA
92703

<div style="border:1px solid">
**FILED**

JUN 16 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk
</div>

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>RALPH E SANDERS<br><br><br>Debtor(s), | Case No.: 8:17-bk-10265 MW<br><br>Chapter : 7<br><br><br>Adversary No.: 8:17-AP-01068-mw<br>ANSWER<br>Title: DISCHARGEABILITY AND DISMISSAL<br>OF PENDING LAWSUITS |
| LARNITA PETTE<br>vs.<br>RALPH E SANDERS<br><br>Defendant(s). | ☐ No hearing<br>☐ Hearing<br>DATE:<br>TIME:<br>COURTROOM:<br>PLACE:  411 W Fourth St<br>              Santa Ana, CA 92701 |

COMPLAINT FOR DISCHARGABILITY AND DISMISSAL OF PENDING LAWSUITS
Ralph E. Sanders, as Defendant, Wherefore complains of Plaintiff's Larnita Pette Adversary Summons.

JURISDICTION AND VENUE

1. Admitted

2. Admitted

GENERAL ALLEGATONS

3. Admitted

4. Denied

The defendants Bankruptcy preparer failed to disclose that I was a beneficiary and Co-Trustee of the Bobbye Rives Trust(40,40a). I replied yes when asked by the Bankruptcy Trustee if I had received any Beneficiary funds because I was assured by my preparer that this information was included on my Bankruptcy forms. This has been amended on the Defendants Bankruptcy Petition under the direction of the USTP Bankruptcy Trustee Queenie K. Ng on May 5, 2017(41,42).

5. Denied

The defendants Bankruptcy preparer failed to disclose that I was a Beneficiary and Co-Trustee and that the Defendant had received an inheritance over $90,000 as a beneficiary even though he was emailed a schedule of what was done with the money from the inheritance(40,40a). The Defendant told the Bankruptcy Trustee when asked that Yes, I received at least $90,000. That would be conceiling and deliberate if the Defendant denied receiving beneficiary funds when asked and was shocked to find out that the inheritance information was not included by the preparer. The Bankruptcy Trustee directed me to go to the filing office and amend the Statement of Financial Affairs and it was amended on May 5, 2017.

Wherefore the Defendant seeks dismissal of the Plaintiff's claims on lines 4 and 5 due to Defendant's Statement of Financial Affairs being amended on May 5, 2017.

6. Admitted

This May 8, 2015 lawsuit is totally false and untruthful(7).  The Plaintiff's lawsuit states, "As an interested person on behalf of Bobbye Rives" (60).  This is a false statement and filing and should be dismissed due to the following facts:

A-Upon receiving her first beneficiary payment, the Plaintiff immediately sued the Estate Lawyer and the Co-Trustees(60) creating a conflict of interest between the Estate lawyer that the decedent had chosen to handle her estate and the Co-Trustees which the Decedent had chosen to handle her affairs.  The Estate lawyer had to resign because of the conflict of interest causing major delay's in the Co-Trustees trust work.  That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

B-Bobbye Rives Trust states that under no  circumstance can the trustors , daughter Larrnita Pette (the plaintiff) be a successor trustee(61).  The Plaintiff has made up the lawsuit because her mother (Bobbye Rives) will not let her control the trust and the Plaintiff is currently trying to remove the Co-Trustees that Bobbye Rives picked to handle her trust(62).  This is not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

C-Bobbye Rives passed from cardiac arrest due to coronary artery disease (63); admitted to Scripps Encinitas hospital on 8/24/2014 for a stomach infection called 'Clostridium Difficile' and had the symptoms of belly pain with tenderness until her death(64). Decedent was discharged to Las Villas de Carlsbad on 9/01/14(65) for recuperation when she passed on 9/14/14 due to Cardiac Arrest(63); not due to elder abuse, negligence, wrongful death by Co-Trustees, so the lawsuit she is trying to preserve has no evidence of wrong doing.  Just a made up story by the Plaintiff to try to cover her 'Unclean Hands' towards Bobbye Rives and to try to get more of Bobbye Rives money that Bobbye Rives left for the the Co-Trustees. This is not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

D- Deceased filed and received a temporary restraining order vs the Plaintiff(66) and was seeking a permanent order with the help of Adult Protective Services when she passed. Plaintiff admits on line 20 of her lawsuit that "That Plaintiff was removed from the home on July 22, 2014 pursuant to a temporary restraining order(67)." That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

E-Deceased was told by Adult Protective Services to file a restraining order vs Plaintiff(66). Plaintiff was also asked to leave the home under the urging of Adult Protective Services in 2011(68). That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

F-Plaintiff watched and did nothing to help her mother when Encinitas police strapped her mother to a gurney in her night gown, with her hands handcuffed above her head and forcible taken to Scripps mental unit for a three day psychological evaluation. The Plaintiff did nothing to stop the Encinitas police. The Plaintiff not only called the Encinitas police, but supported the Encinitas police actions(68). This was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

G-Plaintiff claims throughout her lawsuit that the decedent had, mental disabilities, impaired cognitive and physical impairment. Adult Protective Services and bank statements show that even at age 84, all bills were paid on time including house and Lexus paid off, house clean, and that she still cooked for herself(69). These false statements by the Plaintiff are not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

H-Letter from next door neighbors Ed and Jacinta Kirkman summary(70)

Wherefore the Defendant asks that lawsuit 37-2015-00015654-CU-PO-CTL be dismissed due to the Plaintiff's 'Unclean Hands' to the extent that the Plaintiff seeks equitable relief, the Plaintiff's inequitable conduct constitutes unclean hands therefore bars the granting of such relief to complaint/ petition herein.

7. Denied

Defendant knew nothing about Bankruptcy at this time, but Patrick Hosey did say that it might be  future option.

8. Admitted

9. Admitted

Defendant contested just one of the Plaintiff's 10 charges.

10. Denied

Defendant did not speak at the Mandatory Settlement Conference nor did the Defendant ask his attorney to speak for him in that regards.  Nothing was settled and my attorney  said the Plaintiff will never settle after the conference.  "you might want to consider Bankruptcy because she will never settle and she wants to make things hard for you."  Attorney Patrick Hosey began to have heart troubles and said he will have to resign soon. Attorney Hosey was sad because he felt her lawsuit was not truthful, that the Defendant could not afford to pay him anymore after paying him $28,000, that it would cost another $30 to 50,000 to defend me for a lawsuit that was not telling the truth.  Defendant owed both attorney's a total of $11,963 at that point.  Defendant knew nothing about filing Bankruptcy and was scared but attorney Hosey started urging me to do it. I had to research and find a bankruptcy lawyer.  Mr Vickers was chosen, but not to my knowledge had poor health(13).  Mr Vickers passed recently and his funeral was on 6/03/17.

11. Admitted

Plaintiff is willfully using malicious conduct to harm the Defendant and mislead the court by not stating that the Plaintiff's lawsuit 30-2016-00863391-PR-TR-CJC is a petition to remove the trustees; not just "a petition to remove for removal."  With $31,000 remaining to be distributed.  Transferring Bobbye Rives property to her husband's sister's and disbursing the final funds to the beneficiaries were the

only things left to do at that point.   The Plaintiff is holding up the other beneficiaries monies.  Bobbye Rives choose the trustees to honor her trust.  The Plaintiff's lawsuit is based on the  Plaintiff's statement, " as an interested person on behalf of Bobbye Rives."  The Plaintiff's petition for removal of the Co-Trustees is not in the interest of Bobbye Rives nor on behalf on her.

12. Admitted

It was a challenge of only one of the Plaintiffs 10 counts.

13. Denied

The Defendants BK filing was delayed by the health of the defendants BK preparer(13).  The Defendant is deceiving the courts as the Defendant did not stop the Plaintiff from filing an Expert Witness designation declaration on March 10th(13A). THE Plaintiff filed her lawsuit on May 8, 2015 and has made no effort to do D, or C before January 25,2017, and in almost two years has not performed her mentioned actions.  Now she is trying to blame the Defendants filing BK on January 25,2017 for not being able to do this.  Plus (according to plaintiff) the Plaintiff states on line 7 that the Defendant  was considering filing BK on January 20, 2016.  That provided a year for the Plaintiff's team to perform their discovery, Expert Witness Cutoff, and trial Readiness Conference.

14. Denied

See 4 and 5

15. Denied

A-Defendant was unemployed (as is the plaintiff) and had exhausted his savings with close to $100,000 in debt with increasing monthly medical and lawyer fees among other debts.

B-After paying $28,000 and still owing him an additional $9,000; Lawyer Patrick Hosey said it would cost an additional $30-50,000 if the case went to a full course trial and he knew defendant had exhausted his inheritance, with no employment. Attorney Hosey urged Defendant to file Bankruptcy.

C-Attorney Hosey expressed that the Plaintiff's lawsuit was willfully untruthful and not in the interest of Bobbye Rives as the Plaintiff claims. The Plaintiff was malicious in using 'Unclean Hands' vs, Bobbye Rives as proven by Adult Protective Services(151-154) and that the Plaintiff deserves no equitable relief, the Plaintiff's inequitable conduct constitutes Unclean Hands and therefore bars the granting of such relief to complaint/petition herein. Attorney Hosey did say bankruptcy might be away to stop the Plaintiff's false claims.

16.   Denied

Defendant did have 85557(16) in debt on 8/31/15, plus 11,463 and counting owed to lawyers(16). Defendant was doing a very good job of paying off debts a FICO score rose from 521 on 8/31/15 to the 690'S BY 9/16 and was scheduled to pay off more before the defendant was forced to hire a lawyer (immediate $10,000 retainer) to answer the Plaintiff's false lawsuit. Defendant could not pay anymore debts a little over another $20,000 was used to pay lawyers(16a). The Plaintiff is also not considering the Defendants living expenses and the right to vacation with Grandchildren, upgrade his home and car, etc. With his inheritance.

FIRST CLAIM OF RELIEF

17. Denied

There was no willful or malicious conduct.  The preparer had the information on the defendants inheritance(40,40a) and chart on what was done with the funds but did not include this information on the Bankruptcy forms.  The Bankruptcy Trustee asked the Defendant if he had received any inheritance and the Defendant replied Yes and that the amount was at least $90,000.  The Bankruptcy Trustee then told the defendant(41) to amend the Statement of Financial Affairs and it was amended on 5,05,17(42).

18. Denied

A. The defendants Statement of Financial Affairs has been has been amended to show the correct financial figures under the direction of USTP Queenie K Ng(41).  a mistake was made by the Defendants Bankruptcy preparer but the Defendant provided the correct answers when asked by the Bankruptcy Trustee who directed the Defendant to amend(41),, The filing would have been sooner but the preparer had emergency health issues a s stated in the following email(13)

B-The omission has now been included in the Bankruptcy petition because the Defendant told the Bankruptcy Trustee when asked that he had received an inheritance and how much(40,40a,41,42).  So we do pass the means test.

C-The Plaintiff is asking for 10 counts of relief; each with 3 separate calls for action.  That is a total of 30 different times Plaintiff states she is entitled to damage.  So there has to be an established amount. Compared to the $300,000 asked for by this Summons; $150,000 each is very fair to assume by the Defendant.  Plaintiff also desires relief for her Attorney fees.  The Plaintiff desires that the Defendant declare no personal liability amounts.  These personal liability amounts are necessary and justified to also handle future lawsuits by the Plaintiff towards the Defendant such as this one as well.  The Plaintiff is currently asking $300,000 for this Summons alone and it is only asking for two counts of relief.  This is the Plaintiff's third lawsuit vs the Defendant and the Defendant expects that there will be more lawsuits from the Plaintiff towards the Defendant in the future.

