ORIGINAL

Ralph E Sanders
1251 W Bishop
Santa Ana, CA 92703

FILED

AUG 14 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DIVISION OF CALIFORNIA
### SANTA ANA DIVISION

In re

Ralph E Sanders

Debtor's

Plaintiff(s)

Larnita Pette
Vs.

Ralph E Sanders

Defendant(s)

Case No.8:17 AP 10265-MW

Chapter:  7

17-01068-MW

Adversary No: 8:17-AP-04068-MW

TITLE: **ANSWER DSCHARGEABILITY AND
DISMISSAL
OF PENDING LAWSUITS**

:

No Hearing
Hearing

DATE:
TIME:
COURTROOM PLACE:
411 W Fourth St.
Santa Ana, CA 92701

COMPLAINT FOR DISCHARGE AND DISMISSAL OF PENDING LAWSUITS.

Ralph E Sanders, as Defendant complains of Plaintiff's Larnita Pette Adversary Summons.
Wherefore the Defendant believes and asks the courts to dismiss the Plaintiff's evil made up
LAWSUIT and allow the Defendants discharge and dismissal of the Plaintiff's two pending and
future lawsuits vs. the Defendant.   Plaintiff offers no evidence of when, where, how, the defendant
did wrongful death, elder abuse and Adult Protective Services records show and prove that the
Plaintiff was abusing her mother including an EPO by Encinitas Sheriff's vs the Plaintiff, so there is
no defamation of character.   The Plaintiff has not been harmed.

This May 8, 2015 lawsuit is totally false and untruthful.  The Plaintiff's lawsuit states, "As an interested person on behalf of Bobbye Rives" (21a).  This is a false statement and filing and should be dismissed due to the following facts:

A-Upon receiving her first beneficiary payment, the Plaintiff immediately sued the Estate Lawyer and the Co-Trustees (21) creating a conflict of interest between the Estate lawyer that the decedent had chosen to handle her estate and the Co-Trustees which the Decedent had chosen to handle her affairs.  The Estate lawyer had to resign because of the conflict of interest causing major delay's in the Co-Trustees trust work.  That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

B-Bobbye Rives Trust states that under no circumstance can the trustors, daughter Larrnita Pette (the plaintiff) be a successor trustee(22b).  The Plaintiff has made up the lawsuit because her mother (Bobbye Rives) will not let her control the trust and the Plaintiff is currently trying to remove the Co-Trustees that Bobbye Rives picked to handle her trust.  This is not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

C-Bobbye Rives passed from cardiac arrest due to coronary artery disease (8b); admitted to Scripps Encinitas hospital on 8/24/2014 for a stomach infection called 'Clostridium Difficile' and had the symptoms of belly pain with tenderness until her death(8b1). Decedent was discharged to Las Villas de Carlsbad on 9/01/14 for recuperation when she passed on 9/14/14 due to Cardiac Arrest(8b); not due to elder abuse, negligence, wrongful death by Co-Trustees, so the lawsuit she is trying to preserve has no evidence of wrong doing.  Just a made up story by the Plaintiff to try to cover her 'Unclean Hands' towards Bobbye Rives and to try to get more of Bobbye Rives money that Bobbye Rives left for the the Co-Trustees. This is not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

D- Decedent filed and received a temporary restraining order vs the Plaintiff (6) and was seeking a permanent order with the help of Adult Protective Services when she passed. Plaintiff admits on line 20 of her lawsuit that "That Plaintiff was removed from the home on July 22, 2014 pursuant to a temporary restraining order." That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

E-Deceased was told by Adult Protective Services to file a restraining order vs Plaintiff (6). Plaintiff was also asked to leave the home under the urging of Adult Protective Services in 2011(3). That was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

F-Plaintiff watched and did nothing to help her mother when Encinitas police strapped her mother to a gurney in her night gown, with her hands handcuffed above her head and forcible taken to Scripps mental unit for a three day psychological evaluation. The Plaintiff did nothing to stop the Encinitas Police. The Plaintiff not only called the Encinitas police, but supported the Encinitas police actions (3). This was not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

G-Plaintiff claims throughout her lawsuit that the decedent had, mental disabilities, impaired cognitive and physical impairment. Adult Protective Services and bank statements show that even at age 84, all bills were paid on time including house and Lexus paid off, house clean, and that she still cooked for herself (8-1). These false statements by the Plaintiff are not in the interest of Bobbye Rives nor on behalf of Bobbye Rives.

H-Letter from next door neighbors Ed and Jacinta Kirkman summary(22)

Wherefore the Defendant asks that lawsuit 37-2015-00015654-CU-PO-CTL be dismissed due to the Plaintiff's 'Unclean Hands" to the extent that the Plaintiff seeks equitable relief, the Plaintiff's inequitable conduct constitutes unclean hands therefore bars the granting of such relief to complaint/ petition herein.

JURISDICTION

1. Admitted
2. Admitted


STATEMENTS OF FACT

3. Denied

Defendant was unemployed (as is the plaintiff) and had exhausted his savings with close to $100,000 in debt with increasing monthly medical and lawyer fees among other debts. After paying $28,000 and still owing an additional $9,000; lawyer Patrick Hosey said it would cost an additional $30-50,000 if the case went to a full course trial and he knew defendant had exhausted his inheritance, with no employment so he urged Defendant to file Bankruptcy. He expressed that the Plaintiff's lawsuit was willfully untruthful and not in the interest of Bobbye Rives as the Plaintiff states. The Plaintiff was malicious in using 'Unclean Hands' vs Bobby Rives as proven by Adult Protective Services (3,3a,). Attorney Hosey did say bankruptcy might be away to stop the Plaintiff's false claims when the lawsuit accuses the Defendant of what she did and offers no evidence that the defendant did anything harmful to the decedent.

Wherefore the Plaintiff deserves no equitable relief. The Plaintiff's malicious conduct constitutes unclean Hands and therefore bars the granting of such relief to complaint/ petition herein.

4. Denied

The defendants Bankruptcy preparer failed to disclose that the defendant was a beneficiary and Co-Trustee of the Bobbye Rives Trust even though the defendant emailed the preparer a schedule of what was done with the trust funds received(4,4a). I replied yes when asked by the Bankruptcy Trustee if I had received any Beneficiary funds because I sent this information to the preparer. This has been amended on the Defendants Bankruptcy Petition under the direction of the USTP Bankruptcy Trustee Queenie K. Ng on May 5, 2017(4,4a,4b)

5. Denied

The preparer did not disclose that I was a Beneficiary and Co-Trustee and that the Defendant had received an inheritance over $90,000 as a beneficiary even though he was emailed a schedule of what was done with the money from the inheritance (5,6). The Defendants Bankruptcy Trustee when asked that yes, I received at least $90,000. That would be concealing and deliberate if the Defendant denied receiving beneficiary funds when asked and I am not sure why the preparer did not include it. The Bankruptcy Trustee USTP Queenie k. Ng directed me to go to the filing office and amend the Statement of Financial Affairs and it was amended on May 5, 2017(5,5a).

