

# San Diego County Sheriff's Department
## Public Records Request
### Victim Copy

| | |
|---|---|
| **Case No.** | **11108347** |
| **Report No.** | **11108347.1** |

**1**

Page 1 of 3

**Primary Victim:**   PETTE, LARNITA ANN

## GENERAL CASE INFORMATION

**Primary Charge:** 242 - PC - SIMPLE BATTERY (M)

| Location, City, State, ZIP: | Call For Service Date/Time |
|---|---|
| 363 Cerro St, Encinitas, CA  92024 | 02/16/2011 10:23:44 (Wednesday) |

| Occurrence Date/Time | Call For Service Event Type: |
|---|---|
| 02/15/2011 19:00:52 (Tuesday) | PSYCHO |

## VICTIM/S

### Victim #1

| Name: | Sex: | Age: | Injury: |
|---|---|---|---|
| PETTE, LARNITA ANN | F | 61 | M - Apparent Minor Injury |

**Home Address, City, State, ZIP:** 363 Cerro St, Encinitas, CA  92024

**Victim Of:** 242 - PC - SIMPLE BATTERY (M)

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |
|---|---|---|---|
| | | | |

## IBR/UCR OFFENSE/S

| Offense Description: | Level: | Against: | Completed? | Counts |
|---|---|---|---|---|
| 242 - PC - SIMPLE BATTERY (M) | M | PE | Yes | |
| 5150 - WI - MENTAL DISORDER 72 HR OBSERVATION | O | | Yes | |

## ARRESTEE/S

### Arrestee #1

| Name: | Sex: | Date of Birth / Age | Height: | Weight: | Hair Color: | Eye Color: |
|---|---|---|---|---|---|---|
| RIVERS, BOBBY JEAN | F | 10/23/1927 - 83 | | | | |

**Home Address, City, State, ZIP:** 363 Cerro St, Encinitas, CA  92024

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |
|---|---|---|---|
| | | | |

### ARREST INFORMATION

| Arrested Type: | LE Disposition: | JUS 750 Type: | Booking No.: |
|---|---|---|---|
| O - Probable Cause Arrest - New Case | 2 - Turned over to another LE agency (Adult / Juvenile) | 3 - Other | |

| Arrested For: | Level: | Completed: | Counts: |
|---|---|---|---|
| 5150 - WI - MENTAL DISORDER 72 HR OBSERVATION | O | Yes | |

| Arrest Date and Time: | Arrest Location, City, State, ZIP: |
|---|---|
| 02/16/2011 11:40:20 | 363 Cerro St, Encinitas, CA  92024 |

| Booking Date/Time: | Booked Location: | Armed With: |
|---|---|---|
| | | 01 - Unarmed |

## SUSPECT/S (Not Yet Arrested)

## WITNESSES

### Witness #1

| Name: | Sex: | Age: | Injury: |
|---|---|---|---|
| SANDERS, DEREK | | | |

**Home Address, City, State, ZIP:**

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |
|---|---|---|---|
| Employed | DEPUTY SHERIFF | SDSD | 175 N El Camino Real, Encinitas, CA  92024 |

## OTHER ENTITIES

### Entity #2

| Name: | Sex: | Age: | Injury: |
|---|---|---|---|
| WELINSKY, KATHLEEN | | | |

NON-CONFIDENTIAL
This report has been recorded as being
Released pursuant to California Penal
Code 11075-11081.  Subsequent distribution
of information contained is restricted
by SEC. 11140-11144 CPC
SAN DIEGO COUNTY SHERIFF'S DEPT.

| Reporting Officer | Division / Organization |
|---|---|
| SH5379 - SANDERS, DEREK | Encinitas Station ENCINITAS PATROL |

| Report Date | Detective Assigned |
|---|---|
| 02/16/2011 13:19:14 | |



## San Diego County Sheriff's Department
## Public Records Request
## Victim Copy

Case No. **11108347**

Report No. **11108347.1**

**2**

Page 2 of 3

Primary Victim:  **PETTE, LARNITA ANN**

| Home Address, City, State, ZIP: | | | |
|---|---|---|---|
| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |

| PROPERTY |
|---|
| REPORT NARRATIVE |

**Synopsis:**

Bobby Rivers was contacted by Deputies at her residence located at 363 Cerro St, in the city of Encinitas. Rivers was in an argument with her daughter over use of the house phone. Rivers attacked her daughter Larnita Pette and bite her three times on the shoulder. Rivers admitted to biting her daughter. Rivers was unwilling to cooperate with deputies. She was rambling sentences that didn't make sense and talking about incidents that happened in the past. Paramedics believes she may be suffering from a medical disorder such as the onset of dementia. Due to Rivers behavior, I believed she was a danger to others and was unable to care for her own safety. I had paramedics transport Rivers to Scripps Encinitas on a 5150 evaluation.

Pette wants prosecution for the battery by Rivers. Citizen Arrest Declaration is attached to this report.

**Origin:**

On 02-16-2011, at approximately 1024 hours, I responded to take a report of a battery at 363 Cerro St, in the city of Encinitas.

**Investigation:**

I arrived at the above mentioned address. As I walked up to the front door I could hear two females arguing inside. I knocked on the door and was contacted by Larnita Pette and Bobby Rivers. Pette had three bite marks on her right shoulder and minor bleeding from the bites. Rivers was rambling sentences that didn't make sense and continued to talk about events in the past. Several times Rivers said she wanted us to get her daughter out of the house. When we asked her why, she said she didn't want that and wanted her daughter to stay. Rivers was very uncooperative and would not follow deputies instructions. She continued this behavior throughout our investigation.

Rivers was evaluated by Encinitas Paramedics. During there evaluation, they thought she may have the onset of dementia.

Due to Rivers' continuing behavior during our investigation and statements made both by Rivers and Pette. I believed Rivers was a danger to herself and others. While restraining River to the ambulance bed she attempted to bite deputies and paramedics while holding her hands.

This record has been recorded as being Released pursuant to California Penal Code 11077-11081. Subsequent distribution of information contained is restricted

| Reporting Officer | Division / Organization | |
|---|---|---|
| **SH5379 - SANDERS, DEREK** | Encinitas Station by SEC. 11 | |
| | ENCINITAS PATROL AM | |
| Report Date | Detective Assigned | |
| 02/16/2011 13:19:14 | | |

2

# EXHIBIT 2

LAW OFFICES OF
## ROCHELLE & GRIFFITH
A LIMITED LIABILITY PARTNERSHIP

1991 VILLAGE PARKWAY, SUITE 105
ENCINITAS, CALIFORNIA 92024
TELEPHONE (760) 944-9901
FACSIMILE (760) 944-9902

September 16, 2014

To whom it may concern

Re:    Bobbye J. Rives

Dear Sir or Madam:

I was the attorney for Bobbye J. Rives who passed away on September 14, 2014. I assisted Ms. Rives in the preparation of her estate plan that included a Will and a Living Trust known as the Bobby J. Rives Trust dated November 30, 2011 (the "Trust").

Due to the death of Ms. Rives, the current Trustees of the Trust are Ralph Sanders and Beverly Murray-Calcote.   Ralph Sanders and Beverly Murray-Calcote are also the Executors under Ms. Rives Will.    Please be advised that they and they alone have complete control over all real property, personal property and other assets of the Trust or that were otherwise owned by Ms. Rives.