Wherefore the Defendant requests there must be a dischargeable 'personal liability' and the Plaintiff wants the Defendant to have no personal liability vs her two, now three lawsuits vs. The Defendant.

The Defendants $300,000 personal liability is more than fair for the following reasons:

- The Plaintiff's lawsuit is not "in the interest of Bobbye Rives'(60) as Plaintiff states for the following reasons. Featuring 'Unclean Hands' with the Plaintiff admitting, "Plaintiff was removed from Decedent's home on July 22, 2014 pursuant to a Temporary Protective Order and deceiving the courts by not stating the protective order was Adult Protective Services directed to protect the Decedent from the Plaintiff. Many false claims vs Decedent (her mother) mental capacity, and the Defendant.
- There has to be an established personal liability amount for the Defendant for the three lawsuits.

- The Defendants estimated $300,000 personal liability is very fair considering the Plaintiff has asked for $300,000 for two counts of action for relief in this Adversary Summons, while the Plaintiff's 37-2015-00015654-cu-po-ctl lawsuit has 29 times (plus lawyer fees were the Plaintiff states she is entitled to damages.

D-See C

E- See 16

Plaintiff has no idea of what defendants debts might be, employment status, living expenses, ongoing medical, and lawyers bills might be.

Wherefore Defendant seeks dismissal of Plaintiff's summons line 18E stating Defendant is ineligible to file for Chapter 7 Bankruptcy.

19. Denied

The Plaintiff has suffered no damage because there is no amount that is owed to her at this time. The Defendants financial statements have been amended per (USTP) Queenie K Ng request on 5/05/17. Plaintiff is asking for $300,000 for this Adversary Summons alone which is a by-product of the original lawsuit. The Plaintiff is asking for 10 counts of relief in lawsuit 37-2015-00-15654-CU-PO-CJC in San Diego Superior courts and also lawsuit 30-2016-00863391-PR-TR-CJC to remove the CO-Trustees. Both amounts consider counts of relief from future additional lawsuits by the Plaintiff towards the Defendant; a perfect example being this current Adversary Summons. The Plaintiff now wants $300,000 for this case alone.

Wherefore Defendant asks dismissal of Plaintiff's summons line 19 be dismissed as Defendants personal liability is very reasonable and dischargeable.

20. Denied

There is no willfully, maliciously, or deliberate intent to deceive the Plaintiff. As stated, the Defendants preparer failed to list the Defendants inheritance information. The Plaintiff was in court on March 23,2017 when Bankrupt Trustee Weneta M.A.Kosmala asked the Defendant if he had received any inheritance and the Defendant replied Yes. Bankrupt Trustee Weneta M.A.Kosmala then asked the Defendant what amount and the Defendant replied at least $90,000. Bankruptcy USTP Queenie K Ng instructed the Defendant to amend his Statement of Financial Affairs; amended on May 5th 2017.

SECOND CLAIM OF RELIEF

21. The Defendant adopts, incorporate by reference, and denies herein all of the allegations set forth in paragraph 1 through 20 inclusive, as if set forth individually in the Second Claim of Relief

22. Denied

With the Plaintiff present the Defendant under oath told Bankruptcy Trustee Weneta M.A.Kosmala and (USTP) Queenie k Ng when asked that he received an inheritance from the Bobbye Rives Trust and that the amount was at least $90,000(41,42)

The personal liability stated is the amount the Plaintiff is asking for relief on her Summons alone. 37-2015-00015654-CU-PO-CTL asks for 10 causes of action of each action has three separate causes. In all, the Plaintiff is asking for 30 possible awards of damage.

Wherefore the Defendant asks the court to dismiss line22 of the Plaintiff's Adversary Summons as the personal liability of the Defendant is very low figure

23. Denied

A- The Defendants Bankruptcy preparer did not include the Defendants inheritance information(40,40a). The Defendant did give the proper financial information to the Bankrupt Trustee when asked at the hearing on March 23,2017 and the Plaintiff was present(41). The Defendants financial information was amended on the Defendants Bankruptcy Petition under the direction of USTP Queenie K Ng on May 5, 2017.

B-The Plaintiff is willfully, deliberately, and maliciously harming and deceiving the court by stating that the debtor verbally affirmed under oath that his financial figures were true. The Plaintiff was there on March 23,2017 when the Bankruptcy Trustee asked the Defendant had he received an inheritance and the Defendant answered Yes. The Plaintiff was there when Bankruptcy Trustee Weneta M.A.Kosmala asked the Defendant the amount of the inheritance he received and the Defendant replied at leasts$90,000. USTP Queenie K. Ng directed the Defendant on May 3rd to amend his Statement of Financial Affairs and the Defendant did amend on May 5/ 2017(41,42).

Wherefore the Defendant asks the court to dismiss based on Plaintiff's attempts to deceive the court.

C-The inheritance and amount received have been amended and is now included in the Defendants Bankruptcy petition, the Defendants Bankruptcy petition does meet the means test.

D-The Plaintiff believes her relief on her current Adversary Summons vs the Defendant is $300,000 asking for two counts of relief. $150,00 is very reasonable considering the Plaintiff's 37-2015-000-15654 asks for 10 counts of relief with each count asking for three types of separate damages; making a total of 30 ways to claim damages. The Plaintiff has confirmed that the Defendants personal liability amounts are adequate by asking $300,000 to remove them. The Plaintiff asks the court for $300,000 in damages in line 19, then asks to court to determine the amount of damages on line 20.

Wherefore Defendant asks that this petition be dismissed in leu that there must be an established amount for the lawsuits and the Plaintiff has confirmed that $300,000 is the Defendant stated; $150,000 for each lawsuit.

E) SEE 16

24) Denied

Plaintiff believes she has suffered $300,000 in damages which is the same amount the Defendant has included in his personal liability for the Plaintiff's other two lawsuits vs the Defendant.  The Plaintiff was there on March 23rd when the Defendant said under oath that he had received an inheritance in excess of $90,000.

25) Denied

No deliberate or fraudulent acts were committed.  Under oath, the court and the Plaintiff were given all inheritance information on March 23rd and USTP Queenie K. Ng requested the defendant to amend the Defendants Statement of Financial Affairs(40,40a,41,42)

PRAYER FOR RELIEF

1 AND 2  Denied

Determining that the tentative debt of $150,00 owed the debtor to Plaintiff for each of the Plaintiff's lawsuit is very reasonable and necessary considering that the Plaintiff believes that she has suffered damages in the amount to be in excess of $300,000 for her current Adversary Summons alone; which is a by-product of lawsuit 37-2015-1564-CU-PO-CTL.  The Plaintiff's current Adversary Summons asks for $300,000 for two counts of relief while the Plaintiff's civil lawsuit asks for 10 counts of relief with three calls for damages for each count making a total of 30 ways to get relief for damages from this lawsuit.  The Defendants $150,000 personal liability includes the Plaintiff recovering lawyer fees.  The Plaintiff is actually requesting that there be no personal liability for the Defendant on her two, now three lawsuits.

Plaintiff is willfully deceiving the court by:

A-By asking the court to determine the amount of damages on line 20 but earlier stating on line 19 that she believes she has suffered $300,000 in damages.  The Plaintiff is using the same tactic throughout her lawsuit by repeatedly asking the court to determine the damage amount (like this one); but proof is here that the Plaintiff will seek much more than the $150,000 relief the Defendant has claimed as personal liability to the Plaintiff with 30 causes of action for relief

B-By trying to block the defendants claim of personal liability for a lawsuit that completely makes unjust claims vs the defendant to hide her 'unclean hands'. vs the Decedent.

Plaintiff will seek to use my admissions against me if she is successful as this is the Plaintiff's third lawsuit vs the Defendant over the natural death of her mother.

"Wherefore the defendant seeks dismissal of Plaintiff's complaint and that the Plaintiff recovers nothing."

# EXHIBITS



Q  All      ralph sanders, search your mailbox

🏠 Home   👤 ralph   ⚙

✏ Compose

◀ Search results   ◀  ◀◀  ▶   🗄 Archive   📁 Move ⌄   🗑 Delete ☰ Collapse All ⬆ More ✕

Add Gmail, Outlook, AOL
and more

Inbox (9)
Drafts (20)
Sent
Archive
Spam (26)
Trash (14)
⌄ Smart Views
    Important
    Unread
    Starred
    People
    Social
    Shopping
    Travel
    Finance
    for pops
    terrilynnvaughn7@gmai...
    LUIS VENTURA
    FOUNDATION GROUP
    dan kalili
    stephanie dufour
    jared eugene
    PATRICK HOSEY
⌄ Folders (6)
    it
    preschool le... (6)
> Recent

## Scanned document from HP ePrint user (5)

**eprintcenter@hp.com**   This email and attachment are sent on behalf   📎 11/15/16 at 12:03 PM

**ralph sanders** <resanders16@yahoo.com>                      📎 11/15/16 at 12:09 PM
To grady vickers

Hello Grady
The next two emails will show the amount and dates of the funds received from the trust and what
those funds were used for.

— On Tue, 11/15/16, eprintcenter@hp.com <eprintcenter@hp.com> wrote:

> From: eprintcenter@hp.com <eprintcenter@hp.com>
> Subject: Scanned document from HP ePrint user
> To: resanders16@yahoo.com
> Date: Tuesday, November 15, 2016, 11:34 AM
>
> This email and attachment are sent on behalf of
> resanders16@yahoo.com
>
> If you do not want to receive this email in future, you may
> contact resanders16@yahoo.com directly or you may
> consult your email application for spam or junk email
> filtering options.
>
> Regards,
> HP Team
>

filename-1.pdf

◀ Reply   ◀ Reply to All   ▶ Forward   ••• More

**ralph sanders**   This page shows what was done with the money. --- O   📎 11/15/16 at 12:16 PM

**ralph sanders**   Hello Grady. Here is an invoice from one of my lawyers   11/17/16 at 12:15 PM

**ralph sanders**   Hello Grady. Here is an invoice from one of my lawyers   11/17/16 at 12:15 PM

Max Me on flickr

June 15, 2017


Re:      Ralph E. Sanders
         1251 W. Bishop Street
         Santa Ana, California 92703

         **Ref.:    BK Case No. 8:17-bk-10265-MV**


To Whom It May Concern:

My husband, Grady Vickers prepared bankruptcy petition for the above referenced case number, but he made mistake with inherence for the referenced individual received due to his illness, kidney cancer when he filed the above refenced bankruptcy petition.

My husband passed away on May the 21st of this year.

Please let me know if you need further information.