Wherefore the Defendant seeks dismissal of the Plaintiff's claims on lines 4 and 5 due to the Defendant's Statement of Financial Affairs being amended on May 5, 2017.

6. Admitted

6a. Denied

Temporary TRO had been approved (6). Bobbye Rives was born in 1927, so she was 84 years old in 2011. She walked very slowly due to a broken knee a few years earlier. Plus, the Plaintiff states that the decedent was "nearly blind." The Decedent weighed about 120 lbs. At the most. There is no way she could walk up to the Plaintiff (or anyone) and bite her without just stepping aside and decedent could not reach out and grab someone to bite them. Adult Protective Service show that the Plaintiff threw warm food in the Decedent face when she asked if she could cook her some and then got the Decedent on the ground; Plaintiff weighs close to 200 lbs. (3,3a). The Decedent was then able to get the Plaintiff off of her by biting her on the shoulder to defend herself. The initial police report did show that the Plaintiff called the police, the police saw the bite on her shoulder and assumed capacity issues because the deceased talks loud due to severe hearing loss. So, they assumed that the Decedent attacked the Plaintiff. But the Plaintiff knows the truth and watched the Encinitas police handcuff her mother in her nightgown with her hands above her head and strapped to a gurney to be taken to Scripps Mental Institute. APS uncovered the truth and

the Decedent asked the Plaintiff to leave the home so the Decedent could return to her home.

6b. Admitted

The Plaintiff had just stated  that the Deceased was nearly blind.  The Defendant and APS worker had to read it to the Decedent because the Plaintiff typed a 19 page packet (with pictures of the decedent in her home) accusing her mother of attacking her in small print to hamper the Decedent from reading it.  The Plaintiff knows that her mother needs everything in large print for her to read and understand and this greatly troubled the decedent as she kept it in a separate purse that she carried with her along with her regular purse.

6c. Denied

The defendant saw that the decedent provided a home for her over 60 year old non- working daughter(Plaintiff), provided food, and paid the Plaintiff's cell phone bill. The Defendant also knows that the Plaintiff started calling the Defendant (for the first time in her life) 3 months after the Deceased husband died in an attempt to convince the Defendant that her mom had dementia and needed assisted living in an attempt to put her mom away. The Plaintiff began to turn her anger and evilness on the Defendant when he refused to believe her claims.  Adult Protective records show that the Decedent did not abuse the Plaintiff and that the Plaintiff was abusing her 86 year old mother (the decedent).  The Defendant has not published anything. The Decedent and her lawyer Russell Griffith drafted and Published a letter to protect her from the Plaintiff (her daughter).  Plus, the Plaintiff does admit on line 8c of her summons stating that Russell Griffth, attorney at law (the author of both letters).  This is no motivation for the Plaintiff to file a lawsuit vs the Defendant and especially for Elder Abuse, Wrongful Death and Defamation.  The Plaintiff offers no explanation of how the Defendant abused or caused wrongful death of the Deceased and Adult Protective records prove that the Plaintiff was abusing her mother and the Plaintiff admits on line 20 of lawsuit 37-2015-000-15654-CU-PO-CTL that the PLAINTIFF was removed from DECEDENT'S home on July, 2014 pursuant to a

Emergency Protective order by Encinitas Sheriff's (3a); Therefore there is no defamation of the Plaintiff's character.

Wherefore the Defendant believes and asks the courts for the dismissal of lawsuit 37-2015-000-15654-CU-PO-CTL as the Defendant has done nothing to motivate the Plaintiff to file Elder Abuse, Wrongful Death, and Defamation vs the Defendant and also that the Plaintiff offers and has no proof of such claims.

7. Denied

The Plaintiff has offered no evidence and has no evidence of the Defendant doing elder abuse or causing wrongful death to the Deceased. There is no defamation of character as Adult Protective Service reports prove that the Plaintiff did abuse the Deceased and that ADP urged the Decedent to file a restraining order and that ADP accompanied the Decedent to file the Permanent Restraining Order. The Plaintiff fails to recognize that she was removed from the home by Encinitas Sheriff's for abusing her almost 87 year old Mother in 2014(3a).

8. Denied

The Plaintiff offers no evidence of this. The Decedent needed no help with her financial affairs. The defendant was neat, house clean, and still preparing enough food for herself to last three days (8,8-1). The decedent's garage always had a large supply of cases of Pepsi and bottled water so the decedent never had issues with dehydration.

8a. Denied

The Plaintiff states on line 20 of her SDCSC that, "the Plaintiff was removed from the Decedent home on July, 2014 pursuant to an Emergency Protective Order. "(3a) The Encinitas Sheriff's arrested the Plaintiff to protect the Decedent. The Defendant came to the home the same day and worked out a plan with neighbors(8a) Ed and Jacinta Kirkman (who had a key to Decedents home to keep an eye on her) to look after the Decedent since the Plaintiff was removed from the home (3a). The Defendant also started to look for future housing care for the Decedent. (8b,8b-1,8b-2,8b-3)

8b. Denied

The Plaintiff, who has been removed from the home twice by ADP, is not an interested person on behalf of Bobbye Rives, because ADP has reported the Plaintiff has abused Bobbye Rives, Plaintiff has accused Bobbye Rives of attacking her, and Bobbye Rives did not pick her as a Trustee to look after her or her belongings.  Bobbye Rives passed due to Coronary Heart Disease leading to Cardiac Arrest after being in the hospital for 3 weeks due to a stomach virus(8b,8b1).

The Plaintiff did cause a rapid deterioration of the Decedent after the TPO hearing due too:

- Decedent was sad because she had to restrain her only daughter and this did disturb her.
- Decedent could not understand why Plaintiff brought a lawyer with her to the hearing
- Plaintiff offered a 19 page letter with pictures of the Decedent claiming that the Decedent had attacked her when the 86 year old Decedent who could barely walk and see was defending herself.  She presented the letter in small print and this disturbed the Deceased because it was hard for her to understand.  Plaintiff knows she needs things in large print. The decedent carried this packet in a separate purse wherever she went.
- Decedent wanted help for her daughter and was concerned that she might not see her again.