Further, please be advised that Ms. Rives daughter, Larnita ("Nita") Ann Pette, has no control over any of the Trust assets or real property under any circumstances.  She also has no right to access Ms. Rives residence. Ms. Pette and Ms. Rives have had a contentious relationship that has included calls to Adult Protective Services and Temporary Restraining Orders against Ms. Pette.

Any effort of Ms. Pette to assert control over any of the assets of the Trust or the estate of her mother or to gain access to Ms. Rives residence are against the express wishes of Ms. Rives and are contrary to her estate planning documents and the law.

Please feel free to contact me should you have any questions.    You may also contact the Co-Trustees, Ralph Sanders (714-262-8378) or Beverly Murray-Calcote (310-985-1501) for further information concerning the Trust or Ms. Rives.

Sincerely,

Russell E. Griffith

3

# EXHIBIT 3

LAW OFFICES OF
## ROCHELLE & GRIFFITH
A LIMITED LIABILITY PARTNERSHIP

1991 VILLAGE PARKWAY SUITE 105
ENCINITAS, CALIFORNIA 92024
TELEPHONE (760) 944-9901
FACSIMILE (760) 944-9902

November 21, 2012

To whom it may concern

Re:    BOBBYE J. RIVES
       363 Cerro Street, Encinitas, CA

Dear Sir or Madam:

*Pette
LARNITA (DTR)
phone number:
707-853-2049*

I am the attorney for Bobbye J. Rives. In November of 2011, I assisted Ms. Rives with her estate planning. The immediate purpose of creating her estate plan was to make it clear to everyone that Ms. Rives did not want her daughter, Larnita ("Nita") Ann Pette, to have any control over her person or assets under any circumstances.

Ms. Rives took this position in her estate planning as a result of traumatic events at the hands of Larnita. In 2011, Larnita had her mother physically removed from her home under protest and admitted against her will for a psychological evaluation to which she was released after protest.   Further Larnita physically assaulted Ms. Rives.

Ms. Rives is virtually deaf.   She is also elderly and gets extremely agitated and fearful when her daughter is around her. With her hearing impairment and the fact that she speaks very loudly, she could be confused with having capacity issues.

Ms. Rives has appointed her nephew, Ralph Sanders as one of her Successor Trustees and Agent under her Power of Attorney. His contact number is (714) 262-8378. If Larnita attempts to assert any control over Ms. Rives, please contact Mr. Sanders immediately.

Thank you for your assistance. Please feel free to contact me should you have any questions.

Sincerely,

Russell E. Griffith

| | |
|---|---|
| Case Name: | *PETTE v. MURRAY-CALCOTE, et al.* |
| Case No.: | SDSC Case No. 37-2015-00015654-CU-PO-CTL |

**PROOF OF SERVICE**
C.C.P. §1013(a), C.R.C. 2003(3), 2005(1)

DEC 30 '15 PM 12:21

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

     I am employed in the County of San Diego, State of California. I am over the age of eighteen (18) and am not a party to the action. My business address is 401 B Street, Suite 2220, San Diego, California 92101.

     On December 21, 2015, I served the following document(s):

- **FIRST AMENDED COMPLAINT FOR: (1) ELDER ABUSE – NEGLECT (2) WRONGFUL DEATH (3) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (4) DEFAMATION – COUNT 1 (5) DEFAMATION – COUNT 2 (6) NEGLIGENCE – COUNT 1 (7) NEGLIGENCE – COUNT 2 (8) TRESPASS TO PERSONAL PROPERTY (9) CONVERSTION**

on all interested parties in this action by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed to:

| | |
|---|---|
| Christopher J. Albence, Esq. | Patrick L. Hosey, Esq. |
| Albence & Associates APC | Hosey & Bahrambeygui, LLP |
| 7777 Fay Avenue, Suite 205 | 225 Broadway, Suite 1460 |
| La Jolla, CA 92037 | San Diego, CA 92101 |
| 858.454.0024 | 619.231.0500 |
| chris@albence.com | phosey@hbattorneys.com |

☒    **BY UNITED STATES MAIL:** I enclosed the document(s) in a sealed envelope, or package, addressed to the person(s) at the address(es) listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same date that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the USPS, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Diego, California.

☐    **BY OVERNIGHT MAIL:** I enclosed the document(s) in a sealed envelope/box provided by our overnight delivery carrier and addressed to the person(s) at the address(es) listed above, and placed the envelope/package for collection and overnight mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for overnight mailing. On the same date that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the overnight delivery carrier with fees fully prepaid. I am employed in the county where the

1   mailing occurred.  The envelope/box was placed with the overnight delivery carrier at San Diego, California.

2   ☐   **BY E-MAIL OR ELECTRONIC TRANSMISSION**:  Based on a court order or an agreement
3   of the parties to accept service by e-mail or electronic transmission, I caused the document(s) listed above to be sent to the person(s) at the e-mail addresses shown on the attached service
4   list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

5   ☐   **BY ELECTRONIC FILING (CM/ECF SERVICE)**:  Pursuant to the Electronic Case Filing
6   Administrative Policies and Procedures, the foregoing document(s) will be served by the Court via NEF and hyperlink to the document.  Registration as a CM/ECF user constitutes consent to
7   electronic service through the Court's transmission facilities. On December 21, 2015, I checked the CM/ECF docket for this case and determined that the following person is on the Electronic
8   Mail Notice List to receive NEF transmission at the email address(es) indicated below:

9                                    **[See attached]**

10   ☐   **BY MESSENGER SERVICE**:  I served the document(s) by placing it/them in an envelope,
     or package, addressed to the person(s) at the address(es) listed above and providing it/them to
11   Knox Attorney Service for service.  A Proof of Service by Knox Attorney Service will accompany the original Proof of Service and be maintained in our file.

12
     I declare under penalty of perjury under the laws of the State of California that the above is true
13   and correct.

14   Executed on December 21, 2015, at San Diego, California.

15

16                                                    Caroline Stonehouse

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

# EXHIBIT 3

Daniel W. Abbott, Esq., SBN 218334
Stephen D. Blea, Esq., SBN 294339
WITHAM MAHONEY & ABBOTT, LLP
401 B Street, Suite 2220
San Diego, California 92101
Telephone (619) 407-0505
E-Mail: abbott@wmalawfirm.com

Attorneys for Larnita Ann Pette,
Petitioner

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ORANGE

## CENTRAL JUSTICE CENTER

| | |
|---|---|
| In The Matter of: | Case No. _____ |
| THE BOBBYE J. RIVES TRUST<br>dated November 30, 2011 | [ROA # _____ ] |
| | **PETITION FOR ORDER:**<br>**(1) REMOVING RALPH SANDERS &<br>BEVERLY MURRAY–CALCOTE AS<br>TRUSTEES;**<br>**(2) SURCHARGING RALPH SANDERS &<br>BEVERLY MURRAY–CALCOTE;**<br>**(3) DENYING TRUSTEE COMPENSATION<br>TO RALPH SANDERS & BEVERLY<br>MURRAY–CALCOTE;**<br>**(4) INSTRUCTING CO-TRUSTEES TO<br>PRODUCE FURTHER INFORMATION &<br>ACCOUNTINGS;**<br>**(5) INSTRUCTING CO-TRUSTEES TO<br>DISTRIBUTE ASSETS OF THE TRUST;**<br>**(6) ENJOINING RALPH SANDERS &<br>BEVERLY MURRAY–CALCOTE FROM<br>FURTHER ACTS AS TRUSTEES;**<br>**(7) PROHIBITING USE OF TRUST ASSETS<br>TO PAY LEGAL EXPENSES TO OPPOSE<br>PETITION;**<br>**(8) APPOINTING INTERIM TRUSTEE; AND**<br>**(9) APPOINTING SUCCESSOR TRUSTEE.** |
| | Date: _____<br>Time: _____<br>Dept.: _____<br>Judge: _____ |

1

PETITION TO REMOVE TRUSTEES, ET AL.