Sincerely yours,



Kyung Vickers

  

Q All    ralph sanders, search your mailbox                                🏠 Home  👤 ralph  ⚙️

✉️ 🗂 📧 📧 📧 📧 📧      📨 Search results  ↩ ⏪ ➡   🗄 Archive   📁 Move ⌄   🗑 Delete ≡ Spam ⌄   ↗ More ⌄

✏️ Compose

Add Gmail, Outlook, AOL                   Sanders, Ralph E. 8:17-bk-10265 (9)                    Which of the
and more                                                                                       following pet food
                                                                                              have you heard
Inbox (12)            David M. Fitzgerald   Mr Sanders, Please be advised that your contin   📎 Apr 25 at 11:24 AM   of?
Drafts (20)                                                                                    SELECT UP TO 5
Sent                  Ng, Queenie K. (USTP)   Mr Sanders, Based on our telephone conver      📎 May 2 at 3.29 PM    ANSWERS
Archive
Spam (2)              ralph sanders   Thank you, Ralph Sanders                                📎 May 3 at 8:32 AM       Natural
Trash (12)                                                                                                          Balance

∨ Smart Views         Ng, Queenie K. (USTP) <Queenie.K.Ng@usdoj.gov>                          May 3 at 9:44 AM         Blue Buffalo
   Important          To ralph sanders
   Unread                                                                                                             Royal Canin
   Starred            Thank you.  Based on my discussion with the Ch. 7 trustee, I understand that we are still missing
   People             your property management agreement. In addition, will you be amending the Statement of         Hill's
   Social             Financial Affairs Item #5 to disclose all income received in the 2-year period prior to the bankruptcy   Science
   Shopping           (including the $98K trust proceeds and any and all income paid to you by Robbie Bobbye Housing  Diet
   Travel             Inc.) and Item # 27 to disclose your business (Robbie Bobbye Housing Inc.) and all the relevant
   Finance            information relating to the business?  If so, when will you file the amendment?                 Purina Pro
   for pops                                                                                                           Plan
   terrilynnvaughn7@gmai...    Did you receive any income from Robbie Bobbye Housing Inc. in 2015, 2016 and 2017?  If so,
   LUIS VENTURA       please provide all the information, including the amount you received and documentation to show the
   FOUNDATION GROUP   receipts for the foregoing period.
   dan kalili
   stephanie dufour   Thank you.
   jared eugene
   PATRICK HOSEY      Queenie K. Ng
                      Trial Attorney                                                                                Powered By Nielsen
∨ Folders (6)          Office of the United States Trustee                                                          View Privacy Policy
   it                 411 West Fourth Street, Suite 7160
   preschool le... (6) Santa Ana, California 92701                                                              ›
                      Telephone: (714) 338-3403
∨ Recent              Facsimile:   (714) 338-3421
                      Queenie.K.Ng@usdoj.gov


                      › Show original message


                      ↩ Reply    ↩ Reply to All   ➡ Forward   ••• More


                      ralph sanders   I can go amend Friday morning, I am so sorry that the      May 3 at 12:15 PM

                      Ng, Queenie K. (USTP)   Thank you                                          May 3 at 2:35 PM

                      Ng, Queenie K. (USTP)   I have the wrong judge name on page 1 of the       May 4 at 4:01 PM

                      ralph sanders   Hello. Sure. that is okay. I really appreciate you giving   May 4 at 10:45 PM

                      Ng, Queenie K. (USTP)   Thank you. I also need to change the title to      May 8 at 9:23 AM

42

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RALPH SANDERS<br>1251 W BISHOP<br>SANTA ANA, CA<br>92703 | FILED<br>MAY 05 2017<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:_____ Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>RALPH SANDERS<br><br><br><br><br><br>                                    Debtor(s) | CASE NO.: 8:17-BK-1L265(c)<br>CHAPTER: 7<br><br>**SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☐ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☐ Schedule A/B    ☐ Schedule C    ☐ Schedule D    ☐ Schedule E/F    ☐ Schedule G
☐ Schedule H    ☐ Schedule I    ☐ Schedule J    ☐ Schedule J-2    ☒ Statement of Financial Affairs
☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☐ Master Mailing List
☐ Other (*specify*) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date: 5-5-17    _____
                        Debtor 1 Signature

                        _____
                        Debtor 2 (Joint Debtor) Signature (if applicable)

**NOTE**: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015                              Page 1                      F 1007-1.1.AMENDED.SUMMARY

Debtor 1  **Ralph E. Sanders**
     First Name    Middle Name    Last Name

Case number (if known) _____

---

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**

Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☑ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) |
| **From January 1 of current year until<br>the date you filed for bankruptcy:** | ☑ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $ 0.00 | ☐ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $_____ |
| **For last calendar year:**<br>(January 1 to December 31, 2015 )<br>                     YYYY | ☑ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $ 20,858.00 | ☐ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $_____ |
| **For the calendar year before that:**<br>(January 1 to December 31, 2014 )<br>                     YYYY | ☑ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $ 32,269.00 | ☐ Wages, commissions,<br>bonuses, tips<br>☐ Operating a business | $_____ |

**5. Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security,
unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and
gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
☑ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) | Sources of income<br>Describe below. | Gross income from<br>each source<br>(before deductions and<br>exclusions) |
| **From January 1 of current year until<br>the date you filed for bankruptcy:** | RINESTRUST | $ 4X,680 | | $_____ |
| | RBHOUSE<br>(FOOD, GAS) | $ 3,200 | | $_____ |
| | | $_____ | | $_____ |
| **For last calendar year:**<br>(January 1 to December 31, 2016 )<br>                     YYYY | Unemployment | $ 2,568.00 | | $_____ |
| | _____ | $_____ | | $_____ |
| | _____ | $_____ | | $_____ |
| **For the calendar year before that:**<br>(January 1 to December 31, 2015 )<br>                     YYYY | Unemployment | $ 6,807.00 | | $_____ |
| | _____ | $_____ | | $_____ |
| | _____ | $_____ | | $_____ |

Debtor 1    Ralph E. Sanders
First Name    Middle Name    Last Name

Case number (if known)_____

---

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No

☐ Yes. Name the insurance company
    of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |
| _____ | _____ | $ _____ |

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☐ No

☑ Yes. Give specific information. ...........    BOBBYE RIVES TRUST    $ 98,600

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
    *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No

☐ Yes. Describe each claim. .................    $ _____

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☑ No

☐ Yes. Describe each claim. .................    $ _____

35. **Any financial assets you did not already list**

☑ No

☐ Yes. Give specific information............    $ _____

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here** .................................................................→    $_____49.00

---

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest in. List any real estate in Part 1.**

37. **Do you own or have any legal or equitable interest in any business-related property?**

☑ No. Go to Part 6.
☐ Yes. Go to line 38.

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

38. **Accounts receivable or commissions you already earned**

☑ No
☐ Yes. Describe.......    $ _____

39. **Office equipment, furnishings, and supplies**
    *Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☑ No
☐ Yes. Describe.......    $ _____

---

## Task

# REFERRAL NOTE

## Task

**Subject**             REFERRAL NOTE

**Case Note Type**

ASSAULT/BATTERY/MENTAL SUFFERING

NOTE: CL IS CURRENTLY AT SCRIPPS ENCINITAS ER, R/P NOT SURE IF CL WILL BE ADMITTED.

CL IS 83 Y/O AND LIVES WITH HER DTR S/A (LARNITA PETTE). CL WAS BROUGHT IN ON 51/50 TODAY. S/A CALLED THE POLICE AND SAID THE CL BIT HER. THE CL SAID SHE BIT THE S/A BECAUSE THEY GOT INTO AN ARGUMENT OVER THE S/A PREPARING SOMETHING FOR THE CL TO EAT AND THE S/A THREW THE FOOD AT THE CL, THEN HIT THE CL IN HER STOMACH, SAT ON THE CL AND THAT'S WHEN THE CL BIT HER. THE CL WOULD LIKE FOR THE S/A TO LEAVE BUT THE S/A IS THE CL'S ONLY DTR AND SHE HAS NO WHERE ELSE TO GO. R/P SAID CL WAS UPSET OVER THE WHOLE THING AND BEGAN CRYING. THE CL SAID SHE WAS NOT AFRAID OF THE S/A SHE WAS UPSET WITH HER. A PSYCH NURSE WILL BE SEEING THE CL. R/P SAID THE CL SEEMED A LITTLE PARANOID. THE CL WANTED TO GO HOME BECAUSE SHE THOUGHT THE S/A WOULD BE GETTING INTO HER THINGS AND MESSING UP HER HOME. R/P SAID THERE WERE NO VISIBLE INJURIES.

CL SAID HER DTR MOVED IN 2 YEARS AGO AFTER SHE LOST HER JOB. THE CL SAID SINCE THE DTR HAS BEEN THERE THE POLICE HAS BEEN TO HER HOME 4 TO 5 TIMES.

**Regarding**          Case for Bobbye Rives on Feb 16 2011

**Owner**              Shefali Dua

**Duration**                                    **Priority**           Normal

**Actual Start**       2/16/2011

**Due**                2/16/2011 4:00 AM

## Legacy Fields

**Legacy ID**          1,297,965             **Last Modified On**    2/16/2011

**Legacy Client ID**   154,190               **Last Modified By**

                                             **Last Modified By ID**  dmorris

## Notes

CL was tearful throughout conversation.

It appears that CL is her own decision maker and is able to self advocate.

SOCIAL SUPPORT:
Daughter/SA - Lamita 'Nita' Pette
Nephew – Ralph Sanders - 714/262-8378
Niece - Beverly
Neighbors

FINANCIAL:
CL states that she manages her own finances claiming "I can do it better than some" and informing CM that she just sent out checks for the "lights and gas."

CL declined to share income specifics

LEGAL:
CL reports that Ralph and Beverly are named MDPOA, DPOA$ co-agents. They are also Co-Successor Trustees.

CL states that she has an attorney but declined to share his/her information.

CIVIL RIGHTS & LANGUAGE:
CL speaks and understands English but declined to sign LND form. CR brochure explained and provided to CL.

PROTECTIVE ISSUE: FINANCIAL and MENTAL SUFFERING

CL states that ever since her husband passed away (1/2008) SA has been trying to take over. CL stated "I can do everything for myself except drive" and that SA would "do stuff behind my back" such as trying to get CL to change physicians and get her declared incompetent. SA would claim that CL "has mental problems...dementia."

CL spoke at lengths about SA's privileged life having gone to private school and obtaining a double major at UCLA which her parents paid for.

CL reported that SA had been living with her when, on 2/16/11, SA threw newly cooked bacon and eggs in CL's face. CL stated that the food was warm, not hot enough to burn her. CL reported having entered the kitchen where SA had been cooking breakfast. CL stated something about SA making breakfast for her too at which time SA stated that she was not obligated to make CL breakfast, called her a "nasty name" and threw the food in her face. SA then kicked CL in the right hip/thigh area. CL left the kitchen and was followed by SA. It was not clear to CM but somehow CL ended up on the ground with SA on top of her. SA would not let CL up so CL bit her on the shoulder. SA would not give CL the phone but called SDSO herself. Deputies arrived. CL claims that they were "nasty" to her and would only listen to SA. CL states that they "made a show" over the bite although CL stated she could have bit SA much harder and only bit hard enough to get her off. CL was taken to the hospital under 5150 and kept for 72 hours. While hospitalized, CL told the doctor what happened and stated that she did not feel safe in her home and that she wanted SA out. CL was D/C home on 2/19/11 and found SA in the process of moving out. CL changed the locks.

CL denies any recent abuse but states that SA called SDSO on 11/18/12. SA, two deputies and CL's neighbor (who has a key to CL's home) came over. SA claimed that she had been trying to get a hold of CL and was worried. She then tried to get SDSO to take CL to the hospital, claiming that CL cannot care for herself and is "delirious." CL's neighbor informed deputies that SA is not CL's guardian. Paramedics were called out and spoke with CL who told them she was not going anywhere, had no aches or pains and did not need to go to the hospital. CL was not taken in.

CL and SA spent Thanksgiving together and CL reports that it went fine.

CL has since obtained a statement from her attorney (which she did not share with CM). CL is to give this statement to deputies if SA calls them back out. CL did not say how the statement reads other than telling deputies "they'd better leave."