8c. Denied

Defendant did not publish any letter in regards to the Plaintiff.  The Decedent and her lawyer Russell Giffith created a letter to protect the Decedent from the Plaintiff and the Plaintiff states that Russell Griffith is the author of both letters, but continues many times to say under oath that Defendant published the letters.  That is defamation of the Defendants character.   ADP records show and confirm that all of the Plaintiff's statements here are indeed false as proved by their investigation.  The TRO was still in effect at the time of the Decedents death.

Yes, no civil or criminal complaints have been filed by Russell Griffith, Defendant, or Decedent; however, it does not mean that we will not in the near future.

Plaintiff believes that since she has not been charged means that she has not abused the Decedent. The Plaintiff's guilt is identified in the APS reports and the fact the Encinitas Sheriff did remove her from the home issuing an Emergency EPO(3a). The Plaintiff is under oath as she continues to deny APS reports and the Encinitas Sheriff's report of her arrest for abuse to the Decedent.

8d. Denied

The Plaintiff did attend the viewing and did not explain to relatives why she was not coming to the home for the reception. The Plaintiff should have informed relatives that there was a TRO vs her. When two relatives asked why she did not come, we did show them the letter from Russell Griffith. The Plaintiff believes and is trying to make others believe that she did not abuse her mother because she has not been prosecuted for her actions. APS records and Encinitas Sheriff's removal of her from the home verify her abuse. The letters were shown to Scripps Memorial Hospital, Las Villas de Carlsbad and Eternal Hills Mortuary to honor the restraining order and prevent the Plaintiff form disturbing her hospital stay and to prevent the Plaintiff from interfering with her mother's funeral wishes.

8e. Denied

The Plaintiff did not create these letters. They were made by Estate Lawyer and the Decedent to protect her from the Plaintiff after each incident she was asked to leave the home. They are factual, truthful, and backed by APS reports and an arrest and removal by Encinitas Sheriff's. Unfortunately, they do show hatred from the Plaintiff towards the Decedent.

9.DENIED

If the Plaintiff's statement is true; the Plaintiff would have sped up her court fillings to prevent the defendant from filing a year later.

10. Denied

Admitted

As shown earlier, there is no defamation of character as APS reports and an arrest by Encinitas Sheriff's for abuse and issuance of a EPO prove the guilt of Elder abuse of the Plaintiff towards the Decedent prove the two letters correct(3a).

11. Denied

The Defendant did not speak at the Mandatory Settlement Conference nor did the Defendant ask his attorney to speak for him in that regards.  Nothing was settled and my attorney said the Plaintiff will never settle after the conference. 'You might want to consider Bankruptcy because she will never settle and she wants to make things hard for you." Attorney Patrick Hosey began to have heart troubles and said he would have to resign soon. Attorney Hosey was sad because he knew the Defendant could not afford to pay him anymore after paying him $28,000, that it would cost another $30 to 50,000 to defend me for a lawsuit that was not telling the truth  The Defendant owed both attorney's a total of $11,963 at that point.  The defendant knew nothing about filing bankruptcy and was scared but attorney Hosey kept urging me to do it.  I had to research and find a bankruptcy lawyer.  Mr. Vickers was chosen, but not to my knowledge had poor health (11).

12. Admitted

The Plaintiff has prevented the Trustees that the Deceased has appointed to handle her trust form distributing the remaining $31,000 of the trust to the beneficiaries; holding up there final payments.

13a. Denied

On 3/31/15 the Plaintiff had received $60,000 compared to the Defendant receiving $36,275. The Defendant did not reach $60,000 until 7/8/13 when he had $10,000 distributed to him for lawyer retention. The Defendant did not write or issue checks on the trust. Co-Trustee Beverly Calcote did make an admitted mistake and paid the Defendant $5,000 more. Both Co-Trustees asked the Plaintiff and the judge if Co-Trustee Beverly could write a $5,000 check to the

other beneficiaries but was denied. The Plaintiff has filed lawsuit 30-2016-00863391-PR-TR-CJC because of this mistake that can easily be corrected since there is still $31,000 in the trust. The Plaintiff should let the final accounting be done before accusing wrong and holding up the other beneficiaries funds.

13b. Denied

The initial accounting was done by attorney Christopher Albence; not by the Co-Trustees. The Defendant did not handle the finances of the trust (bank accounts) nor write the checks. The Defendant believes there to be no double charge but please let's see what the final accounting says.

13c. Denied

The Co-Trustees repeatedly received the same market value selling the home 'as is' without using any trust money to make any improvements. The mid 70's home had never been remodeled and had asbestos; but we still got market value. The Co-Trustees cleaned and gutted the entire two story, full garage house and sold the home quickly thus allowing the Plaintiff to use her initial disbursement to immediately sue the Estate Lawyer and the C-Trustees and we could no longer work together because of a conflict of interest because we were all sued together by the Plaintiff. This caused major delays in the Co-Trustees work on the Trust.

- Trustees now had to find and educate another Estate Lawyer.
- Trustees now had to find a lawyer to defend themselves vs the Plaintiffs false claims to hide her own guilt.

13d The Defendant found the buyer. Mr. Calcote did the paperwork, You must talk to Co-Trustee Beverly Calcote for this one.

14. Admitted

However, this does not excuse the fact that the Plaintiff was removed by Encinitas Sheriff's in 2014 under an Emergency Protective Order and was Asked to leave by APS in 2011 for abusing her mother. So even though the Anti-SLAPP motion was denied, there is no defamation of character by the Defendant towards the Plaintiff.

15. Denied

The Defendants BK filing was delayed by the health of the Bankruptcy preparer (11).

16a. Admitted

16b. Unknown

16c. Denied

Please see 4 and 5

16d. Admitted

The defendant was allowed to provide additional information because the Plaintiff met with USTP Queenie k Ng giving her information to investigate. The defendant has been given time to produce additional evidence because he has told the truth under oath.

16e. Denied    see (5a,16e)

17. Denied

Not sure about this; However, the Defendant did look over the packet as best he could not knowing anything about what was required. I basically just knew what the preparer asked and told me.

18. Denied

The Defendant was unemployed at the time (as the plaintiff). The Plaintiff is not considering the Defendants living expenses and the right to vacation with Grandchildren, upgrade his home, car, etc. with his inheritance. The defendant was doing a good job of paying off debts as his credit score rose from 521 on 8/31/15 to the 690?s by 9/16 and was scheduled to pay off

more debts before the Defendant was forced to hire a lawyer (immediate $10,000 retainer) to answer the Plaintiff's false lawsuit. Another $22,000 went to pay lawyers with the amount growing. Mr. Hosey said it would cost another $30-50,000 to answer the Plaintiff's first false lawsuit.