Petitioner, Larnita Ann Pette ("Petitioner"), as a beneficiary of The Bobbye J. Rives Trust dated November 30, 2011 ("Trust") respectfully submits this *Petition for Order: (1) Removing Ralph Sanders & Beverly Murray–Calcote As Trustees; (2) Surcharging Ralph Sanders & Beverly Murray–Calcote; (3) Denying Trustee Compensation To Ralph Sanders & Beverly Murray–Calcote; (4) Instructing Co-Trustees To Produce Further Information & Accountings; (5) Instructing Co-Trustees To Distribute Assets Of The Trust; (6) Enjoining Ralph Sanders & Beverly Murray–Calcote From Further Acts As Trustees; (7) Prohibiting Use Of Trust Assets To Pay Legal Expenses To Oppose Petition; (8) Appointing Interim Trustee; and (9) Appointing Successor Trustee*, and allege upon information and belief as follows:

## I.    FACTUAL BACKGROUND

**A.    Establishment of the Trust and Death of Trustor.**

1.    The Bobbye J. Rives Trust was established by trustor Bobbye J. Rives ("Trustor") on or about November 30, 2011. A true and correct copy of the Trust is attached as <u>Exhibit "1"</u> to the Notice of Lodgment ("NOL") lodged concurrently herewith.

2.    Trustor died on September 14, 2014.

3.    The Trust became irrevocable upon Trustor's death.

**B.    Primary Parties At Issue.**

      **i.    Petitioner Larnita Ann Pette.**

4.    Current beneficiary of the Trust and Trustor's daughter.

      **ii.    RALPH SANDERS ("Sanders").**

5.    Current co-trustee and beneficiary of the Trust and nephew of Trustor.

      **iii.    BEVERLY MURRAY–CALCOTE ("Calcote").**

/ / /

/ / /

PETITION TO REMOVE TRUSTEES, ET AL.

6.  Current co-trustee and remainder beneficiary of the Trust and niece of Trustor.

   iv.  **Annie Lee Rives ("Annie")**[1].

7.  Current beneficiary of the Trust and sister-in-law of Trustor.

   v.  **Mary Jo Pullin ("Pullin").**

8.  Current beneficiary of the Trust and sister-in-law of Trustor.

   vi.  **Frances Hayes ("Hayes").**

9.  Current beneficiary of the Trust and sister-in-law of Trustor.

   vii.  **Shelly Sharp ("Sharp").**

10.  Current beneficiary of the Trust and goddaughter of Trustor.

## C.  **Key Provisions of the Trust.**

11.  Upon Trustor's death, the Trust provides for the following:

   i.  **Payment of Debts, Funeral Expenses and Taxes.**

12.  The Trustees are directed to pay all expenses of Trustor's last illness, burial, debts, inheritance or estate taxes. These final expenses are to be allocated pro-rata between the proceeds from the sale of the Residence (as defined below) and the remainder of the Trust estate. (Trust, Article IV, Section 4.1.)

   ii.  **Specific Gifts.**

13.  Thereafter, the Trust provides for the distribution of Trustor's vehicle to Sharp. All tangible personal property of Trustor is to be given to be gifted in accordance with Trustor's wishes as indicated in a "Gift List or as otherwise specified and all personal property not identified as a gift to a specific person is to be given to the Disabled American Veterans charitable organization. (Trust, Article IV, Section 4.2.1.)

---

[1] As Annie Rives shares the same last name as Trustor, Petitioner elects to use her first name as a shorthand reference for convenience. No disrespect is intended.

### iii.    Sale of Trustor's Principal Residence.

14.    Thereafter, the Trust provides that the trustee is to sell Trustor's principal residence. (Trust, Article IV, Section 4.2.2) any proceeds remaining from the sale of the residence after payment of all debts, liens and expenses related to the sale are to be divided equally among Annie, Pullin, Hayes, Petitioner and Sanders. (Trust, Article IV, Section 4.2.2.)

### iv.    Distribution of Remaining Balance of Trust Estate.

15.    Following the aforementioned specific gift and distribution of the proceeds of the sale of the residence, the remaining assets of the Trust estate, referred to as the "remainder of the Trust estate," is to be distributed to Calcote. (Trust, Article IV, Section 4.2.3.)

## D.    Trusteeship

16.    The Trust appoints Sanders and Calcote as successor co-trustees of the Trust (each, a "Co-Trustee" and, collectively, the "Co-Trustees"). (Trust, Article II, Section 2.2.)

17.    Petitioner is informed and believe that Sanders and Calcote accepted such appointment and, at all times since Trustor's death, each have acted as a Co-Trustee.

## E.    Co-Trustees Have Repeatedly Failed to Respond to Petitioner's Requests for Information in a Timely Manner.

18.    Throughout their tenure as trustees, the Co-Trustees and their legal counsel have repeatedly failed to respond to Petitioner's requests for information in a timely manner. This is evidenced by correspondence between Petitioner and counsel for the Co-Trustee's counsel wherein Petitioner and Petitioner's counsel repeatedly requested information and status updates which were not provided to Petitioner in a timely manner, if at all. Such information included, but was not limited to, the status of distributions to beneficiaries after the sale of Bobbye J. Rives' residence, the status of Petitioner's personal items left at the residence, and an accounting of the Trust's assets and expenditures related thereto.

19.     For example, Petitioner requested an accounting of the Trust in December 2014, yet the Co-Trustees did not provide an accounting until December 2015, one year later. A true and correct copy of the letter whereby Petitioner requested this accounting is attached as Exhibit "2" to the NOL. Furthermore, Petitioner's repeated requests for information regarding the sale of the Residence (as defined below) were not fulfilled. True and correct copies of correspondence in which Petitioner's requests were rebuffed are attached as Exhibit "3" to the NOL.

**F.      Trust Accounting.**

      **i.      Initial Accounting and Objection Thereto By Petitioner.**

20.     Petitioner was provided with a first accounting of the Trust on or about December 11, 2015 ("First Accounting").

21.     The First Accounting was produced more than three (3) months after the one-year anniversary of Trustor's death and a year after the residence was sold and Petitioner first asked for an accounting. A true and correct copy of the First Accounting is attached as Exhibit "4" to the NOL.

**G.      Value and Assets of the Trust Estate.**

22.     Petitioner is informed and believe the assets of the Trust have at all relevant times consisted of interests in: (i) a personal bank account; (ii) life insurance policy with a cash value; (iii) monies found in Trustor's residence and (iv) that certain real property located at 363 Cerro Street, Encinitas, California ("Residence"). (First Accounting, Schedule A.)