CL states that SA used to yell, curse and call her names but does not anymore. SA calls CL and "gets radical" on the phone talking about things she has heard (gossip). SA also comes over to CL's home "but she acts alright."

APS Case 8:17-ap-01068-MW    Doc 6    Filed 06/16/17    Entered 06/19/17 09:15:00    Desc
APS Assessment: Assessment for Bobby Rivers on 7/22/2014    Page 24 of 49

Page 5 of 7

information if
conserved or
potential for
conservatorship

POA

POAs, names of the
authorized agents,
and if APS received
copies

Criminal History

Document Criminal
History

Trust

Trust, name of
trustee and
successor trustee,
and if APS received a
copy

## Protective Issue

CT recalled in detail the series of events that have led up to the most recent abuse including abuse already investigated by APSS. CT reports her PCP sent out a HH SW and nurse, they both said the CT is fine but the CT's daughter told the CT she can't live alone anymore. CT said she is upset because her daughter wouldn't ever ask the CT what she needs help with, she would just do whatever she wants. CT reports she believes her daughter wants to be POA over the CT and put the CT away.

CT reports that on Sunday, she woke up at 9pm from a nap, went to the garage fridge for watermelon since she was hungry. CT saw a bright light in there coming from an electronic device she had never seen before (black iPhone). CT reports she has been recorded by her daughter in the past and she was worried it was another device like that. CT put the iPhone in her pocket. The CT's daughter saw the CT do this and chased the CT around in the garage and was tugging at the CT and her robe to try and get the phone back. CT reports she refused to give the phone back, there was a struggle and the CT reports her daughter bit her left arm and bruised her arm. CT reports she bit the SA to get the SA off her, but she never attacked the SA until the SA attacked first. CT reports she will always protect herself. CT reports she was held captive in the garage till 4am and not allowed food even though she begged to be let off the garage couch to eat.

CT agreed to go with APSS outside to call police and request and EPO with KO order.

APSS called LE. LE and PERT arrived in less then 5 minutes. Pert clinician Christine Davies assisted the deputies in obtaining the EPO and lock out order.

While the SA was moving out her items, the CT explained that the other night, earlier in the week, the SA came up to the bathroom door and met the CT at the bathroom door with a knife with a blade about 3-4 inches long with the blade pointed towards the ceiling. CT reports the SA mumbled something to the CT and walked away. CT reports this was very strange and she asked the SA what she said, but she did not hear what the SA said. CT reports there is a long history of the SA financially abusing her and her husband. CT reports the SA has stolen items around her house including pictures, the CT's husband's Flag from his memorial service, and other items from the home.

When LE and the SA left, the CT went next door and got her neighbor Ed. Ed reports he will assist the CT with getting food today and making sure the CT is safe. Ed was educated about the EPO and how to call 911 if the SA is seen near the CT's property. Ed agreed to be of assistance any way he can.

APSS agreed to come back the next day at 12:30 to assist the CT with completing TRO documents. APSS agreed to call her nephew Ralph to inform him of what has occurred. APSS called Ralph, he said he will come on Sunday to take the CT grocery shopping and he will take the CT to all medical appointments. Ralph was educated on the EPO. Ed volunteered to take the CT to get the TRO when it is needed, he has done a TRO before.

# Appointment
# In person contact

## Appointment

| | |
|---|---|
| **Subject** | In person contact |
| **Location** | |
| **Regarding** | 📷 APS Case for Bobbye Rives referred 7/23/2014 |

## Scheduling Information

| | | | |
|---|---|---|---|
| **Required** | 📷 Bobbye Rives | | |
| **Optional** | | | |
| **Start Time** | 8/12/2014 8:00 AM | **Duration** | 1 hour |
| **End Time** | 8/12/2014 9:00 AM | **All Day Event** | No |
| **Show Time As** | Completed | **Priority** | Normal |
| **Case Note Type** | Client In Person Contact | | |

APSS met with the CT at her home. APSS and CT discussed that the TRO was served. CT still wants to go to the Restraining Order hearing to obtain the Permanent Restraining Order. CT wants APSS to be present. APSS agreed to meet the CT at the court Friday morning. APSS and CT discussed her need for a caregiver. CT feels she can manage at home for right now, but may decide she wants a caregiver to come for one hour a day M-F. CT says her cousin is coming over this weekend and she has a caregiver, so she will discuss it with her cousin. CT said she did not like LivHome because she was unclear about the cost. APSS explained how billing from a care giving agency would work. CT was more open to hiring a caregiver. Please note, the CT's home is clean, the CT had good hygiene and appearance, and the CT has been cooking for herself safely. CT explained she does not want to be a burden on her nephew, so she may end up hiring a caregiver sooner then later.

## Notes

## Details

| | | | |
|---|---|---|---|
| **Owner** | 👤 Karen Dee | **Organizer** | 👤 Karen Dee |
| **Category** | | **Sub-Category** | |

Late Dates: 6/09-120, 5/09-120, 4/09-90, 3/09-60, 2/09-30
ACCOUNT TRANSFERRED OR SOLD; CHARGED OFF ACCOUNT

| B B | QUICKCLICK | 06/14 | 05/07 | $2600 | $0 | $0 | 77 | 1 | 0 | 14 | COLLECTION |
| | 811-11988 | | 01/14 | INST | $0 | | | | | | EF |

Late Dates: 2/14-30
CONSUMER DISPUTES - REINVESTIGATION IN PROGRESS; COLLECTION ACCOUNT

OTHER CREDIT HISTORY
*** NONE ***
PUBLIC RECORDS

| B B | WEST COVINA | **File Date:** 11/08 | **Plaintiff:** TEMPEST FINANCIAL SER |
| | **Docket #:** 8J02620 | **Amount:** $2,500 | **Action Type:** JUDGMENT |
| | **Source:** TU/EF | **Status Date:** --/-- | **Status:** JUDGMENT |

TRADE SUMMARY

| | # | BALANCE | HIGH CREDIT | PAYMENTS | PAST DUE |
|---|---|---|---|---|---|
| MORTGAGE | 0 | 0 | 0 | 0 | 0 |
| AUTO | 2 | 0 | 0 | 0 | 0 |
| EDUCATION | 17 | 68213 | 54757 | 194 | 0 |
| OTHER INSTALLMENT | 5 | 0 | 0 | 0 | 0 |
| OPEN | 4 | 11288 | 10800 | 9077 | 11288 |
| REVOLVING | 8 | 1166 | 500 | 23 | 1166 |
| OTHER | 8 | 4890 | 4804 | 0 | 4890 |
| TOTAL | 44 | 85557 | 70861 | 9294 | 17344 |

| SECURED DEBT | 0 | OLDEST TRADELINE | 10/99 |
| UNSECURED DEBT | 85557 | DEBT/HIGH CREDIT | 116% |

DEROGATORY SUMMARY

| CHARGE OFFS: | 5 | 30 DAYS: | 8 | INQUIRIES: | 1 |
| COLLECTIONS: | 13 | 60 DAYS: | 19 | MOST RECENT LATE: | undetermined |
| BANKRUPTCY: | 0 | 90 DAYS: | 18 | | |
| PUBLIC RECORDS: | 1 | OTHER: | 0 | | |

MORTGAGE SUMMARY

| | APPLICANT | CO-APPLICANT |
|---|---|---|
| # OF 30 DAY MTG DELINQ | 0 | |
| # OF 60 DAY MTG DELINQ | 0 | |
| # OF 90 DAY MTG DELINQ | 0 | |
| # OF INQUIRIES | 1 | |
| TRADELINE COUNT | 44 | |

INQUIRIES (LAST 120 DAYS)

| XP | B | 08/06/15 | CLARITY SERVICES INC | MISC |
| | | | TU HIGH RISK FRAUD ALERT | |

*** HIGH RISK FRAUD ALERT ***
2 - SANDERS, RALPH
AVAILABLE AND CLEAR

ALERT

1 - RALPH E SANDERS YOB: 1952
EXPERIAN OFAC NAME MATCHING SERVICE: NO MATCH FOUND UNLESS OTHERWISE INDICATED

SOURCE OF INFORMATION

1     EXPERIAN - PULLED ON: 08/31/15
      NAME: RALPH E SANDERS 572880683 DOB: 07/01/52
      NAME: SANDERS RALPH 572880683 DOB: N/A
      NAME: SANDERS RALPH 572880683 DOB: N/A
      SSN: 572880683
      ADDRESS: 1345 CABRILLO PARK DR, SANTA ANA, CA 92701-3160 - REPORTED 07/12 - 08/15
      ADDRESS: 1530 N VAN NESS AVE, SANTA ANA, CA 92706-3841 - REPORTED 08/06 - 09/12
      ADDRESS: 508 NORMANDY PL, SANTA ANA, CA 92701-5952 - REPORTED 10/09 - 07/10
      EMPLOYER: FULLERTON INTERFATH// - REPORTED 11/07
      EMPLOYER: MERCY HOUSE// - REPORTED 10/13

Q All     ralph sanders, search your mailbox                    🏠 Home   👤 ralph   ⚙

✏ Compose

Add Gmail, Outlook, AOL and more

← Search results   ← « →   🗄 Archive   📁 Move ∨   🗑 Delete ☰ Collapse All   ↑ More ∨

Inbox (18)

Drafts (20)

Sent

Archive

Spam (15)

Trash

⌄ Smart Views
  Important
  Unread
  Starred
  People
  Social
  Shopping
  Travel
  Finance
  for pops
  terrilynnvaughn7@gmai...
  LUIS VENTURA
  FOUNDATION GROUP
  dan kalili
  stephanie dufour
  jared eugene
  PATRICK HOSEY

⌄ Folders (6)
  it
  preschool le... (6)

> Recent

> Sponsored



**TruthFinder**
Type in Any Name, Wait 10
Seconds, Brace Yourself

## Hosey & Bahrambeygui, LLP Accounting (2)

**JMS** <jstieg@hbattorneys.com>                    11/14/16 at 11:02 AM
To ralph sanders
CC PLH

Good Morning Ralph,

I have reviewed the Hosey & Bahrambeygui, LLP invoices for the Sanders adv. Pette matter.  Please see the summary below:

Payments to H&B:
   07-14-2015 - $10,000
   10-16-2015 - $10,000
   03-03-2016 - $ 7,000

**TOTAL PAYMENTS:  $27,000**

**TOTAL AMOUNT INVOICED BY H&B:  $36,763.34**

Accordingly, the balance is $9,763.34

Please let me know if you have any questions or need additional information.

Sincerely,


Jennifer M. Rivera
Paralegal
Hosey & Bahrambeygui
Attorneys at Law, LLP
225 Broadway, Suite 1460
San Diego, CA 92101
619 231 0500
f) 619 238 1097
www.hbattorneys.com


*********************Confidentiality Notice************************

The information contained in this e-mail message is information protected by attorney-client and/or attorney-work product privileges.  It is intended for use of the individual named above and the privileges are not waived by virtue of this having been sent by e-mail.  If the person actually receiving this e-mail or any other reader of the e-mail is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or telephone and delete the original message.