FIRST CLAIM FOR RELIEF

19. All Denied

20. Denied

There was no willfully, maliciously, or deliberate conduct. The preparer was emailed the information on what was done with the Defendants trust funds received (4 and 5). For health reasons, the preparer failed to disclose the information(11,4a).

21. Denied

The Defendant has never accused the Plaintiff of Elder Abuse; however:

The Plaintiff states on line 20 of her 37-2015-000-15654-CU-PO-CTL that she, "After the Plaintiff was removed from the home on July 22, 2014 pursuant to a Temporary Protective Order (21)."

APS states the Plaintiff called the police to the home on 2/16/11. Decedent stated that the Plaintiff threw newly cooked bacon and eggs in the Decedents face and then got her on the ground (3). The 86 year old Decedent bit the Plaintiff on the shoulder to get her off and defend herself. The police did write their initial report supporting the Plaintiff; but APS uncovered the facts so the Deceased told APS that she wanted the Plaintiff out (3).

APS 7/22/2014 assessment sates that Pert clinician Christine Davies assisted the Sheriff deputies in obtaining an EPO and kick out order vs. The Plaintiff(3a)

The Plaintiff still states under oath that she has not performed these acts.

22. Denied

Plaintiff offers and has no evidence of this statement and uses this statement in an attempt to hide her 'Unclean Hands'(8,8b1,8b2,8b3).

See 8a for cause of decedent's deterioration.

See 8b

APS records on 7/22/2014 show the Plaintiff 's willful disregard of the needs of the Decedent (her 86 year old mother) by holding her hostage in her garage for hours and not allowed food.  This prompted an ERO by the Encinitas Sheriff's to remove the Plaintiff from the Decedent's home. Neighbor Ed Kirkman factually noted in his July 2015 letter that these ongoing problems between the Plaintiff and the Decedent, "were clearly detrimental to Bobbye's well-being, they played on her mind continuously (22)."

APS records show that the Decedent was still cooking for herself, all bills paid on time, and that her house was clean(8-1)

23. Denied

The Plaintiff has received $ 90,000 as the Defendant with more than $5,000-remaining for her which is part of the still $31,000 remaining in the trust. The Defendant does not write the checks and the C0-Trustee Beverly Calcote has admitted the mistake of an additional $5,000 to the Defendant.  Instead of letting Co-Trustee Beverly Calcote pay and finish the Trust by paying $5,000 to the other beneficiary's to balance the books; the Plaintiff would rather have the courts hold up these funds; which are partly hers.

The Plaintiff has damaged herself by:

Suing jointly the Estate Lawyer which the Decedent had chosen to handle her Trust and the Co-Trustees which the Decedent had  chosen to handle her Trust produced major delays In handling the trust and trust distributions:

- Estate Lawyer Griffith could no longer advice or communicate with the Co-Trustees.
- Trustees had to find another Estate Lawyer.
- Trustees had to search and hire their own lawyer.

- Plaintiff has halted the completion of the remaining trust funds to herself and the other beneficiary's.
- Since receiving her first beneficiary payment of $60,000, the Plaintiff continues to use and deplete all of her beneficiary funds to continually file false lawsuits vs the Co-Trustees.

The Plaintiff has done all of this too:

- The Plaintiff is Hiding her own guilt and is saying under oath that she has never harmed her Decedent mother because she has not been charged as she states on line 8c of her petition vs the Defendant.
- Obtain more of the Decedents Trust through making false lawsuits vs. The Co-Trustees.

24. Denied

Wherefore all Plaintiff false claims are denied showing that Plaintiff has suffered no damages and the Defendant asks the courts for denial of this request and dismissal of lawsuit 37-215-000-15654-CU-PO-CTL for the following reasons.

The Plaintiff continues to state under oath that she did not abuse the Decedent despite APS reports of abuse in 2011 and 2014 and a kick out EPO by Encinitas Sheriff's.

The Plaintiff offers no evidence of where, when, how the Defendant did wrong to the Decedent; Attempting to blame the Plaintiff for her actions.

25. Denied

See 24

26. All Denied

27. Denied

There is no fraudulent, false claim, false oath.  The Defendant's BK case would have already been discharged if so.

See 4 and 5

28. Denied

. The Bankruptcy Trustee directed me to go to the filing office and amend the Statement of Financial Affairs and it was Amended on May 5, 2017 because of my truthfulness.

Wherefore the Defendant seeks dismissal of the Plaintiff's second claim for relief due to the Defendants stating the true facts when asked under oath and Amending his Statement of Financial Affairs under the direction of USTP Queenie K. Ng.

There was no fraudulent.  If so, the Defendant's BK case would already would have been dismissed. The Defendants BK filing was severely delayed by the health of his BK preparer Mr. Grady Vickers who recently passed on May 21st of this year(11,4a).

See 4 and 5

29. Denied

The Defendants case would have already been dismissed if that were so.

See 4 and 5

30. Denied

See 4 and 5

31. Denied

The Plaintiff has amended her original summons of status in adversary proceedings with no harm to the defendant and the Defendant has amended his original bankruptcy filing with no harm the Plaintiff.  The Defendant is very reasonable asking $300,000 in personal liability for the two lawsuit's while Plaintiff is very unreasonable to state that the defendant declare no personal liability for her two lawsuits vs. The Defendant which asks for more than 30 possible ways of relief.

Wherefore the defendant believes and asks the courts for dismissal of line 31of the Plaintiff's Adversary Petition asking $300,000 in relief as no damage has been suffered by the Plaintiff.

PRAYER FOR RELIEF

1-The Defendant has shown no willful or malicious conduct towards the Plaintiff.  The Plaintiff has offered no proof of any wrong doing by the Defendant towards the Decedent, and the Defendant has not defamed the Plaintiff.