23.     Petitioner is informed and believe that the aggregate value of the assets of the Trust as of the date of death was approximately $664,839.73. (First Accounting, Schedule A.)

      **i.      Sale of Residence.**

24.     The Residence was sold on or about December 17, 2014, for a purchase price of $580,000. A true and correct copy of the Seller's Closing Escrow Statement ("Escrow Statement") in connection with the sale of the Residence is attached as Exhibit "5" to the NOL.

25.     Fees, expenses and other costs of the sale totaled $41,754.71 and seller received a property tax credit of $49.78, resulting in total fees and costs of $41,704.93 ("Escrow Fees"). (Escrow Statement.)

26.     Thus, the proceeds from the sale of the Residence payable to the Trust were reduced to a net total of $538,295.07. (See, e.g., First Accounting, Schedule B; Escrow Statement.) Petitioner is informed and believes the sales proceeds from the sale of the Residence were deposited in a checking account in the name of the Trust.

**ii.     Pro Rata Portions of Residence Sale Proceeds.**

27.     Petitioner's pro rata share of the net proceeds from the sale of the Residence is approximately $107,659. Petitioner has received $85,000 as of the Fist Accounting.

**iii.     Distributions through November 30, 2015.**

28.     Petitioner is informed and believe that the distributions totaling $514,899.83 the beneficiaries of the Trust up to and including November 30, 2015 as follows:

- An aggregate amount of $90,025.00 has been distributed to Sanders in a total of 18 separate distributions.

- An aggregate amount of $85,000 has been distributed to Pullin in a total of 2 separate distributions.

- An aggregate amount of $85,000 has been distributed to Hayes in a total of 2 separate distributions.

- An aggregate amount of $85,000 has been distributed to Annie in a total of 2 separate distributions.

- An aggregate amount of $85,000 has been distributed to Petitioner in a total of 2 separate distributions.

///

PETITION TO REMOVE TRUSTEES, ET AL.

- An aggregate amount of $85,000 has been distributed to Pullin in a total of 2 separate distributions.

- $84,874 has been distributed to Calcote in a single distribution.

(First Accounting, Schedule D.)

29.     Petitioner further asserts the Co-Trustees distributed $8,800 to Petitioner, Annie, and Pull subsequent to the First Accounting.

30.     Petitioner is informed and believes, and on that basis alleges, that the aggregate value of the assets of the Trust was approximately $69,594.84 as of November 30, 2015. (First Accounting, Schedule E.)

31.     Petitioner has not been provided with any updated accounting or other information related to the assets of the Trust for the period commencing December 1, 2015, to date.

**H.     Co-Trustees Improperly Charged Trust for Fees and Costs.**

32.     Petitioner is informed and believes that the Co-Trustees have improperly charged the Trust for a number of fees and costs throughout the administration.

**i.      Co-Trustees Have Double-Charged the Trust for Escrow Fees in Connection with the Sale of the Residence.**

33.     The Co-Trustees have improperly "double-charged" the Trust for the Escrow Fees. As set forth in paragraph 25, above, these fees totaled $41,704.93 and were withheld from the total purchase price paid in the sale of the Residence, as evidenced by the Escrow Statement. The Trust's receipt for the sale of the Residence was $538,295.07 – the net amount of the sale proceeds, not the gross amount. Therefore, the Escrow Fees were paid directly through escrow on the transaction and should not be reflected in the First Accounting.

34.     Yet an identical amount is listed as a disbursement from the Trust and identified as "Escrow Fees for Sale of 363 Cerros." (First Accounting, Schedule C.)

35.     Thus, the Trust has paid these fees twice: once as a deduction to the purchase price for the Residence and again as a disbursement from the Trust.

**ii.     Co-Trustees Have Received Excessive Reimbursements for Mileage.**

36.     The Co-Trustees have received disbursements for mileage reimbursements totaling almost $10,000 during the period of the First Accounting. (First Accounting, Schedule C.)

37.     Calcote has received a total of $7,090 for reimbursements for mileage. Over $5,000 of this total was for the period commencing the after Trustor's death and through January 7, 2015, less than four months later. (First Accounting, Schedule C.)  The standard mileage rates for business was 57.5 cents per mile in 2015. At this rate of reimbursement, Calcote's total mileage reimbursement represents over 12,000 miles driven in the 15-month period of the First Accounting.  This represents over 40 round-trip visits to San Diego from Calcote's principal place of residence in Los Angeles in the 15-month accounting period, a frequency of approximately one visit every two weeks.

38.     Sanders has received $2,851.57 in mileage reimbursements during the period of the First Accounting. At the standard mileage reimbursement rate of 57.5 cents per mile in 2015, this amount represents over 4,900 miles driven in the 15-month accounting period.  This represents over 24 round trip visits to San Diego from Sanders' principal place of residence in Santa Ana, California, a frequency of approximately one visit every 6 weeks.

**iii.     Co-Trustees Have Failed to Allocate Costs of Administration in Accordance with the Trust.**

39.     The Trust provides that the costs associated with the sale of the Residence are to be paid from the proceeds of such. (Trust, Article IV, Sections 4.1, 4.2.2.)

40.     All other costs are to be paid pro-rata between the proceeds of the sale of the Residence and the remainder. (Trust, Article IV, Sections 4.1.)

///

8

41.     The proceeds from the sale of the Residence constitute approximately 87.24% of the corpus of the Trust, and the remaining 12.76% is comprised of the "remainder of the Trust estate" ("Remainder"). Thus, all of the costs associated with the sale of the Residence and 87.24% of the general costs of administration should be paid from the proceeds from the sale of the Residence. The remaining 12.76% of the general costs of administration should be paid from the Remainder.

42.     The costs of the sale of the Residence were paid from the sale proceeds, as evidenced by the Escrow Statement. Thus, the remaining costs of administration should be allocated 87.24% – 12.76% between the Residence sales proceeds and the Remainder as set forth above and in accordance with the terms of the Trust.

43.     The Co-Trustees have not indicated or provided any information regarding the categorization of the costs in connection with the sale of the Residence and the general costs of administration, nor have they provided information regarding whether these costs were properly allocated in accordance with the terms of the Trust.

44.     However, distributions to Calcote as the sole remainder beneficiary (discussed in greater detail below) indicate that the general costs of administration were not allocated in accordance with the terms of the Trust and that the general costs of administration have been allocated to and paid solely from the proceeds of the sale of the Residence.

I.     **Co-Trustees Made Improper Distributions to Themselves.**

     i.     **Sanders has received an additional $5,025 in distributions.**

45.     As discussed above, Sanders is a beneficiary of the Trust who is to receive 20% of the proceeds from the sale of the Residence. The other four (4) beneficiaries who are to receive 20% of the proceeds from the sale of the Residence (Petitioner, Annie, Pullin and Hayes) each received $85,000, according to the First Accounting.  Beneficiary Sanders, on the other hand, received a total of

9

$90,025.00, which is $5,025.00 more than the other beneficiaries of the Residence. (First Accounting, Schedule D.)