> Show original message

↩ Reply   ↰ Reply to All   → Forward   ••• More


**ralph sanders**   Hello Luis, I hope you are doing well but busy. I do n...   11/17/16 at 6:52 PM


Max Ma on flickr

*Law Office of Luis E. Ventura*
*960 Cordova Drive*
*Chula Vista, CA 91910*

Invoice submitted to:
Ralph Sanders and Beverly Murray-Calcote

~~May 19, 2016~~ Sanders' Portion
November 29, 2016

INVOICE #      10464

Professional Services

| | Hrs/Rate | Amount |
|---|---|---|
| 5/2/2016 Review memoranda from L. Woodward re rescheduling MSC before Judge Bloom to 1pm on May 5; prepare memorandum to and review response from P. Hosey confirming me not to attend and re anticipated anti-SLAPP opposition | 0.10 250.00/hr | NO CHARGE |
| 5/3/2016 Review Register of Actions re Plaintiff's filing of anti-SLAPP opposition papers; prepare memoranda to and review responses from co-counsel re same and re errata re same; initial review of Pette declaration; review memoranda from and respond to P. Hosey re need for objecting to same and bases of objections; phone with attorneys Hosey and C. Albence re ideas re reply memorandum and re considerations re same; phone with opposing counsel's secretary, C. Stonehouse, re email | 1.20 250.00/hr | 300.00 |
| 5/4/2016 Prepare memorandum re balance of work for reply re anti-SLAPP motion and re options re same; research standing issue raised in opposition; phone with P. Hosey re standing and re additional arguments; phone with, review memoranda from and prepare response to R. Sanders re two letters at issue; phone with B. Calcote re same; phone with opposing counsel S. Blea re failure to serve opposition papers on me and effect of time crunch on reply | 2.50 250.00/hr | 625.00 |
| 5/5/2016 Prepare memorandum to R. Sanders re Sept. 2014 letter; phone conference with co-counsel re letters re anti-SLAPP motion and other issues re motion; research and prepare evidentiary objections; prepare memorandum to co-counsel re same and review response from Hosey; review memoranda from and prepare responses to co-counsel L. Woodward re TRO pleadings; phone with opposing counsel S. Blea re lack of service issues re opposition and his view that service on me not required; phone with B. Calcote re motion and possible bankruptcy filing; conference call with P. Hosey and R. Sanders re motion and possible bankruptcy filing | 6.20 250.00/hr | 1,550.00 |

Ralph Sanders and Beverly Murray-Calcote

| | Hrs/Rate | Amount |
|---|---|---|
| 5/6/2016 Phone with P. Hosey re considerations re proceeding with motion; phone calls, prepare memoranda to, and review responses from R. Sanders, C. Albence, and B. Calcote re same; research and prepare reply memorandum; finalize evidentiary objections; prepare memoranda to and review responses opposing counsel Blea re agreement re e-service, re service of Evidentiary Objections, and re they not in agreement with any additional time; prepare memoranda to and review responses from R. Sanders re 'hospital would have received letter from Rives' attorney, Russell Griffith' | 8.00 250.00/hr | 2,000.00 |
| 5/7/2016 Phone with and review memorandum from B. Calcote re Sept. 2012 letter; phone with P. Hosey re same; prepare memorandum to and phone with Sanders re same; prepare and finalize Reply Memorandum of P&A and Declaration re same; prepare memorandum to all counsel re same | 8.40 250.00/hr | 2,100.00 |
| 5/11/2016 Prepare and finalize memorandum to B. Calcote-Murray, R. Sanders, C. Albence, and P. Hosey re status of anti-SLAPP motion, court reporter re same, inherent risk motion can be denied, evidentiary objections re same, and re deciding on whether to file for bankruptcy with input from bankruptcy attorney; review Plaintiff's 'Response to Evidentiary Objections'; research same; review minute order re anti-SLAPP hearing moved to May 20; prepare separate memoranda to clients and to opposing counsel re same; review responses from Hosey, Sanders, and Calcote re same | 1.80 250.00/hr | 450.00 |
| For professional services rendered | 28.20 | ~~$7,025.00~~ |

Invoice limited to **$6000** total via email of May 19, 2016 per agreement that any fees in excess of $6000 may still be claimed in attorney fee motion if anti-SLAPP motion is successful.
$3000 of invoice to be paid by Murray-Calcote and **$3000** to be paid by Sanders.

| | |
|---|---|
| | $3000 |
| July 22, 2016 Pymt. | -$200 |
| Subtotal | $2800 |
| Aug. 25, 2016 Pymt. | -$ 300 |
| Subtotal | $2500 |
| Oct. 7, 2016 Pymt. | -$ 600 |
| Subtotal | $1900 |
| Nov. 14, 2016 Pymt. | -$ 200 |
| Subtotal | $1700 |
| **Balance** | **$1700** |


# CISCO
**CREDIT INFORMATION SERVICES COMPANY**

**Potential Score Improvement**

File#: **1790198**
Date: **8/31/2015**
Company: **AMERIFIRST FINANCIAL INC**


SCANNED BY
CREDIT ASSURE
A SERVICE OF CREDITXPERT INC

**Applicant: RALPH SANDERS**

|  | Experian | TransUnion | Equifax |
|---|---|---|---|
| Bureau Scores | 529 | 576 | 521 |
| **Potential Score Improvement** | **+22** | **+34** | **+40** |

# Credit Assure ™

Credit Assure™ looks for opportunities to help a borrower improve their credit score, typically by paying down balances.

CREDIT ASSURE BENEFITS

 Alerts you to opportunities you might have overlooked

Helps you approve more applicants

 Helps you make better offers and close more loans

Current scores (called bureau scores) are provided by the credit bureaus. Predicted scores (called potential scores) and score changes (called potential improvements or score improvements) are provided by CreditXpert Inc. ("CXI") and are not bureau or FICO scores or changes. Predicted scores and score changes simulated by CreditXpert(R) products are only estimates. CXI does not guarantee that scores from any other company will change by the same amount, in the same way, or at all, or that correcting credit report information will result in a score improvement. CreditXpert products are based on credit reports from the bureaus. CXI is not responsible for inaccurate results, including any due to incorrect, incomplete, or outdated credit report information or incorrect assumptions about the future. CXI is not a credit counseling or credit repair organization. CXI is not endorsed by Equifax, Experian, TransUnion or FICO.
THE FOREGOING IS NOT INTENDED TO PROVIDE OR IMPLY WARRANTIES OF ANY KIND. CREDITXPERT PRODUCTS ARE PROVIDED ON AN "AS IS" BASIS, AND CREDITXPERT INC. AND ITS DISTRIBUTORS DISCLAIM ANY AND ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, SYSTEM INTEGRATION, NON-INTERFERENCE AND/OR ACCURACY OF INFORMATIONAL CONTENT.
Copyright (c) 2000-2014, CreditXpert Inc. All rights reserved. CreditXpert(R) is a registered trademark of CreditXpert Inc.

# Scores

| Equifax (? | TransUnion (? | Experian (? |
|------------|---------------|-------------|
| bureau=EFX) | bureau=TU) | bureau=EXP) |

## FICO® SCORE 8 TIMELINE



| Nov 2015 | Jan 2016 | Mar 2016 | May 2016 | Jul 2016 | Sep 2016 | Nov 2016 | Jan 2017 |
|---|---|---|---|---|---|---|---|

Scores shown: 596, 601, 616, 616, 605, 605, 611, 611, 614, 638, 600, 641, 675, 675, 675, 655, 659, 659

## FICO® SCORE 8 INGREDIENTS

As of 3/25/2017

*FICO® Score takes into consideration the following categories of credit data.*

**Poor**

### Payment History
*Your history of paying bills on time*

*35% of a FICO Score*

You have **12** account(s) showing 30+ days late

**Fair**

### Amount Of Debt
*Your total amount of outstanding debt*

*30% of a FICO Score*

# Scores



| Equifax (? | TransUnion (? | Experian (? |
|---|---|---|
| bureau=EFX) | bureau=TU) | bureau=EXP) |

## FICO® SCORE 8 TIMELINE



581    619    638    647    647    636    645    643    683    681    690    670    670    669

Nov 2015    Jan 2016    Mar 2016    May 2016    Jul 2016    Sep 2016    Nov 2016

## FICO® SCORE 8 INGREDIENTS

As of 3/25/2017

*FICO® Score takes into consideration the following categories of credit data.*

**Poor**

### Payment History
*Your history of paying bills on time*

*35% of a FICO Score*

You have **12** account(s) showing 30+ days late

**Good**

### Amount Of Debt
*Your total amount of outstanding debt*

*30% of a FICO Score*

# Scores



| Equifax (? | TransUnion (? | Experian (? |
|---|---|---|
| bureau=EFX) | bureau=TU) | bureau=EXP) |

## FICO® SCORE 8 TIMELINE



| Nov 2015 | Jan 2016 | Mar 2016 | May 2016 | Jul 2016 | Sep 2016 | Nov 2016 |

## FICO® SCORE 8 INGREDIENTS

As of 3/25/2017

*FICO® Score takes into consideration the following categories of credit data.*

### Poor

### Payment History
*Your history of paying bills on time*

*35% of a FICO Score*

You have **5** account(s) showing 30+ days late

### Good

### Amount Of Debt
*Your total amount of outstanding debt*

*30% of a FICO Score*

🔍 All    ralph sanders, search your mailbox    🏠 Home    👤 ralph    ⚙

✏ Compose

Add Gmail, Outlook, AOL and more

Inbox (9)

Drafts (20)

Sent

Archive

Spam

Trash

˅ Smart Views

   Important

   Unread

   Starred

   People

   Social

   Shopping

   Travel

   Finance

   for pops

   temlynnvaughn7@gmai...

   LUIS VENTURA

   FOUNDATION GROUP

   dan kaliti

   stephanie dufour

   jared eugene

   PATRICK HOSEY

˃ Folders (5)

   it

   preschool le...    (6)

˃ Recent

Sponsored



**StantonDaily**
What Loni Anderson Looks
Like Now is Crazy

← Search results    ↑ ≪ →    🗄 Archive    📁 Move ˅    🗑 Delete ⋯ ⬒Spam All    ⬆ ⬇More˅

### [No Subject] (5)

**ralph sanders**  Hello Grady. I hope you are doing well. Just checking o    12/20/16 at 9:30 PM

**Grady B Vickers Jr** <grady@gtvproperties.com>    Jan 12 at 2:24 PM
To 'ralph sanders'

Hello Ralph,
I am sorry your BK has taken so long. Lately I have been overwhelmed with emergencies. Will see you soon.

Thank you,

GRADY B VICKERS, JR
CEO / PRESIDENT

GTV PROPERTIES INCORPORATED
19252 KANBRIDGE STREET
APPLE VALLEY, CALIFORNIA 92308-6070
760.240.7120  OFFICE
760.247.7198  FAX
760.964.1300  CELL

CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or if you are not responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail to, _____ or by telephone at, (760) 240-7120. Thank you

˃ Show original message

↩ Reply    ≪ Reply to All    → Forward    ••• More

**ralph sanders**  Hello Grady. Thank you for getting in contact. I pray th    Jan 12 at 6:19 PM

**ralph sanders**  Hello Grady. I pray you are doing well. Are things stabl    Jan 22 at 6:24 PM

**ralph sanders**  Hello Grady. 5 payments 01-05-16 $576 01-11-16 $728    Jan 23 at 9:56 PM

1    Daniel W. Abbott, Esq. (SBN 218334)
     Stephen D. Blea, Esq. (SBN 294339)
2    WITHAM MAHONEY & ABBOTT, LLP
     401 B Street, Suite 2220
3    San Diego, California 92101
     Telephone (619) 407-0505
4    E-Mail: abbott@wmalawfirm.com

5
     Attorneys for Plaintiff Larnita Pette
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN DIEGO

10                       CENTRAL DIVISION

11

12   LARNITA PETTE, as an interested person on      Case No. 37-2015-00015654-CU-PO-CTL
     behalf of BOBBYE RIVES (deceased); LARNITA
13   PETTE, as an individual.                       **PLAINTIFF LARNITA PETTE'S EXPERT
                                                     WITNESS DESIGNATION AND
14                                                   DECLARATION**

15                      Plaintiff,

16            vs.