The Defendant knows that the Plaintiff started calling the Defendant (for the first time in her life) in 2008, 3 months after the Deceased husband died in an attempt to convince the Defendant that her mother had dementia and needed assisted living in an attempt to put her away.  The Plaintiff began to

turn her anger on the Defendant when he refused to believe her claims. Adult Protective Service records show that the Decedent was not abusing the Plaintiff and that the Plaintiff was abusing her 86 year old mother (the decedent). The Defendant did not publish anything in regards to the Plaintiff. The Plaintiff is correct online 8c of her summons stating, "Russell Griffith, attorney at law (author of both letters) and he and the Decedent drafted and published the letters to protect the Decedent from her daughter (the plaintiff). This is no motivation for the Plaintiff to file a lawsuit vs. The Defendant and especially for Elder Abuse, Wrongful Death, and Defamation. The Plaintiff offers no explanation of how the Defendant abused or caused wrongful death of the Deceased and Adult Protective services records prove that the Plaintiff was abusing her mother so there is no defamation of the Plaintiff's character. The Plaintiff believes the Plaintiff is defaming his character with these false claims. The Plaintiff is under oath as she continues to deny APS reports and the Encinitas Sheriff's report of her abuse of the Decedent. Sadly, the Plaintiff believes that since she has not been charged with a crime; therefore, she has not abused the Decedent.

Wherefore, the Defendant believes and asks the courts for dismissal of lawsuit 37-2015-000-15654-CU-PO-CTL as the Defendant has done nothing to motivate the Plaintiff to file Elder Abuse, Wrongful Death, and Defamation vs. The Defendant and the Plaintiff has and offers no proof or evidence of such claims.

The Plaintiff has filed lawsuit 30-2016-00863391-PR-TR-TR-CJC for the following reason; Co-Trustee Beverly Calcote did make an admitted mistake and paid the Defendant $5,000 more than the other beneficiaries. Both C0-Trustees asked the judge if Beverly could write a check of $5,000 to the other beneficiaries and was denied. The Plaintiff has prevented the Trustees that the Deceased appointed to handle her trust from distributing the remaining $31,000 of the trust to the beneficiaries (which includes herself); holding up their final payments. The Defendant did not handle the finances of the trust (bank accounts) nor write the checks. The initial accounting was done by Attorney Christopher Albence; not by the Defendant. On 3/31/15, the Plaintiff had received $60,000 compared to the Defendant receiving $36,275 and the Defendant did not reach $60,000 until 7/8/13.

Wherefore, The Plaintiff asks the courts to dismiss lawsuit 30-2016-00863391-PR-PO-CJC and instruct the Plaintiff to allow the final trust funds to be distributed and the final accounting to be done.

2. Denied

The Defendants Bankruptcy preparer failed to disclose that I was a beneficiary and Co-Trustee and that the Defendant had received an inheritance of over $90,000 as a beneficiary even though he was emailed a schedule of what was done with the money from the inheritance. The Defendants Bankruptcy Trustee asked the Defendant if he had received any inheritance and he replied yes. That would be concealing and deliberate it the Defendant denied receiving beneficiary funds when asked and I believe the preparers mistakes were due to his failing health. He passed o May 21st of this year.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1251 W Bishop, Santa Ana, CA 92703

A true and correct copy of the foregoing document entitled (*specify*): ANSWER TO AMEND COMPLAINT FOR
NONDISCHARGEABILITY OF PENDING LAWSUITS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 08/14/2017____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 08/14/2017____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
CREDITOR: LARNITA PETTE   2588 El Camino Real, STE F-195, Carlsbad, CA 92008
HEARIING JUDGE: MARK S WALLACE   411 W Fourth. crtrm 6C, Santa Ana, CA 92701
CHAPTER 7 TRUSTEE: Wineta Kosmala, 3 MacArthur Place, Suite 760, Santa Ana, CA 92707

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8-14-2017 | CINDY FAWVER | *signature* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# EXHIBITS

CL was tearful throughout conversation.

It appears that CL is her own decision maker and is able to self advocate.

SOCIAL SUPPORT:
Daughter/SA - Larnita 'Nita' Pette
Nephew - Ralph Sanders - 714/262-8378
Niece - Beverly
Neighbors

FINANCIAL:
CL states that she manages her own finances claiming "I can do it better than some" and informing CM that she just sent out checks for the "lights and gas."

CL declined to share income specifics

LEGAL:
CL reports that Ralph and Beverly are named MDPOA, DPOA$ co-agents. They are also Co-Successor Trustees.

CL states that she has an attorney but declined to share his/her information.

CIVIL RIGHTS & LANGUAGE:
CL speaks and understands English but declined to sign LND form. CR brochure explained and provided to CL.

PROTECTIVE ISSUE: FINANCIAL and MENTAL SUFFERING

CL states that ever since her husband passed away (1/2008) SA has been trying to take over. CL stated "I can do everything for myself except drive" and that SA would "do stuff behind my back" such as trying to get CL to change physicians and get her declared incompetent. SA would claim that CL "has mental problems...dementia."

CL spoke at lengths about SA's privileged life having gone to private school and obtaining a double major at UCLA which her parents paid for.

CL reported that SA had been living with her when, on 2/16/11, SA threw newly cooked bacon and eggs in CL's face. CL stated that the food was warm, not hot enough to burn her. CL reported having entered the kitchen where SA had been cooking breakfast. CL stated something about SA making breakfast for her too at which time SA stated that she was not obligated to make CL breakfast, called her a "nasty name" and threw the food in her face. SA then kicked CL in the right hip/thigh area. CL left the kitchen and was followed by SA. It was not clear to CM but somehow CL ended up on the ground with SA on top of her. SA would not let CL up so SA bit her on the shoulder. SA would not give CL the phone but called SDSO herself. Deputies arrived. CL claims that they were "nasty" to her and would only listen to SA. CL states that they "made a show" over the bite although CL stated she could have bit SA much harder and only bit hard enough to get her off. CL was taken to the hospital under 5150 and kept for 72 hours. While hospitalized, CL told the doctor what happened and stated that she did not feel safe in her home and that she wanted SA out. CL was D/C home on 2/19/11 and found SA in the process of moving out. CL changed the locks.

CL denies any recent abuse but states that SA called SDSO on 11/18/12. SA, two deputies and CL's neighbor (who has a key to CL's home) came over. SA claimed that she had been trying to get a hold of CL and was worried. She then tried to get SDSO to take CL to the hospital, claiming that CL cannot care for herself and is "delirious." CL's neighbor informed deputies that SA is not CL's guardian. Paramedics were called out and spoke with CL who told them she was not going anywhere, had no aches or pains and did not need to go to the hospital. CL was not taken in.

CL and SA spent Thanksgiving together and CL reports that it went fine.

CL has since obtained a statement from her attorney (which she did not share with CM). CL is to give this statement to deputies if SA calls them back out. CL did not say how the statement reads other than telling deputies "they'd better leave."

CL states that SA used to yell, curse and call her names but does not anymore. SA calls CL and "gets radical" on the phone talking about things she has heard (gossip). SA also comes over to CL's home "but she acts alright."