46.     Furthermore, the distributions to Sanders were made in various amounts and in a relatively haphazard manner, as opposed to the other beneficiaries of the Residence who received distributions of equal amounts at approximately the same time periods. (First Accounting, Schedule D.)

**ii.     Distribution to Calcote Is Improper.**

47.     Calcote is the sole remainder beneficiary.

48.     As set forth above, the total value of the estate at the beginning of the First Accounting period was $664,839.73, of which $580,000.00 was the price at which the Residence was sold. Therefore, the value of the Remainder was $84,839.73.

49.     On February 12, 2015, Calcote received a distribution in the amount of $84,874.83. (First Accounting, Schedule D.)

50.     This distribution is improper for several reasons.

51.     First, this distribution is technically more than the value of the remainder according to Schedule A of the First Accounting.

52.     The First Accounting also shows that $5,673.28 was disbursed as a "Partial repayment of home expenses advanced from residue." (First Accounting, Schedule C.) This disbursement is listed separately from the distribution, indicating Calcote, as the remainder beneficiary, has received over $90,000, well in excess of the value of the remainder of the Trust Estate.

53.     Furthermore, these amounts suggest that there have been no deductions from the remainder to pay its pro-rata portion of the general costs of administration. As discussed above, approximately 12.76% of the general costs of administration should have been allocated to and paid from the remainder.

///

10

54.     Furthermore, full distribution of the remainder of the Trust estate prior to the closing of the administration necessarily means that the remainder beneficiary will not bear her pro-rata portion of any of the remaining costs of the administration, such as final taxes, attorney fees or other final costs.

## II.     GENERAL ALLEGATIONS

### A.     Co-Trustees' Fiduciary Duties

55.     The Co-Trustees' fiduciary duties as trustees include, but are not limited to, the following:

- The duty to "administer the trust according to the trust instrument" (Prob. Code §16000);

- The duty to "administer the trust solely in the interest of the beneficiaries" (Prob. Code, § 16002(a));

- The duty to "deal impartially with [multiple beneficiaries]" and act "impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries" (Prob. Code § 16003);

- The duty "not to use or deal with trust property for the trustee's own profit...nor to take part in any transaction in which the trustee has an interest adverse to the beneficiary" (Prob. Code, § 16004(a));

- The duty to "make the trust property productive under the circumstances and in furtherance of the purposes of the trust" (Prob. Code § 16007);

- The duty to "administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument" (Prob. Code, § 16040);

- The duty to "comply with the prudent investor rule" (Prob. Code, § 16046);

PETITION TO REMOVE TRUSTEES, ET AL.

- The duty to "invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." (Prob. Code, § 16047(a));

- The duty to "make a reasonable effort to ascertain facts relevant to the investment and management of trust assets" (Prob. Code, § 16047(d)); and,

- When delegating investment or management functions, duty to "exercise prudence" in "(1) Selecting an agent, (2) Establishing the scope and terms of the delegation, consistent with the purposes and terms of the trust, and (3) Periodically reviewing the agent's overall performance and compliance with the terms of the delegation." (Prob. Code, § 16052).

56.    Since Trustor's death, the Co-Trustees have breached their fiduciary duties as co-trustees, including but not limited to the aforementioned duties, in several respects, as set forth herein.

**B.    Co-Trustees' Breaches of Fiduciary Duty**

        **i.    Breach of Duty to Administer the Trust in Accordance with Its Terms.**

57.    The Co-Trustees have breached their duty to administer the Trust in accordance with its terms, as required by applicable law including but not limited to Probate Code section 16000, in several respects.

58.    The Co-Trustees have failed to allocate the costs of administration among the beneficiaries as directed by the terms of the Trust, as set forth more fully above.

59.    Furthermore, Petitioner is informed and believes the Co-Trustees have failed to set aside a reserve for Trust expenses and is concerned the Co-Trustees are not carefully tracking the distributions made to each beneficiary and the allocation of costs among beneficiaries.

///

60.    Each of the Co-Trustees, Sanders and Calcote, have received excessive sums as reimbursements for mileage as set forth more fully above.

61.    The Co-Trustees have double-charged the costs of the sale of the Residence against the Trust.

62.    The Co-Trustees have made improper distributions to themselves.

63.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

**ii.    Breach of Duty to Deal Impartially with All Beneficiaries.**

64.    The Co-Trustees have breached their duty to deal impartially with all beneficiaries, as required by applicable law including but not limited to Probate Code section 16003, in several respects.

65.    As set forth more fully above, the Co-Trustees have each received improper distributions during the accounting period.

66.    The haphazard schedule of distributions to Sanders suggests the Co-Trustees are making distributions to themselves at their discretion, whereas other beneficiaries must wait until the Co-Trustees decide to provide a distribution. For example, Sanders first received a distribution in December 2014, several months before the other Residence beneficiaries received a first distribution.

67.    The distribution to Calcote is in excess of the value of the remainder of the Trust estate. Furthermore, this amount of the distribution to Calcote indicates she has not been required to pay her pro rata share of the costs of the administration.

68.    This demonstrates the Co-Trustees do not intend to treat all the beneficiaries equally, constituting a breach of their duty to treat all beneficiaries impartially imposed by Probate Code, section 16003.

69.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

### iii.    Breach of Duty Not to Deal with Trust Property for the Trustee's Own Profit.

70.    The Co-Trustees have breached their duty not to use or deal with Trust property for their own profit, as required by applicable law including but not limited to Probate Code section 16004, in several respects.

71.    As set forth more fully above, the Co-Trustees have each received improper distributions during the accounting period.

72.    The haphazard schedule of distributions to Sanders suggests the Co-Trustees are making distributions to themselves at their discretion, whereas other beneficiaries must wait until the Co-Trustees decide to provide a distribution. For example, Sanders first received a distribution in December 2014, several months before the other Residence beneficiaries received a first distribution.

73.    The distribution to Calcote is in excess of the value of the remainder of the Trust estate. Furthermore, this amount of the distribution to Calcote indicates she has not been required to pay her pro rata share of the costs of the administration.

74.    Each of the Co-Trustees, Sanders and Calcote, have received excessive sums as reimbursements for mileage as set forth more fully above.

75.    The Co-Trustees have double-charged the costs of the sale of the Residence against the Trust.

76.    Petitioner is informed and believes Calcote utilized her husband, Joseph Calcote, President of Saxxon and Associates, Inc., as the real estate listing agent in connection with the sale of the Residence for her own personal household profit.

77.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

/ / /

/ / /

iv.     **Breach of Duty to Administer the Trust Solely in the Interest the Beneficiaries.**

78.     The Co-Trustees have breached their duty to administer the Trust solely in the interest of the beneficiaries, as required by applicable law including but not limited to Probate Code section 16002, in several respects.

79.     As set forth more fully above, the Co-Trustees have each received improper distributions during the accounting period.

80.     The haphazard schedule of distributions to Sanders suggests the Co-Trustees are making distributions to themselves at their discretion, whereas other beneficiaries must wait until the Co-Trustees decide to provide a distribution. For example, Sanders first received a distribution in December 2014, several months before the other Residence beneficiaries received a first distribution.

81.     The distribution to Calcote is in excess of the value of the remainder of the Trust estate. Furthermore, this amount of the distribution to Calcote indicates she has not been required to pay her pro rata share of the costs of the administration.