17   BEVERLY    MURRAY-CALCOTE;    RALPH
     SANDERS; and DOES 1 through 50, inclusive,
18

19                      Defendants.

20

21

22        Plaintiff LARNITA PETTE, as an individual and as an interested person on behalf of BOBBYE

23   RIVES, pursuant to Code of Civil Procedure section 2034.260, hereby submits her list of expert

24   witnesses whose expert opinion she expects to offer in evidence at trial.

25   ///

26   ///

27   ///

28   ///

                                        1
     **PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION**

60

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED
Clerk of the Superior Court

MAY 0 8 2015

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BEVERLY MURRAY-CALCOTE; RALPH SANDERS; RUSSELL
GRIFFITH; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LARNITA PETTE, as an interested person on behalf of BOBBYE
RIVES (deceased); LARNITA PETTE, as an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* SAN DIEGO SUPERIOR COURT<br>330 West Broadway<br>San Diego, CA 92101 | **CASE NUMBER:**<br>*(Número del Caso):*<br>37-2015-00015654-CU-PO-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel W. Abbott, Esq. (SBN 218334), WITHAM MAHONEY & ABBOTT, LLP
101 B Street, Suite 2220, San Diego, CA 92101 (619) 407-0505

| DATE:<br>*(Fecha)* MAY 1 2 2015 | Clerk, by<br>*(Secretario)* B. Chandler | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 6-18-15

[SEAL]

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

herein then RALPH SANDERS and BEVERLY MURAY-CALCOTE shall serve as successor Co-Trustees. In the event either RALPH SANDERS or BEVERLY MURAY-CALCOTE are unable or unwilling to so serve, then the other shall as Successor Trustee. The Trustor may remove or designate alternate acting or Successor Trustees from time to time. Under no circumstances shall Trustor's daughter serve as a Successor Trustee.

2.3. <u>Personal Information</u>. The Trustor has one (1) child, namely LARNITA ANN PETTE (born June 25, 1949). Trustor is not married as of the making of this Trust, her husband having predeceased her.

## III. DISTRIBUTION OF INCOME AND PRINCIPAL DURING LIFETIME OF TRUSTOR.

3.1. <u>Payments to Trustor</u>: During the lifetime of the Trustor, the Trustee shall pay to or apply for the benefit of Trustor the net income of the Trust Estate in monthly or more frequent installments. If the Trustee considers the net income insufficient, the Trustee shall pay to or for the account of the Trustor as much of the principal as is necessary in the Trustee's discretion for the Trustor's proper health, education, support, maintenance, comfort, and welfare, in accordance with her accustomed manner of living at the date of this Instrument.

3.2. <u>Distribution at Direction of Trustor</u>: During the lifetime of the Trustor, the Trustor may at any time direct a Trustee in writing to pay single sums or periodic payments out of the Trust Estate to any other person or organization.

2

1  Daniel W. Abbott, Esq., SBN 218334
   Stephen D. Blea, Esq., SBN 294339
2  WITHAM MAHONEY & ABBOTT, LLP
   401 B Street, Suite 2220
3  San Diego, California 92101
   Telephone (619) 407-0505
4  E-Mail: abbott@wmalawfirm.com

5  Attorneys for Larnita Ann Pette,
   Petitioner
6

7

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

07/13/2016 at 04:59:52 PM

Clerk of the Superior Court
By Laura Ojeda, Deputy Clerk

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           IN AND FOR THE COUNTY OF ORANGE

10               CENTRAL JUSTICE CENTER

11  In The Matter of:                    Case No. 30-2016-00863391-PR-TR-CJC

12  THE BOBBYE J. RIVES TRUST            [ROA # _____ ]
13  dated November 30, 2011
                                         NOTICE OF LODGMENT OF DOCUMENTS
14                                       IN SUPPORT OF LARNITA PETTE'S
                                         PETITION TO REMOVE RALPH SANDERS
15                                       AND BEVERLY MURRAY-CALCOTE AS
                                         TRUSTEES, ET AL.
16

17                                       Date:   _____
                                         Time:   _____
18                                       Dept.:  _____
                                         Judge:  _____
19

20      Petitioner, Larnita Ann Pette ("Petitioner"), as a beneficiary of The Bobbye J. Rives Trust dated
21
22  November 30, 2011 ("Trust"), hereby lodges the following documents in support of her *Petition for*
23  *Order (1) Removing RALPH SANDERS & BEVERLY MURRAY–CALCOTE As Trustees; (2)*
24  *Surcharging RALPH SANDERS & BEVERLY MURRAY-CALCOTE; (3) Denying Trustee*
25  *Compensation To RALPH SANDERS & BEVERLY MURRAY-CALCOTE; (4) Instructing Co-Trustees*
26  *To Produce Further Information & Accountings; (5) Instructing Co-Trustees to Distribute Assets of the*
27  *Trust; (6) Enjoining RALPH SANDERS & BEVERLY MURRAY–CALCOTE From Further Acts as*
28

                                         1

**STATE OF CALIFORNIA**
**CERTIFICATION OF VITAL RECORD**

# COUNTY OF SAN DIEGO

3052014173584

**CERTIFICATE OF DEATH**

STATE FILE NUMBER

3201437014719

LOCAL REGISTRATION NUMBER

| 1. NAME OF DECEDENT—FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | | |
|---|---|---|---|---|
| BOBBYE | JEAN | RIVES | | |

| 4. AKA, ALSO KNOWN AS — (Include "AKA" FIRST, MIDDLE, LAST) | 5. DATE OF BIRTH mm/dd/ccyy | 6. AGE Yrs | IF UNDER ONE YEAR | IF UNDER 24 HOURS | 7. SEX |
|---|---|---|---|---|---|
| | 10/23/1927 | 86 | Months / Days | Hours / Mins | F |

| 8. BIRTH STATE/FOREIGN COUNTRY | 9. SOCIAL SECURITY NUMBER | 10. EVER IN U.S. ARMED FORCES? | 11. MARITAL STATUS | 12. DATE OF DEATH mm/dd/ccyy | 13. HOUR 24 Hrs |
|---|---|---|---|---|---|
| TEXAS | 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 | YES X NO | WIDOWED | 09/14/2014 | 0515 |

| 14. EDUCATION — Highest Level/Degree | 15. WAS DECEDENT HISPANIC/LATINO/SPANISH | 16. DECEDENT'S RACE | | | |
|---|---|---|---|---|---|
| HS GRADUATE | YES X NO | AFRICAN AMERICAN | | | |

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY | 19. YEARS IN OCCUPATION |
|---|---|---|
| HOMEMAKER | OWN HOME | 60 |

| 20. DECEDENT'S RESIDENCE (Street and number, or location) | | | | |
|---|---|---|---|---|
| 363 CERRO STREET | | | | |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| ENCINITAS | SAN DIEGO | 92024 | 60 | CALIFORNIA |

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number, or rural route number, city or town, state, ZIP code) |
|---|---|
| BERVERLY MURRAY-CALCOTE, NIECE DPOA | 3166 WEST AVENUE M-2, LANCASTER, CA 93536 |

| 28. NAME OF SURVIVING SPOUSE/SRDP—FIRST | 29. MIDDLE | 30. LAST BIRTH NAME |
|---|---|---|
| - | - | - |

| 31. NAME OF FATHER/PARENT—FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| ROBERT | BILL | SANDERS | TEXAS |

| 35. NAME OF MOTHER/PARENT—FIRST | 36. MIDDLE | 37. LAST BIRTH NAME | 38. BIRTH STATE |
|---|---|---|---|
| ELOISE | VERNON | | UNKNOWN |

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION MIRAMAR NATIONAL CEMETERY |
|---|---|
| 09/30/2014 | 5795 NOBEL DRIVE, SAN DIEGO, CA 92122 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CR/BU | ▶ DAVID MEITZLER | EMB9006 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| ETERNAL HILLS MORTUARY | FD234 | ▶ WILMA WOOTEN, MD | 09/23/2014 |

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| LAS VILLAS DE CARLSBAD | IP ER/OP DOA | X Nursing Home/LTC Decedent's Home Hospice Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number, or location) | 106. CITY |
|---|---|---|
| SAN DIEGO | 1088 LAGUNA DRIVE | CARLSBAD |

| 107. CAUSE OF DEATH | Enter the chain of events — diseases, injuries, or complications — that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time interval between onset and death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (A) CARDIAC ARREST | | MINS | YES X NO |
| (B) CORONARY ARTERY DISEASE | | YEARS | 109. BIOPSY PERFORMED? YES X NO |
| (C) | | | 110. AUTOPSY PERFORMED? YES X NO |
| (D) | | | 111. USED IN DETERMINING CAUSE? YES NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 | |
|---|---|
| NONE | |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? If yes, list type of operation and date. | 114. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| NO | YES X NO |

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since / Decedent Last Seen Alive | ▶ DANIEL MARK GIVEN M.D. | A121110 | 09/23/2014 |
| 09/09/2014 / 09/09/2014 | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE DANIEL MARK GIVEN M.D. 10666 N TORREY PINES RD, LA JOLLA, CA 92122 | | |

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 120. MANNER OF DEATH | 121. INJURY DATE mm/dd/ccyy | 122. HOUR 24 Hrs |
|---|---|---|---|
| MANNER OF DEATH: Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be Determined | YES NO | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 125. LOCATION OF INJURY (Street and number, or location, and city, and zip) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| ▶ | | ▶ |

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH # | CENSUS TRACT |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*010001002273762B*

County of San Diego –Health & Human Services Agency – 3851 Rosecrans Street. This is to certify that, if bearing the OFFICIAL SEAL OF THE STATE OF CALIFORNIA, the OFFICIAL SEAL OF SAN DIEGO COUNTY AND THEIR DEPARTMENT OF HEALTH SERVICES EMBOSSED SEAL, this is a true copy of the ORIGINAL DOCUMENT FILED. Required fee paid.

DATE ISSUED: September 26, 2014



WILMA J. WOOTEN, MD
REGISTRAR OF VITAL RECORDS
County of San Diego

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar

*A002772384*

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE





# FAQs
(frequently asked questions)

about
## "Clostridium Difficile"

*Clostridium difficile* [pronounced Klo-STRID-ee-um dif-uh-SEEL], also known as "*C. diff*" [See-dif], is a germ that can cause diarrhea. Most cases of *C. diff* infection occur in patients taking antibiotics. The most common symptoms of a *C. diff* infection include:

- Watery diarrhea
- Fever
- Loss of appetite
- Nausea
- Belly pain and tenderness

**Who are most likely to get a *C. diff* infection?**

The elderly and people with certain medical problems have the greatest chance of getting *C. diff*. *C. diff* spores can live outside the human body for a very long time and may be found on things in the environment such as bed linens, bed rails, bathroom fixtures, and medical equipment. *C. diff* infection can spread from person-to-person on contaminated equipment and on the hands of doctors, nurses, other healthcare providers and visitors.

**How is *C. diff* infection treated?**

, there are antibiotics that can be used to treat *C. diff*. In some severe cases, a person might have to have surgery to remove the infected part of the intestines. This surgery is needed in only 1 or 2 out of every 100 persons with *C. diff*.