**information if conserved or potential for conservatorship**

**POA**

**POAs, names of the authorized agents, and if APS received copies**

**Criminal History**

**Document Criminal History**

**Trust**

**Trust, name of trustee and successor trustee, and if APS received a copy**

---

**Protective Issue**

---

CT recalled in detail the series of events that have led up to the most recent abuse including abuse already investigated by APSS. CT reports her PCP sent out a HH SW and nurse, they both said the CT is fine but the CT's daughter told the CT she can't live alone anymore. CT said she is upset because her daughter wouldn't ever ask the CT what she needs help with, she would just do whatever she wants. CT reports she believes her daughter wants to be POA over the CT and put the CT away.

CT reports that on Sunday, she woke up at 9pm from a nap, went to the garage fridge for watermelon since she was hungry. CT saw a bright light in there coming from an electronic device she had never seen before (black iPhone). CT reports she has been recorded by her daughter in the past and she was worried it was another device like that. CT put the iPhone in her pocket. The CT's daughter saw the CT do this and chased the CT around in the garage and was tugging at the CT and her robe to try and get the phone back. CT reports she refused to give the phone back, there was a struggle and the CT reports her daughter bit her left arm and bruised her arm. CT reports she bit the SA to get the SA off her, but she never attacked the SA until the SA attacked first. CT reports she will always protect herself. CT reports she was held captive in the garage till 4am and not allowed food even though she begged to be let off the garage couch to eat.

CT agreed to go with APSS outside to call police and request and EPO with KO order.

APSS called LE, LE and PERT arrived in less then 5 minutes. Pert clinician Christine Davies assisted the deputies in obtaining the EPO and kick out order.

While the SA was moving out her items, the CT explained that the other night, earlier in the week, the SA came up to the bathroom door and met the CT at the bathroom door with a knife with a blade about 3-4 inches long with the blade pointed towards the ceiling. CT reports the SA mumbled something to the CT and walked away. CT reports this was very strange and she asked the SA what she said, but she did not hear what the SA said.
CT reports there is a long history of the SA financially abusing her and her husband. CT reports the SA has stolen items around her house including pictures, the CT's husband's Flag from his memorial service, and other items from the home.

When LE and the SA left, the CT went next door and got her neighbor Ed. Ed reports he will assist the CT with getting food today and making sure the CT is safe. Ed was educated about the EPO and how to call 911 if the SA is seen near the CT's property. Ed agreed to be of assistance any way he can.

APSS agreed to come back the next day at 12:30 to assist the CT with completing TRO documents. APSS agreed to call her nephew Ralph to inform him of what has occurred. APSS called Ralph, he said he will come on Sunday to take the CT grocery shopping and he will take the CT to all medical appointments. Ralph was educated on the EPO. Ed volunteered to take the CT to get the TRO when it is needed, he has done a TRO before.



🔍 All   ralph sanders, search your mailbox                          🏠 Home   👤 ralph  ⚙

✉ 📇 🗓 📁 🙂 📋

✏ Compose                    ◀ Search results  ◀ ◀◀ ▶  📥 Archive  📤 Move ⌄  🗑 Delete  Spam All  More ⌄

Add Gmail, Outlook, AOL        **Scanned document from HP ePrint user (5)**              People
and more

**Inbox (9)**            **eprintcenter@hp.com**  This email and attachment are sent on behalf  📎 11/15/16 at 12:03 PM

Drafts (20)

Sent                    **ralph sanders** <resanders16@yahoo.com>          📎 11/15/16 at 12:09 PM
                         To grady vickers
Archive

**Spam (26)**            Hello Grady
                         The next two emails will show the amount and dates of the funds received from the trust and what
**Trash (14)**           those funds were used for.

⌄ Smart Views
   Important              — On Tue, 11/15/16, eprintcenter@hp.com <eprintcenter@hp.com> wrote:
   Unread
   Starred               > From: eprintcenter@hp.com <eprintcenter@hp.com>
   People                > Subject: Scanned document from HP ePrint user
   Social                > To: resanders16@yahoo.com
   Shopping              > Date: Tuesday, November 15, 2016, 11:34 AM
   Travel                >
   Finance               > This email and attachment are sent on behalf of
   for pops              > resanders16@yahoo.com.
   terrilynnvaughn7@gmai...  >
   LUIS VENTURA          > If you do not want to receive this email in future, you may
   FOUNDATION GROUP      > contact resanders16@yahoo.com directly or you may
   dan kalili            > consult your email application for spam or junk email
   stephanie dufour      > filtering options.
   jared eugene          >
   PATRICK HOSEY         > Regards,
                         > HP Team
⌄ Folders (6)            >
   it
   **preschool le...  (6)**

> Recent                 filename-1.pdf


                         ↩ Reply   ↩ Reply to All   ➡ Forward   ••• More


                         **ralph sanders**  This page shows what was done with the money. — O  📎 11/15/16 at 12:16 PM

                         **ralph sanders**  Hello Grady, Here is an invoice from one of my lawyers    11/17/16 at 12:15 PM

                         **ralph sanders**  Hello Grady, Here is an invoice from one of my lawyers    11/17/16 at 12:15 PM

                         Click to            or


                         Send   📎 ⌄ ⊡ Tt B I A ☰ •☰ ☰ 🔗 ☺ « 🗑

🖼 Max Ma on flickr

June 15, 2017

Re:    Ralph E. Sanders
       1251 W. Bishop Street
       Santa Ana, California 92703

       **Ref.:   BK Case No. 8:17-bk-10265-MV**

To Whom It May Concern:

My husband, Grady Vickers prepared bankruptcy petition for the above referenced case number,
but he made mistake with inherence for the referenced individual received due to his illness,
kidney cancer when he filed the above refenced bankruptcy petition.

My husband passed away on May the 21st of this year.

Please let me know if you need further information.