82.     Each of Sanders and Calcote have received excessive sums as reimbursements for mileage as set forth more fully above.

83.     The Co-Trustees have double-charged the costs of the sale of the Residence against the Trust.

84.     Petitioner is informed and believes Calcote utilized her husband as the real estate agent in connection with the sale of the Residence for her own personal household profit.

85.     The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

/ / /

/ / /

### v. Breach of Duty to Make Trust Property Productive

86. The Co-Trustees have breached their duty to make the trust property productive under the circumstances and in furtherance of the purposes of the trust, as required by applicable law including but not limited to Probate Code section 16007, in several respects.

87. As set forth more fully above, the Co-Trustees were responsible for selling the Residence and distributing the net proceeds amongst the Trust beneficiaries. The Residence was the most valuable asset held by the Trust, however the Co-Trustees sold the Residence significantly below the fair market value.

88. On or about December 17, 2014, the Co-Trustees sold the Residence for $580,000. During that same period, however, the Residence's estimated value was approximately $691,800, a difference of over $110,000. Furthermore, comparable homes within the same vicinity as the Residence were valued significantly higher than $580,000.

89. Had the Co-Trustees sold the Residence at fair market value, each of the beneficiaries would have received an additional $15,900 in Trust distributions.

90. The reduced sale of the Residence suggests the Co-Trustees failed to take reasonable steps to secure a fair market buyer, to the detriment of each of the Trust beneficiaries. Petitioner is further informed and believes that Calcote utilized her husband as the real estate agent in connection with the sale of the Residence for her own personal household profit.

91. The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

### vi. Breach of Duty to Administer Trust with Reasonable Care

92. The Co-Trustees have breached their duty to administer the Trust with reasonable care, skill, and caution under the circumstances that a prudent person acting in a like capacity would use, as required by applicable law including but not limited to Probate Code section 16040, in several respects.

93.     As set forth above, the Co-Trustees have failed to exercise reasonable care in connection with the Trust, the Trust assets, and the ultimate administration of the Trust.  First, the haphazard schedule of distributions to Sanders suggests the Co-Trustees are making distributions to themselves at their discretion, whereas other beneficiaries must wait until the Co-Trustees decide to provide a distribution.  For example, Sanders first received a distribution in December 2014, several months before the other Residence beneficiaries ever received a distribution.

94.     Second, both Sanders and Calcote have received excessive sums as reimbursements for mileage, as set forth more fully above.

95.     Third, the Co-Trustees have double-charged the costs of the sale of the Residence against the Trust.  Additionally, the Co-Trustees have made improper distributions to themselves.

96.     Fourth, after Trustor's passing, the Co-Trustees failed to inform Petitioner that she was the beneficiary of a life insurance policy.  While the insurance company sent claim forms to the Co-Trustees, they nevertheless failed to notify Petitioner of her rights under this life insurance policy.

97.     Finally, on or about December 17, 2014, the Co-Trustees sold the Residence for $580,000.  During that same period, however, the Residence's estimated value was approximately $691,800, a difference of over $110,000.  Had the Co-Trustees sold the Residence at fair market value, each of the beneficiaries would have received an additional $15,900 in Trust distributions.

98.     "[Trustees] must exercise, in the execution of the trust, the degree of care and diligence which a man of ordinary prudence would exercise in the management of his own affairs." (In re Whitney's Estate (1926) 78 Cal.App. 638, 645.)  In light of the above stated failings, the Co-Trustees have failed to exercise this ordinary degree of care and diligence.

99.     The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

///

### vii.    Breach of Duty to Comply with the Prudent Investor Rule

100.    The Co-Trustees have breached their duty to comply with the prudent investor rule, as required by applicable law including but not limited to Probate Code section 16046, in several respects.

101.    Pursuant to the prudent investor rule, "[a] trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes terms, distribution requirements, and other circumstances of the trust." (Prob. Code § 16047.)  As set forth above, the Co-Trustees have failed to manage the Trust's assets in the manner required under Probate Code Section 16046.

102.    First, the haphazard schedule of distributions to Sanders suggests the Co-Trustees are making distributions to themselves at their discretion, whereas other beneficiaries must wait until the Co-Trustees decide to provide a distribution.  For example, Sanders first received a distribution in December 2014, several months before the other Residence beneficiaries ever received a distribution.

103.    Second, both Sanders and Calcote have received excessive sums as reimbursements for mileage, as set forth more fully above.

104.    Third, the Co-Trustees have double-charged the costs of the sale of the Residence against the Trust.  Additionally, the Co-Trustees have made improper distributions to themselves.

105.    Finally, on or about December 17, 2014, the Co-Trustees sold the Residence for $580,000.  During that same period, however, the Residence's estimated value was approximately $691,800, a difference of over $110,000.

106.    The Residence was the most valuable asset held by the Trust, however the Co-Trustees sold the Residence significantly below the fair market value.  Had the Co-Trustees sold the Residence at fair market value, each of the beneficiaries would have received an additional $15,900 in Trust distributions.

107.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

### viii.    Breach of Duty to Ascertain Facts Relevant to Management of Trust Assets

108.    The Co-Trustees have breached their duty to make a reasonable effort to ascertain facts relevant to the investment and management of trust assets, as required by applicable law including but not limited to Probate Code section 16047(d), in several respects.

109.    As set forth above, the Co-Trustees have failed to manage the Trust's assets in the manner required under Probate Code Sections 16046 and 16047(d).

110.    On or about December 17, 2014, the Co-Trustees sold the Residence for $580,000. During that same period, however, the Residence's estimated value was approximately $691,800, a difference of over $110,000.

111.    The Residence was the most valuable asset held by the Trust, however the Co-Trustees sold the Residence significantly below the fair market value. Had the Co-Trustees sold the Residence at fair market value, each of the beneficiaries would have received an additional $15,900 in Trust distributions.

112.    The significantly reduced sale of the Residence suggests the Co-Trustees failed to take reasonable steps to ascertain relevant facts to secure a fair market buyer, to the detriment of each of the Trust beneficiaries.

113.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

### ix.    Breach of Duty to Exercise Prudence when Delegating Management

114.    The Co-Trustees have breached their duty to exercise prudence when delegating investment and management functions pertaining to the Trust. (Prob. Code § 16052.)

115.    As set forth more fully above, the Co-Trustees were responsible for selling the Residence and distributing the net proceeds amongst the Trust beneficiaries. The Residence was the most valuable

asset held by the Trust, however the Co-Trustees sold the Residence significantly below the fair market value.

116.    On or about December 17, 2014, the Co-Trustees sold the Residence for $580,000. During that same period, however, the Residence's estimated value was approximately $691,800, a difference of over $110,000. Furthermore, comparable homes within the same vicinity as the Residence were valued significantly higher than $580,000.

117.    Had the Co-Trustees sold the Residence at fair market value, each of the beneficiaries would have received an additional $15,900 in Trust distributions. The reduced sale of the Residence suggests the Co-Trustees failed to take reasonable steps to secure a fair market buyer, to the detriment of each of the Trust beneficiaries.

118.    Petitioner is further informed and believes that Calcote utilized her husband, Joseph Calcote, as the real estate agent in connection with the sale of the Residence for her own personal household profit. Mr. Calcote was responsible for securing a sale for significantly beneath the fair market value of the home.