**What are some of the things that hospitals are doing to prevent *C. diff* infection?**

To prevent *C. diff.* infections, doctors, nurses, and other healthcare providers:

- Clean their hands with soap and water or an alcohol-based hand rub before and after caring for every patient. This can prevent *C. diff* and other germs from being passed from one patient to another on their hands.
- Carefully clean hospital rooms and medical equipment that have been used for patients with *C. diff*.
- Use Contact Precautions to prevent *C. diff* from spreading to other patients. Contact Precautions mean:
  - Whenever possible, patients with *C. diff* will have a single room or share a room only with someone else who also has *C. diff*.
  - Healthcare providers will put on gloves and wear a gown over their clothing while taking care of patients with *C. diff*.
  - Visitors may also be asked to wear a gown and gloves.
  - When leaving the room, hospital providers and visitors remove their gown and gloves and clean their hands.

  - Patients on Contact Precautions are asked to stay in their hospital rooms as much as possible. They should not go to common areas, such as the gift shop or cafeteria. They can go to other areas of the hospital for treatments and tests.
- Only give patients antibiotics when it is necessary.

**What can I do to prevent *C. diff* infection?**

- Make sure that all doctors, nurses, and other healthcare providers clean their hands with soap and water or an alcohol-based hand rub before and after caring for you.

> If you do not see your providers clean their hands, please ask them to do so.

- Only take antibiotics as prescribed by your doctor.
- Be sure to clean your own hands often, especially after using the bathroom and before eating.

**Can my friends and family get *C. diff* when they visit me?**

*C. diff* infection usually does not occur in persons who are not taking antibiotics. Visitors are not likely to get *C. diff*. Still, to make it safer for visitors, they should:

- Clean their hands before they enter your room and as they leave your room
- Ask _____ _____ ____ _____ _____ _____tive gowns and gloves wh_____

**What ___ __ ___ ____ ____ ___ ___ _____**

Once ___ ___ ___ _____ ____ ___ rou-
tine. ___ ___ ____ ____ ___ before
you g___ ___ ___ __ ___ ___ _h less
likely ___ ___ ____ ___ ___ wer the
chan___ ___ ___ ____ ____ _g it to
othe___

- If ___ ___ ____ ____ ____ __edicine
  ex___ ____ ____ ___ ___ ___ o not take
  ha___
- W___ ____ ___ ___ ___ ___ throom
  ar___
- Pe___ ___ ___ ____ __ _n as well.
- If ___ ___ ___ ___ ___ _our doctor
  im___ ____ ___

- Your doctor may give you additional instructions.

**If you have questions, please ask your doctor or nurse.**

 SHEA

 IDSA

 American Hospital Association

APIC

 CDC

The Joint Commission



# Scripps

**PATIENT DISCHARGE / INTERFACILITY
TRANSFER INSTRUCTIONS**

RIVES, BOBBYE J
MRN:200251338    DOB: 10/23/1927 F/86
09/01/14    ACCT:102074264
KIM, JAMES T MD

SCRIPPS MEMORIAL HOSPITAL, ENCINITAS

**Nurse to complete asterisked items (*). Physician to complete shaded areas.**

*__Discharged to:__ ☐ Home ☐ Home with Home Health ☐ Acute Rehab ☐ Assisted Living ☐ Board and Care ☒ SNF
☐ Other: _____ Las villas de Carlsbad

*__Mode of transport:__ ☒ Auto ☐ Ambulance ☐ Wheelchair Transport ☐ Other _____

## Follow up Appointments

Primary Physician: Dr. Nali Cava ____ Call to be seen in 7 days, Phone: (619) 221 4492
Specialty Doctor Singfeng Pu ___ Reason cardiology ___ see in 14-21 days, Phone: (760) 230-6665
Specialty Doctor Jamieson Glenn ___ Reason ortho spine ___ see in 7-10 days, Phone: (760) 230-5188
Specialty Doctor _____ Reason _____ see in _____ days, Phone: _____

**Diet:** ☐ Regular ☒ Cardiac ☒ Diabetic ☐ 2gm Sodium ☐ Soft ☐ Other: _____
(Circle) Diet/swallow precautions or instructions:

## Activity:  No restrictions unless noted below

☐ May resume all normal activities in _____ (circle) days / weeks ( C. Diff precautions )
☐ No shower until _____ ☐ No bath until _____
☐ No lifting more than _____ pounds ☐ Weight bearing restriction: _____
☐ Until further instructed by MD, walk with ☐ Walker ☐ Crutches ☐ Other: _____
**Driving:** ☐ In _____ days ☐ when cleared by MD   **Work:** ☐ In _____ days ☐ when cleared by MD

**Labs:** ☐ PT/INR in _____ days ☒ Other labs/procedures: ✓ CBC + BMP in 3 days

*__Incision Instructions:__ Keep wound clean and dry ☐ Okay to leave open to air
*Notify surgeon for fever, chills, increased drainage, redness, and/or pain.

*__Wound Care:__ Pressure Ulcer Present: ☒ No ☐ Yes Stage/Location: _____
Instructions: _____

*__Other Information / Instructions:__ ☀ Do NOT Disclose ANY PT. info, except to it
Nephew - Ailah Sanders (714) 263-5378
If develop back pain, consider TLSO Brace

*__Immunizations given in hospital as applicable:__ ☐ Flu ☐ Pneumonia ☐ Date given: ( if known) _____

## Continuing Care

For: ☐ RN ☐ PT ☐ OT ☐ Speech ☐ Wound ☐ Other: _____
*Agency: _____ *Phone: _____
☐ **Infusion** of: _____ *Agency: _____ *Phone: _____
☐ **Equipment:** ☐ Oxygen at ___ liters/min *Agency: _____ *Phone: _____
Other equipment: _____ *Agency: _____ *Phone: _____

**Information to be completed for next caregiver/SNF** Report called to: (760) 434-4322
☒ SNF Accepting MD DR. Dennes Given   Care Navigator Name/# Diane Slayten, RN
Time of last meal: _____ Time of last pain medication: _____ ☐ Confused/ forgetful
Foley catheter inserted (date): _____ Incontinent: ☐ stool ☐ urine Last Bowel Movement: _____
Needs assist with: ☐ Bathing/dressing ☐ Eating ☐ Ambulation ☐ Other _____
Advanced Directive: ☐ No ☐ Yes ☐ Copy With Patient
Infection: ☐ MRSA ☐ C. Difficile ☐ VRE ☐ Other _____

| PHYSICIAN SIGNATURE | DATE/TIME | PATIENT SIGNATURE | NURSE SIGNATURE | DATE/TIME |
|---|---|---|---|---|
| [signature] | 9/6/14 @ 12:35 | X | W. Thompson RN | 9/6/14 |

☐ Belongings sheet reviewed with patient
☐ Discharge instructions/medications reviewed with patient/family and copies given.

PHOTOCOPY ON DISCHARGE
Page 1 of 2

*2DCIN*    Original: Chart   Copy: Patient   320-8720-807 (11/11)



| **EA-700** | **Request to Renew Restraining Order** |

---

① **Protected Elder or Dependent Adult**

a. Full Name: **Bobbye Jean Rives**

☐ Person requesting protection for the elder or dependent adult, if different *(person named in item ③ of Form EA-100)*:

Full Name: _____

Lawyer for person named above *(if any for this case)*:

Name: _____  State Bar No.: _____

Firm Name: _____

b. Your Address *(if you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.)*

Address: **363 Cerro St.**

City: **Encinitas**  State: **CA**  Zip: **92024**

Telephone: **18663999050**  Fax: _____

E-Mail Address: **->code: 7604362096#**

*Clerk stamps below when form is filed.*

*Court name and street address:*

**Superior Court of California, County of**
**San Diego Superior Court**
**North County Division**
**325 South Melrose Drive**
**Vista, CA 92081-662**

*Fill in case number:*

**Case Number:**
**37-2014-00024600-CU-PT-NC**

---

② **Restrained Person**

Full Name: **Larnita Ann Pette**

Address *(if known)*: _____

City: _____  State: _____  Zip: _____

---

③ **Request to Renew Restraining Order**

I ask the court to renew the *Elder or Dependent Adult Abuse Restraining Order After Hearing* (Form EA-130). A copy of the order is attached.

a. The order ends on *(date)*: **08-15-14**

b. ☑ This is my first request to renew the order.

  ☐ The order has been renewed _____ times.

c. I want the order to be renewed for ☑ five years ☐ permanently

d. I ask the court to renew the order because *(explain below)*:

  ☐ *Check here if there is not enough space for your answer. Attach a sheet of paper and write "Attachment 3d—Reasons to Renew Order" for a title. You may use Form MC-025. Attachment.*

  **Larnita Ann Pette is an ongoing threat to her mother.**

_____

_____

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶

_____
*Type or print your name*

_____
*Sign your name*

**This is not a Court Order.**

Judicial Council of California, www.courts.ca.gov
New January 1, 2012. Mandatory Form
Welfare and Institutions Code, § 15657.03(i)

**Request to Renew Restraining Order**
**(Elder or Dependent Adult Abuse Prevention)**

EA-700, Page 1 of 1



| **EA- 710** | **Notice of Hearing to Renew Restraining Order** |
|---|---|

Clerk stamps below when form is filed.

**(1) Protected Elder or Dependent Adult**

    a. Full Name: **Bobbye Jean Rives**

☐ Person requesting protection for the elder or dependent adult, if different *(person named in item (3) of Form EA-100)*:

Full Name: _____

Lawyer for person named above *(if any for this case)*:

Name: _____ State Bar No.: _____

Firm Name: _____

    b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail):*

Address: **363 Cerro St.**

City: **Encinitas** State: **CA** Zip: **92024**

Telephone: **18663999050** Fax: _____

E-Mail Address: **->code: 7604362096#**

*Court name and street address:*

**Superior Court of California, County of**

**San Diego Superior Court**
**North County Division**
**325 South Melrose Drive**
**Vista, CA 92081-662**

*Fill in case number:*

**Case Number:**
**37-2014-00024600-CU-PT-NC**

**(2) Restrained Person**

Full Name: **Lamita Ann Pette**

Address *(if known)*: _____

City: _____ State: _____ Zip: _____

**To the Restrained Person:**

**(3) Court Hearing**

The judge has set a court hearing date. *Court will fill in box below.*

**The current restraining order stays in effect until the end of the hearing.**

Name and address of court if different from above:

| **Hearing Date** → | Date: _____ Time: _____ | _____ |
|---|---|---|
| | Dept.: _____ Room: _____ | _____ |

At the hearing, the judge can renew the current restraining order for up to another five years or make it permanent. You *must* continue to obey the current restraining order until the hearing. At the hearing, you can tell the judge if you do not want the order against you renewed. If the restraining order is renewed, you *must* obey the order even if you do not attend the hearing.

If you wish to make a written response to the request to renew the restraining order, you may fill out Form EA-720, *Response to Request to Renew Restraining Order.* File the original with the court before the hearing and have someone age 18 or older—**not you**—mail a copy of it to the person in (1) at the address in (1) at least _____ days before the hearing. Also file Form EA-250, *Proof of Service of Response by Mail,* with the court before the hearing.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
New January 1, 2012, Mandatory Form
Welfare and Institutions Code, § 15657.03(s)

**Notice of Hearing to Renew Restraining Order**
**(Elder or Dependent Adult Abuse Prevention)**

**EA-710**, Page 1 of 2

→

1  wellbeing.  Specifically, on or about November 30, 2011, SANDERS and MURRAY-CALCOTE

2  (collectively, "DEFENDANTS") were (1) granted Durable Power of Attorney over DECEDENT; (2)

3  named as Co-Trustees of DECEDENT'S Trust; and (3) named as Co-Executors of DECEDENT'S will.