Sincerely yours,

Kyung Vickers

 

🔍 All    ralph sanders, search your mailbox          🏠 Home   👤 ralph   ⚙️

✏️ Compose

Add Gmail, Outlook, AOL and more

Inbox (12)
Drafts (20)
Sent
Archive
Spam (2)
Trash (12)
⌄ Smart Views
   Important
   Unread
   Starred
   People
   Social
   Shopping
   Travel
   Finance
   for pops
   terrilynnvaughn7@gmai...
   LUIS VENTURA
   FOUNDATION GROUP
   dan kalili
   stephanie dufour
   jared eugene
   PATRICK HOSEY
⌄ Folders (6)
   it
   preschool le... (6)
› Recent

← Search results  ← ⇐ →  🗄 Archive  📁 Move ⌄  🗑 Delete  Spam ⌄  More ⌄

## Sanders, Ralph E. 8:17-bk-10265 (9)                    Finance

| | | |
|---|---|---|
| **David M. Fitzgerald**  Mr. Sanders, Please be advised that your contin | 📎 | Apr 25 at 11:24 AM |
| **Ng, Queenie K. (USTP)**  Mr. Sanders, Based on our telephone conver | 📎 | May 2 at 3:29 PM |
| **ralph sanders**  Thank you, Ralph Sanders | 📎 | May 3 at 8:32 AM |

**Ng, Queenie K. (USTP)** <Queenie.K.Ng@usdoj.gov>        May 3 at 9:44 AM
To ralph sanders

Thank you. Based on my discussion with the Ch. 7 trustee, I understand that we are still missing your property management agreement. In addition, will you be amending the Statement of Financial Affairs Item #5 to disclose all income received in the 2-year period prior to the bankruptcy (including the $98K trust proceeds and any and all income paid to you by Robbie Bobbye Housing Inc.) and Item # 27 to disclose your business (Robbie Bobbye Housing Inc.) and all the relevant information relating to the business? If so, when will you file the amendment?

Did you receive any income from Robbie Bobbye Housing Inc. in 2015, 2016 and 2017? If so, please provide all the information, including the amount you received and documentation to show the receipts for the foregoing period.

Thank you.

Queenie K. Ng
Trial Attorney
Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, California 92701
Telephone: (714) 338-3403
Facsimile: (714) 338-3421
Queenie.K.Ng@usdoj.gov

› Show original message

↩ Reply   ⇐ Reply to All   ➡ Forward   ••• More

| | |
|---|---|
| **ralph sanders**  I can go amend Friday morning. I am so sorry that the | May 3 at 12:15 PM |
| **Ng, Queenie K. (USTP)**  Thank you. | May 3 at 2:35 PM |
| **Ng, Queenie K. (USTP)**  I have the wrong judge name on page 1 of the | May 4 at 4:01 PM |
| **ralph sanders**  Hello. Sure, that is okay. I really appreciate you giving | May 4 at 10:45 PM |
| **Ng, Queenie K. (USTP)**  Thank you. I also need to change the title to | May 8 at 9:23 AM |

Click to          or

Which of the following pet food have you heard of?
SELECT UP TO 5 ANSWERS

Natural Balance

Blue Buffalo

Royal Canin

Hill's Science Diet

Purina Pro Plan

Powered By Nielsen
View Privacy Policy

5A

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RALPH SANDERS<br>1251 W BISHOP<br>SANTA ANA, CA<br>          92703 | **FILED**<br><br>**MAY 05 2017**<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY:          Deputy Clerk |
| ☒ *Individual appearing without attorney*<br>☐ *Attorney for Debtor* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>RALPH SANDERS<br><br><br><br>                                    Debtor(s) | CASE NO.: 8:17-BK-1L265(G)<br>CHAPTER: 7<br><br>**SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☐ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☐ Schedule A/B      ☐ Schedule C      ☐ Schedule D      ☐ Schedule E/F      ☐ Schedule G

☐ Schedule H      ☐ Schedule I      ☐ Schedule J      ☐ Schedule J-2      ☒ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers      ☐ Statement of Intention      ☐ Master Mailing List

☐ Other (*specify*) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date: 5-5-17                        _Ralph S_____
                                              Debtor 1 Signature

                                              _____
                                              Debtor 2 (Joint Debtor) Signature (if applicable)

***NOTE***: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

**EA- 710**   **Notice of Hearing to Renew Restraining Order**

*Clerk stamps below when form is filed.*

**(1) Protected Elder or Dependent Adult**

a. Full Name: Bobbye Jean Rives

☐ Person requesting protection for the elder or dependent adult, if different *(person named in item ③ of Form EA-100):*

Full Name: _____

Lawyer for person named above *(if any for this case):*

Name: _____ State Bar No.: _____

Firm Name: _____

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.):*

Address: 363 Cerro St.

City: Encinitas   State: CA   Zip: 92024

Telephone: 18663999050   Fax: _____

E-Mail Address: ->code: 7604362096#

*Court name and street address:*

**Superior Court of California, County of**

**San Diego Superior Court**
**North County Division**
**325 South Melrose Drive**
**Vista, CA 92081-662**

*Fill in case number:*

**Case Number:**

**37-2014-00024600-CU-PT-NC**

**(2) Restrained Person**

Full Name: Lamita Ann Pette

Address *(if known):* _____

City: _____ State: _____ Zip: _____

**To the Restrained Person:**

**(3) Court Hearing**

The judge has set a court hearing date. *Court will fill in box below.*

**The current restraining order stays in effect until the end of the hearing.**

Name and address of court if different from above:

**Hearing Date** → Date: _____ Time: _____

Dept.: _____ Room: _____

_____

_____

At the hearing, the judge can renew the current restraining order for up to another five years or make it permanent. You *must* continue to obey the current restraining order until the hearing. At the hearing, you can tell the judge if you do not want the order against you renewed. If the restraining order is renewed, you *must* obey the order even if you do not attend the hearing.

If you wish to make a written response to the request to renew the restraining order, you may fill out Form EA-720, *Response to Request to Renew Restraining Order.* File the original with the court before the hearing and have someone age 18 or older—**not you**—mail a copy of it to the person in ① at the address in ① at least_____ days before the hearing. Also file Form EA-250, *Proof of Service of Response by Mail,* with the court before the hearing.

**This is a Court Order.**

Judicial Council of California, www.courts.ca.gov
New January 1, 2012, Mandatory Form
Welfare and Institutions Code, § 15657.03(o)

**Notice of Hearing to Renew Restraining Order**
**(Elder or Dependent Adult Abuse Prevention)**

EA-710, Page 1 of 2

→

information if
conserved or
potential for
conservatorship

POA

POAs, names of the
authorized agents,
and if APS received
copies

Criminal History

Document Criminal
History

Trust

Trust, name of
trustee and
successor trustee,
and if APS received a
copy

## Protective Issue

CT recalled in detail the series of events that have led up to the most recent abuse including abuse already investigated by APSS. CT reports her PCP sent out a HH SW and nurse, they both said the CT is fine but the CT's daughter told the CT she can't live alone anymore. CT said she is upset because her daughter wouldn't ever ask the CT what she needs help with, she would just do whatever she wants. CT reports she believes her daughter wants to be POA over the CT and put the CT away.