119.    Pursuant to Section 16052, the Co-Trustees delegation of management duties property required "[p]eriodically reviewing the agent's overall performance and compliance with the terms of the delegation." (Prob. Code § 16052(a)(3).)  Given Mr. Calcote was responsible for the sale of the Residence for approximately $110,000 below market value, the Co-Trustees failed: (1) to exercise reasonable prudence in delegating management duties to Mr. Calcote; and (2) to review Mr. Calcote's performance to ensure the Residence was properly managed.

120.    The aforementioned breaches have damaged Petitioner in an amount according to proof at trial.

///

///

### III.    REQUESTED RELIEF

**A.    Order Removing Sanders and Calcote as Co-Trustees**

121.    A trustee may be removed "[O]n petition of a Trustor, cotrustee, or beneficiary under Section 17200." (Prob. Code, § 15642(a).) Here, this element is met, as Petitioner is both beneficiaries of the Trust.

122.    Section 15642 also sets for the grounds for removal of a trustee:

> (b) The grounds for removal of a trustee by the court include the following:
> (1) Where the trustee has committed a breach of the trust.
> (2) Where the trustee is insolvent or otherwise unfit to administer the trust.
> (3) Where hostility or lack of cooperation among cotrustees impairs the administration of the trust.
> (4) Where the trustee fails or declines to act.
> (5) Where the trustee's compensation is excessive under the circumstances.
> …
> (8) If the trustee is substantially unable to resist fraud or undue influence…
> (9) For other good cause.

123.    Here, multiple of the aforementioned criteria for removal are met, specifically, (b)(1) breach of trust, and (b)(9) other good cause.

124.    As set forth more fully above, the Co-Trustees have committed multiple breaches of trust in connection with the duties they owe to the beneficiaries.

125.    The Co-Trustees have demonstrated their willingness to disregard the terms of the Trust in favor of their own self-interests. Not only have they breached their express duty to administer the Trust in accordance with its terms, this has also created an irreparably divided loyalty that unacceptably compromises their ability to administer the Trust in the best interest of all of the beneficiaries.

126.    Accordingly, the Co-Trustees should be removed.

/ / /

/ / /

PETITION TO REMOVE TRUSTEES, ET AL.

**B.    Order Surcharging the Co-Trustees.**

       **i.    Surcharge Ralph Sanders $5,000 for Additional Distributions to Him.**

127.    Probate Code, section 16420 provides that monetary liability may be imposed on a trustee in connection with an actual or threatened breach of trust:

> (a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate:
> ...
> (3) To compel the trustee to redress a breach of trust by payment of money or otherwise.
> ...
> (b) The provision of remedies for breach of trust in subdivision (a) does not prevent resort to any other appropriate remedy provided by statute or the common law.

128.    Other provisions of the Probate Code support the principle that the court may impose surcharge or a similarly appropriate liability remedy upon a trustee in connection with breach of trust or breach of fiduciary duty. (Prob. Code, §§ 800, 1000, 17001, and 17206.)

129.    As set forth more fully above, the Co-Trustees have committed multiple breaches of trust and fiduciary duties. Those breaches have damaged the Trust and the beneficiaries, in amounts according to proof at trial. Accordingly, they should be surcharged for damages caused by such breaches, in an amount according to proof at trial.

**C.    Order Denying Trustee Compensation to the Co-Trustees.**

130.    Probate Code, section 16420 provides that a trustee's compensation may be reduced or denied in connection with a breach of trust:

> (a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate:
> ...
> (7) To reduce or deny compensation of the trustee...

PETITION TO REMOVE TRUSTEES, ET AL.

131.    Here, as set forth more fully above, the Co-Trustees have committed multiple breaches of trust and fiduciary duties. Those breaches have damaged the Trust and the beneficiaries, in amounts according to proof at trial.

132.    Furthermore, the terms of the Trust specifically prohibit compensation to a trustee who is also a beneficiary of the Trust so long as that person's share is greater than the minimum fee set forth in the Trust terms. (Trust, Article VIII, Section 8.5.) Both Co-Trustees are beneficiaries of the Trust and are to receive well in excess of the minimum compensation provided for by the Trust.

133.    Accordingly, Sanders and Calcote should be denied compensation as Co-Trustees.

**D.    Order Instructing Co-Trustees to Produce Further Information and Accountings.**

134.    As set forth more fully above, the Co-Trustees have failed to respond to numerous requests for information by Petitioner and refused to provide Petitioner with information related to the Trust, its assets and administration. This is in direct violation of Probate Code § 16061, which provides that a trustee shall provide information related to the administration of the Trust to a beneficiary upon such beneficiary's request.

135.    Furthermore, the Co-Trustees have failed to adequately account for certain costs, expenditures and reimbursements they have charged against the Trust.

136.    Accordingly, the Co-Trustees should be ordered to provide the information Petitioner has requested to date as well as provide additional accounting details including, but not limited to, the following:

- Mileage logs used to calculate mileage reimbursements;

- All bank statements related to the Trust, including copies of all checks written against the Trust account;

- All bank statements related to bank accounts held by Trustor at the time of her death;

PETITION TO REMOVE TRUSTEES, ET AL.

- All statements for Trustor's charge cards, including, but not limited to:

    i. Nordstrom Credit Card;

    ii. Neiman Marcus Credit Card;

    iii. Home Depot Credit Card;

    iv. AAA Financial Credit Card;

    v. Exxon Mobil Credit Card;

    vi. Kohl's Credit Card;

- All invoices from Russell Griffith pertaining to the Trust; and

- All documents, including electronic documents, relevant to the computation of the first Trust accounting.

**E.    Order Instructing Co-Trustees to Distribute Remaining Share to Petitioner.**

137.    Petitioner as beneficiary has the right to petition the court concerning the internal affairs of the Trust, including but not limited to, for the purpose of construing the trust instrument, determining the rights and duties of the interested parties under the Trust, and instructing the trustee. (Prob. Code, section 17200.)

138.    The Trust provides that the Co-Trustees are to distribute the net sale proceeds from the sale of the Residence in equal shares among Annie, Pullin, Hayes, Petitioner and Sanders.

139.    Petitioner is informed and believes that as of November 30, 2015, there are approximately $69,594.84 of net sale proceeds from the sale of the Residence still undistributed to the beneficiaries.

140.    Accordingly, Petitioner seeks an order instructing the Co-Trustees to distribute to Petitioner her equal share of the remaining Trust assets, including any amounts paid or owing to the Trust as a surcharge against the Co-Trustees, in an amount according to proof at trial.

/ / /

/ / /

24

PETITION TO REMOVE TRUSTEES, ET AL.

**F.**     <u>Order Enjoining Further Acts by the Co-Trustees</u>

141.     Probate Code, section 16420 provides that a trustee may be enjoined from further acts in the case of a threatened breach of trust:

> (a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate:
> ...
> (2) To enjoin the trustee from committing a breach of trust.
> ...
> (b) The provision of remedies for breach of trust in subdivision (a) does not prevent resort to any other appropriate remedy provided by statute or the common law.