4  In addition, on or about November 30, 2011, MURRAY-CALCOTE was appointed as DECEDENT'S

5  Healthcare Agent pursuant to an Advance Health Care Directive.

6      17.    During this period, DECEDENT was 84 years old, suffering from dementia and was

7  unable to sufficiently care for her own wellbeing.  DEFENDANTS, through undue influence, took

8  advantage of DECEDENT'S impaired cognitive state to gain control of DECEDENT'S immediate

9  finances.  Furthermore, Plaintiff is informed and believes, and on that basis alleges, that both

10  DEFENDANTS manipulated DECEDENT to be named Co-Trustees of DECEDENT'S Trust and gain

11  control over the Trust's property.

12      18.    PLAINTIFF is informed and believes, and on that basis alleges, that DEFENDANTS,

13  pursuant to the DPA and Advance Healthcare Directive, had a legal, fiduciary duty to make decisions

14  that were in DECEDENT'S best interest.  Furthermore, PLAINTIFF is informed and believes, and on

15  that basis alleges, that DEFENDANTS failed to provide minimal caregiver services to DECEDENT after

16  July 22, 2014, when PLAINTIFF was no longer living with and providing the routine caregiver services

17  DECEDENT required to maintain her health and safety.  After July 22, 2014, DECEDENT depended on

18  DEFENDANTS to provide DECEDENT a minimum standard of care and ensure DECEDENT'S living

19  conditions were maintained.

20      19.    Despite DECEDENT'S cognitive and physical impairments, SANDERS flatly refused to

21  acknowledge PLAINTIFF'S admonitions that DECEDENT could not live by herself.  While MURRAY-

22  CALCOTE did acknowledge that DECEDENT should not be living alone, neither SANDERS nor

23  MURRAY-CALCOTE took any affirmative steps to ensure DECEDENT received the assisted living

24  care she needed.

25      20.    PLAINTIFF is informed and believes, and on that basis alleges, that DEFENDANTS took

26  control over DECEDENT'S health care and were ultimately responsible for making decisions pertaining

27  to DECEDENT'S medical care after PLAINTIFF was removed from DECEDENT'S home on July 22,

28  2014 pursuant to a Temporary Protective Order.

FIRST AMENDED COMPLAINT

## Task

# FACE TO FACE

## Task

**Subject**                    FACE TO FACE

**Case Note Type**

INITIAL FACE TO FACE AASSESSMENT
UHV to Mercy Hospital BHU and performed initial assessment.
referral date: 02/02/11
RP Contact: 2/15/11
First face to face: 2/18/2011

Report initially attempted as a NIFFI as ST was involved and assisting in stabilizing the situation. Reassigned for face to face follow-up as the Clt. was allegedly assaulted and now wants the SA removed.

Clt. description: Clt. is an alert and seemingly oriented 82 year old, African American female, who was clean and groomed, in a nightgown and bathrobe. Clt. is hard of hearing and wears mal functioning hearing aids. Communicated appropriately by raising voice.
Environment: Met alone with Clt. in a private room at the BHU at mercy Hospital in Hillcrest. Clt. reports she has been there for two days, resides with her daughter Lamita "Nitta" (SA) in Encinitas.
Medical: Clt. ambulates appropriately and appears to be healthy. Did not discuss her medical diagnosis', needs or treatment at this time.
Mental: Clt. was alert and oriented, was a sequential historian, and at first contact did present with apparent mental health or emotional distress. Clt. was 51/50 to the BHU as she attacked and bit the SA leading to police involvement. Clt. reports she will be released to home tomorrow. She became somewhat tearful when she described her relationship with the SA, but appears able to make decisions independently. Clt. has recently received ST intervention for similar allegations re: her volatile relationship with the SA.
Social Support Systems: Clt. states she resides with Lamita, (SA) who provides inadequate care and is abusive to her. Clt. reported she has a sister, who is an MD, in the LA area, a nephew (RP), and a friend and neighbor, all of which are supportive and understand her plight.
Financial: Clt. clearly stated that she manages all her monies independently and securely, and has made sure the SA has no access to her funds. Clt. was concerned that the SA might steal from her while she is hospitalized, but denied ever being defrauded by her in the past.
Legal: did not discuss POA, decision making trees, or any other legal aspect at this time.
Protective Issue: Assault and Battery, verbal and emotional abuse, financial abuse:
Clt. was referred for physical abuse. Clt. reported that the SA became hostile after the Clt. had complained that the SA had not made her breakfast, and after she threw the SA's food from the counter where it was located. Clt. reports the SA picked up the food, threw it in her face, pushed her down and held her by the arms, pining her down. Clt. states that she bit the SA on the shoulder, trying to push her off as she weighs over 200 lbs. It seems the SA ran upstairs and contacted the police who arrived on the scene and 51/50 the Clt.
Financial abuse: RP stated that SA had taken money from the Clt. over the years, but was uncertain and had no actual details as to how exactly she was financially abusing the Clt. Clt. herself denied any type of financial abuse as she stated the SA has never had access to her monies. Clt. is currently concerned that the SA is alone in the house and could get into her accounts and personal information.
Verbal abuse: Clt. stated that the SA often "cusses" and "swears" at her and tearfully recounted the many altercations she has had with the SA in the past. Clt. stated the SA is very well educated but described her as "mean and nasty". Clt. seems quite able to verbally counteract any abuse and did not appear to be easily intimidated.

Plan: Clt. stated she has had enough from the SA and wanted her removed from her home. Did not explore alternatives for care with Clt. at this time, as it is uncertain when she will actually be discharged and to where. Explained to Clt. that APSS Paul Downey would follow-up with APS investigation. Clt. clearly stated she would allow exchange of information with her nephew as well as her sister. She also allowed discussion with the BHU personnel.
Met with SW Patricia, who stated that given the allegations and concerns for her safety, it was unlikely the Clt. would be

# Appointment
# In person contact

## Appointment

| | |
|---|---|
| **Subject** | In person contact |
| **Location** | |
| **Regarding** | APS Case for Bobbye Rives referred 7/23/2014 |

## Scheduling Information

| | | | |
|---|---|---|---|
| **Required** | Bobbye Rives | | |
| **Optional** | | | |
| **Start Time** | 8/12/2014 8:00 AM | **Duration** | 1 hour |
| **End Time** | 8/12/2014 9:00 AM | **All Day Event** | No |
| **Show Time As** | Completed | **Priority** | Normal |
| **Case Note Type** | Client In Person Contact | | |

APSS met with the CT at her home. APSS and CT discussed that the TRO was served. CT still wants to go to the Restraining Order hearing to obtain the Permanent Restraining Order. CT wants APSS to be present. APSS agreed to meet the CT at the court Friday morning. APSS and CT discussed her need for a caregiver. CT feels she can manage at home for right now, but may decide she wants a caregiver to come for one hour a day M-F. CT says her cousin is coming over this weekend and she has a caregiver, so she will discuss it with her cousin. CT said she did not like LivHome because she was unclear about the cost. APSS explained how billing from a care giving agency would work. CT was more open to hiring a caregiver. Please note, the CT's home is clean, the CT had good hygiene and appearance, and the CT has been cooking for herself safely. CT explained she does not want to be a burden on her nephew, so she may end up hiring a caregiver sooner then later.

## Notes

## Details

| | | | |
|---|---|---|---|
| **Owner** | Karen Dee | **Organizer** | Karen Dee |
| **Category** | | **Sub-Category** | |

Date: July 12th 2015

To whom it may concern:

From: Edward and Jacinta Kirkman

359, Cerro Street, Encinitas CA, 92024

Telephone: 858 480 9013

email: edward.c.kirkman@gmail.com

Ed and Jacinta Kirkman, with three of their children, moved in next door to John and Bobbye Rives in October, 1999.

John and Bobbye were friendly and considerate neighbors.

John Rives died in January 2008. It was at the funeral of John that we first met Ralph Sanders and Larnita Pette. It was at this first meeting with Larnita that she told me it should have been her mother who died, not her father. I put this down to grief, but subsequent behavior has suggested something more deep rooted.

Over time Bobbye's daughter Larnita moved down from Northern California and stayed with her mother.

The relationship was a stormy one and in November 2012 we were very upset to see Bobbye taken away in her nightgown, her hands handcuffed above her head, and strapped to a gurney by Encinitas police. Apparently Larnita had arranged for Bobbye to be forcibly taken to Scripps mental unit for a three day psychological evaluation. When Bobbye came home she told us that the psychiatrist had told her that her mental health was fine, but that Larnita was a danger to her, and that Larnita should not be in the same house. Of course Bobbye was very upset and shocked. Bobbye asked Larnita to leave her house and changed all the locks.

By April 2013 Larnita had started coming around to visit Bobbye again, and over the summer moved back in to her mother's home.

During this time Ralph Sanders and Beverly Calcote were frequently in contact with us regarding Bobbye's welfare. Unfortunately, as I had suffered a heart attack and did not wish to be aggressively confronted by Larnita regarding Bobbye, we rarely went into Bobbye's home.

In March 2014, Bobbye's water heater failed and Larnita asked me to tell Bobbye that she had to call a plumber. At this stage Bobbye had become quite frail.

In July 2014, Bobbye told us that Larnita had been arrested. Adult protective services were involved and a TRO was granted against Larnita, who was again removed from Bobbye's house. After this event Bobbye said she wanted to sell her house and go into assisted living.

Ralph and Beverly made frequent calls to us and visits to Bobbye over the next month, but Bobbye was distraught over Larnita's behavior towards her, especially as she told us she still loved Larnita, despite everything. The ongoing problems between Bobbye and Larnita were clearly very detrimental to Bobbye's well-being, they played on her mind continuously, and despite repeated attempts by Adult Protective Services, Ralph, and Beverly to help, Bobbye's outlook did not improve.

In early September 2014 Jacinta received a call from Beverly to say she thought Bobbye was unwell and asking us to go and check on Bobbye while Beverly drove down to Encinitas.

When we got access, we found Bobbye on a couch in her garage looking very sick. She told us that she had caught a gastric bug over the weekend. We called Emergency services and Bobbye was taken to a local hospital. Other than two visits to the hospital, this was the last time we saw Bobbye, because about two weeks later Ralph called us to say that unfortunately, during rehabilitation, Bobbye had died.

Over this whole episode we found Beverly and Ralph to always have done whatever they could to help their Aunt, driving long distances and making frequent calls and visits.

We were completely amazed by the Law Suit brought by Larnita Pette, as despite all her attempts, she was never able to provide the support that Bobbye needed, and has now chosen to make completely unjust claims against Ralph and Beverly.


Yours sincerely,

Edward C. Kirkman

Jacinta M. Kirkman

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled (*specify*): _ANSWER_ _DISCHRGEABLE_ _AND_ _DISMISSAL OF PENDING LAWSUITS_ _____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _6 - 16 - 2017_ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed. _PLAINTIFF LARNITA PETTE_ _2588 EL CAMINO REAL, CARLSBAD, CA 92008_ _PRESIDING JUDGE: HONORABLE MARK S WALLACE_ _RONALD REAGAN FEDERAL BUILDING & COURTHOUSE_ _411 S 4TH, # 6135  SANTA ANA  92701_

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _6-16-2017_ | _CINDY FAWVER_ | _Cindy Fawver_ |
|---|---|---|
| **Date** | **Printed Name** | **Signature** |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**