CT reports that on Sunday, she woke up at 9pm from a nap, went to the garage fridge for watermelon since she was hungry. CT saw a bright light in there coming from an electronic device she had never seen before (black iPhone). CT reports she has been recorded by her daughter in the past and she was worried it was another device like that. CT put the iPhone in her pocket. The CT's daughter saw the CT do this and chased the CT around in the garage and was tugging at the CT and her robe to try and get the phone back. CT reports she refused to give the phone back, there was a struggle and the CT reports her daughter bit her left arm and bruised her arm. CT reports she bit the SA to get the SA off her, but she never attacked the SA until the SA attacked first. CT reports she will always protect herself. CT reports she was held captive in the garage till 4am and not allowed food even though she begged to be let off the garage couch to eat.

CT agreed to go with APSS outside to call police and request and EPO with KO order.

APSS called LE, LE and PERT arrived in less then 5 minutes. Pert clinician Christine Davies assisted the deputies in obtaining the EPO and kick out order.

While the SA was moving out her items, the CT explained that the other night, earlier in the week, the SA came up to the bathroom door and met the CT at the bathroom door with a knife with a blade about 3-4 inches long with the blade pointed towards the ceiling. CT reports the SA mumbled something to the CT and walked away. CT reports this was very strange and she asked the SA what she said, but she did not hear what the SA said.
CT reports there is a long history of the SA financially abusing her and her husband. CT reports the SA has stolen items around her house including pictures, the CT's husband's Flag from his memorial service, and other items from the home.

When LE and the SA left, the CT went next door and got her neighbor Ed. Ed reports he will assist the CT with getting food today and making sure the CT is safe. Ed was educated about the EPO and how to call 911 if the SA is seen near the CT's property. Ed agreed to be of assistance any way he can.

APSS agreed to come back the next day at 12:30 to assist the CT with completing TRO documents. APSS agreed to call her nephew Ralph to inform him of what has occurred. APSS called Ralph, he said he will come on Sunday to take the CT grocery shopping and he will take the CT to all medical appointments. Ralph was educated on the EPO. Ed volunteered to take the CT to get the TRO when it is needed, he has done a TRO before.

# Appointment

# In person contact

## Appointment

| | |
|---|---|
| Subject | In person contact |
| Location | |
| Regarding | 📇 APS Case for Bobbye Rives referred 7/23/2014 |

## Scheduling Information

| | | | |
|---|---|---|---|
| Required | 🧑 Bobbye Rives | | |
| Optional | | | |
| Start Time | ⏰ 8/12/2014 8:00 AM | **Duration** | 1 hour |
| End Time | 8/12/2014 9:00 AM | **All Day Event** | No |
| Show Time As | Completed | **Priority** | Normal |
| Case Note Type | Client In Person Contact | | |

APSS met with the CT at her home. APSS and CT discussed that the TRO was served. CT still wants to go to the Restraining Order hearing to obtain the Permanent Restraining Order. CT wants APSS to be present. APSS agreed to meet the CT at the court Friday morning. APSS and CT discussed her need for a caregiver. CT feels she can manage at home for right now, but may decide she wants a caregiver to come for one hour a day M-F. CT says her cousin is coming over this weekend and she has a caregiver, so she will discuss it with her cousin. CT said she did not like LivHome because she was unclear about the cost. APSS explained how billing from a care giving agency would work. CT was more open to hiring a caregiver. Please note, the CT's home is clean, the CT had good hygiene and appearance, and the CT has been cooking for herself safely. CT explained she does not want to be a burden on her nephew, so she may end up hiring a caregiver sooner then later.

## Notes

## Details

| | | | |
|---|---|---|---|
| Owner | 🧑 Karen Dee | **Organizer** | 🧑 Karen Dee |
| Category | | **Sub-Category** | |

## Phone Call

# collat- call with LIV home

## Phone Call

| | | | |
|---|---|---|---|
| **Sender** | | **Phone Number** | 1 |
| **Recipient** |  Karen Dee | **Direction** | Incoming |
| **Related Contact** | | | |
| **Subject** | collat- call with LIV home | | |
| **Case Note Type** | Collateral Contact | | |

VM r 9-4-14 at 11:08am, Debbie Hu from LivHome. Got a call from Ralph, nephew of Bobbye Rives. Liv Home is not going to help the CT at this time. 619-838-1231. APSS called back. She states since there is a RO and Larnita was said to want to kill the CT, that they will not get involved in the home situation and refused to provide services to the CT.

| | | | |
|---|---|---|---|
| **Regarding** | 📇 APS Case for Bobbye Rives referred 7/23/2014 | | |
| **Owner** | 👤 Karen Dee | | |
| **Duration** | 30 minutes | **Priority** | Normal |
| **Actual Start** | 9/4/2014 | | |
| **Due** | 9/4/2014 11:00 AM | | |

## Notes

**Subject:**   Experienced Senior Living Advisor waiting for your call (call Nicole at 657-200-6814)

**From:**      Customer Care (customercare@aplaceformom.com)

**To:**        resanders16@yahoo.com;

**Date:**      Monday, July 28, 2014 12:51 PM



# The Search for Senior Living
## ...Simplified



> visit our website          A free advisory service for families in search of elder care or senior housing

Dear Ralph,

We have matched you with a free, personal Senior Living Advisor who is ready to take your call right now! You can call Nicole Williams directly at **657-200-6814** or email NicoleL@aplaceformom.com. Once you connect, Nicole will be able to help you and your family find answers to all your senior living questions.

> Nicole Williams
> Phone: 657-200-6814
> Email: NicoleL@aplaceformom.com
> Learn more by visiting your advisor's personal website

Our knowledgeable and trained advisors help nearly 150,000 families find senior care and housing each year for free. Let us help your family today by calling Nicole right now at **657-200-6814** or email NicoleL@aplaceformom.com.

We are North America's largest senior living information service, and we work with many different partner websites to find families in need of our help, as well as many senior care providers who can help them. This broad network helps us find appropriate senior care options for families like yours. To learn more about A Place for Mom, you can visit our website, read more about us, or see what other families are saying about our free service.

Nicole will also try to call you today in case we don't hear from you. Don't hesitate to reach Nicole first at **657-200-6814** or email NicoleL@aplaceformom.com.

We look forward to talking to you soon!

Thank You,

A Place for Mom

A Place for Mom's Family is the first online community website set up specifically for the families of aging loved ones to talk about eldercare. Find or share tips on moving mom or dad, legal matters, financial aid for Veterans, Alzheimer's care, dementia and so much more. Join today!

8b2



SB3