142.     Here, there are numerous threatened breaches of trust.

143.     As set forth more fully above, the Co-Trustees have failed to follow the express terms of the Trust, have charged the Trust for improper costs and fees and failed to observe proper Trust procedures and formalities and demonstrated a lack of intent to treat all beneficiaries equally.

144.     Petitioner is informed and believe the Co-Trustees intend to continue to administer the Trust in this manner.

145.     The aforementioned threatened breaches are wrongful and pose great and irreparable injury to Petitioner. Accordingly, they should be enjoined immediately and permanently by virtue of the facts alleged above. Petitioner has no other plain, speedy or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Petitioner's interests.

**G.**     <u>Order Prohibiting Co-Trustees from Using Trust Monies to Pay Attorney Fees Incurred in Defense of This Petition</u>

146.     The essence of any opposition by the Co-Trustees to this petition will be to protect their decisions to benefit themselves as beneficiaries to the detriment of Petitioner as beneficiary. Thus, all

legal fees and costs incurred by the Co-Trustees to oppose this petition should be borne by them personally, rather than from any trust monies.

147.    Additionally, it would be manifestly inequitable for the Co-Trustees to avail themselves of the Trust's assets to advance their own personal agenda, while Petitioner is forced to expend her own monies.  This is particularly true where Petitioner is not only awaiting further distribution, but the Co-Trustees have unduly and prematurely benefitted themselves from Trust assets in derogation of their duties and the Trust terms.

148.    Accordingly, Petitioner seeks an order instructing the Co-Trustees that no Trust monies or assets are to be expended on fees charged by attorneys representing the Co-Trustees, or on other legal expenses incurred by the Co-Trustees, in connection with their opposition to the instant petition

## H.    Order Appointing Both Interim, and Permanent, Successor Trustee

### i.    Appointment of New Trustee as Agreed Upon by Beneficiaries.

149.    The Trust provides that, if both Co-Trustees are unable or unwilling to serve as trustee, the beneficiaries of the Trust may select a successor trustee or, if the beneficiaries do not do so, a professional fiduciary, a state or federally regulated financial institution or an appropriate individual is to be appointed by court order.  (Trust, Article VIII, Section 8.1.)

150.    Petitioner is informed and believes the beneficiaries of the Trust should collectively decide on a successor trustee.

151.    Accordingly, upon removal of the Co-Trustees, Petitioner requests that the court appoint a new trustee as collectively selected by the Trust beneficiaries

### ii.    Appointment of Temporary Trustee in Interim.

152.    Probate Code, section 16420 provides that the court may appoint a temporary trustee in connection with an actual or threatened breach of trust:

///

PETITION TO REMOVE TRUSTEES, ET AL.

(a) If a trustee commits a breach of trust, or threatens to commit a breach of trust, a beneficiary or cotrustee of the trust may commence a proceeding for any of the following purposes that is appropriate:

...

(4) To appoint a receiver or temporary trustee to take possession of the trust property and administer the trust...

153.    Here, as set forth above, there have been multiple actual and threatened breaches of trust by the Co-Trustees justifying their immediate replacement. To the extent of any interim period pending litigation until a final order appointing a permanent successor trustee, a temporary trustee is necessary to prevent any further breach of trust by the Co-Trustees.

154.    Accordingly, upon removal of the Co-Trustees, Petitioner requests that the court appoint a temporary trustee of the Trust in the interim period pending litigation until a final order appointing a permanent successor trustee.

## IV.    NOTICE, JURISDICTION AND VENUE

155.    The names, relationships, ages, and addresses of all Trust beneficiaries and all others to whom notice is to be given under Probate Code Sections 17203 and 15804 are set forth below.

| Name and Address | Age | Relationship to the Trust |
|---|---|---|
| Annie Lee Rives<br>215 W. Geer Street<br>Durham, NC 27701 | Adult | Beneficiary |
| Larnita Pette<br>c/o Daniel W. Abbott, Esq.<br>401 B Street, Suite 2220<br>San Diego, CA 92101 | Adult | Beneficiary |
| Mary Jo Pullin<br>213 W. Geer Street<br>Durham, NC 27701 | Adult | Beneficiary |
| Frances Hayes<br>215 W. Geer Street<br>Durham, NC 27701 | Adult | Beneficiary |

/ / /

PETITION TO REMOVE TRUSTEES, ET AL.

Ralph Sanders                              Adult        Beneficiary & Co-Trustee
2321 E. Fourth Street, Suite 109
Santa Ana, CA 92705

Beverly Muray-Calcote                      Adult        Beneficiary & Co-Trustee
PO Box 881354
Los Angeles, CA 90009

156.    As the Trust is irrevocable, and the principal place of administration of the Trust is Orange County, California, this Court has jurisdiction under CPC § 17003(a), and venue is proper in the Orange County Superior Court under CPC § 17005(a)(2).

## V.    **PRAYER**

WHEREFORE, Petitioner prays for an order of this court:

1.    Removing RALPH SANDERS as co-trustee of The Bobbye J. Rives Trust dated November 30, 2011;

2.    Removing BEVERLY MURRAY–CALCOTE as co-trustee of The Bobbye J. Rives Trust dated November 30, 2011;

3.    Surcharging RALPH SANDERS personally in an amount according to proof at trial;

4.    Surcharging BEVERLY MURRAY–CALCOTE personally in an amount according to proof at trial;

5.    Denying RALPH SANDERS any compensation for services as co-trustee of the Trust;

6.    Denying BEVERLY MURRAY–CALCOTE any compensation for services as co-trustee of the Trust;

7.    Instructing RALPH SANDERS and BEVERLY MURRAY–CALCOTE to produce information and accounting as requested by Petitioner including, but not limited to, the following:

- Mileage logs used to calculate mileage reimbursements;

- All bank statements related to the Trust, including copies of all checks written against the Trust account;

PETITION TO REMOVE TRUSTEES, ET AL.

- All bank statements related to bank accounts held by Trustor at the time of her death;

- All statements for Trustor's charge cards, including, but not limited to:

  i.  Nordstrom Credit Card;

  ii.  Neiman Marcus Credit Card;

  iii.  Home Depot Credit Card;

  iv.  AAA Financial Credit Card;

  v.  Exxon Mobil Credit Card;

  vi.  Kohl's Credit Card;

- All invoices from Russell Griffith pertaining to the Trust; and

- All documents, including electronic documents, relevant to the computation of the first Trust accounting.

8.   Instructing RALPH SANDERS and BEVERLY MURRAY–CALCOTE to distribute Petitioner's share of remaining Trust assets;

9.   Instructing RALPH SANDERS that no Trust monies or assets are to be expended on fees charged by attorneys representing the RALPH SANDERS, or on other legal expenses incurred by RALPH SANDERS, in connection with his opposition to the instant petition;

10.   Instructing BEVERLY MURRAY–CALCOTE that no Trust monies or assets are to be expended on fees charged by attorneys representing the BEVERLY MURRAY–CALCOTE, or on other legal expenses incurred by BEVERLY MURRAY–CALCOTE, in connection with her opposition to the instant petition;

11.   Temporary, preliminary, and permanent injunctive and equitable relief, including a temporary restraining order, preliminary injunction, and permanent injunction enjoining further acts by RALPH SANDERS from further acts as trustee of the Trust, is issued;

PETITION TO REMOVE TRUSTEES, ET AL.