ORIGINAL

Larnita Pette
_____ (Full Name)

larnita.pette@gmail.com
_____ (Email Address)

2588 El Camino Real
_____ (Address Line 1)

Suite F-195
_____ (Address Line 2)

(707) 853-2049
_____ (Phone Number)

_____ (Fax Number)

Plaintiff in Pro Se



FILED

NOV 21 2017

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Larnita Pette _____, | Case No.: 8:17-ap-01068-MW |
| Plaintiff, | |
| vs. | **PLAINTIFF** |
| Ralph E. Sanders _____ | Larnita Pette _____ 'S |
| _____ | (name) |
| _____, | **INITIAL DISCLOSURES** |
| Defendant(s). | **PURSUANT TO FEDERAL RULE** |
| | **OF CIVIL PROCEDURE 26** |

**TO DEFENDANT** _Ralph E. Sanders_____

**AND HIS/HER/ITS COUNSEL OF RECORD:**

PLAINTIFF ___Larnita Pette_____, referred to below as the

"disclosing party," hereby submits the following disclosures in accordance with

Fed. R. Civ. P. 26 ("Rule 26")

*Form prepared by Public Counsel*
*© 2010, 2013 Public Counsel.*
*All rights reserved*
*Revised: October 2013*

1

**Rule 26(a)(1)(A)(i)** – The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support his or her claims or defenses, unless the use would be solely for impeachment:

| Name of Individual Likely to have Discoverable Information | Contact Information (Address and Telephone Number) | Subject Matter of Discoverable Information |
|---|---|---|
| Preliminary Witness List (Exhibit 1) | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

2

**Rule 26(a)(1)(A)(ii)** – A copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in his or her possession, custody, or control and may use to support his or her claims or defenses, unless the use would be solely for impeachment.  (Please note that the disclosing party may either produce the documents, electronically stored information, and tangible things <u>or</u> fill in the table below.)

| **Description by Category** of Document, Electronically Stored Information, or Tangible Thing | **Description by Location** of Document, Electronically Stored Information, or Tangible Thing |
|---|---|
| On or around 8/15/14, Defendant was provided with Plaintiff's 51 (including exhibits)page response to Mrs. Bobbye Rives (Decedent) TRO request. (Exhibit 2 minus exhibits). | Documents are located with Plaintiff, Defendant, Plaintiff's attorney, Dan Abbott, Witham Mahoney Abbott, LLP and Defendant's attorney, Patrick Hosey, Hosey & Bahrambeygui. |
| On or around 2/4/16, Defendant was provided with 111 pages of documents supporting Plaintiff's claims in response to his civil case discovery request. (Exhibit 3). RFP - ZP | |
| On 5/11/16, Defendant was provided with the San Diego County Sheriff's Victim Reports that directly refuted the claim by Sanders that Plaintiff was abusive to the Decedent, her mother (Exhibit 4). ZP | |
| Plaintiff may discover more relevant documents based on additional discovery requests. | |

3

**Rule 26(a)(1)(A)(iii)** – A computation of each category of damages claimed by the disclosing party, who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material (unless privileged or protected from disclosure) on which each computation is based, including materials bearing on the nature and extent of injuries suffered:

Plaintiff is conferring with Dan Abbott, her attorney for both pending

lawsuits, and preparing a "Proof of Claim" for the co-defendant  Beverly

Monique Murray-Calcote's Chapter 7 Bankruptcy case 2:17-bk-11972. Both

"DEFENDANTS are jointly and severally liable for any damages

awarded to PLAINTIFF." The Defendant's damages will be identical to the

damages claimed in the "Proof of Claim" filed for Beverly Murray-Calcote's

Chapter 7 Bankruptcy.

4

**Rule 26(a)(1)(A)(iv)** – For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment:

There are no insurance agreements associated with this complaint.

Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26

# PROOF OF SERVICE

I, ___Kimberly Richardson___ (name), declare as follows.  I am over the age of 18 years. My address is:

___220 E. Connecticut St Ave___
Vista, CA 92084

On ___October 9, 2017___ (date), I served the foregoing document described as:

**Plaintiff** ___Larnita Pette___ **'s Initial Disclosures Pursuant to FRCP 26**

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in the United States mail in ___Encinitas, California___, addressed to:

                                                                    (city, state)

___Ralph E. Sanders___ (name)           _____ (name)
1251 W. Bishop (address)           _____ (address)
Santa Ana, CA 92703 (address)           _____ (address)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___October 9, 2017___ at ___Encinitas, California___.
                   (date)                     (place of signing)

                                                      (signature)

                   ___Kimberly Richardson___ (name)

# EXHIBIT 1

# Pette v. al - Preliminary Witness List

**Rev. Patrick Wafer**
Streamview Place
San Diego, CA

**Ann Rives**
*Sister-in-law overheard Rives verbally abuse Pette on multiple occasions; tried to reason with Rives unsuccessfully and wrote a letter to Rives to express her concerns over Rives treatment of Pette. After B. Rives death, Sanders attempted to detail to A. Rives details of Pette's alleged abuse of B. Rives. A. Rives corrected him on the facts.*
215 W. Geer St.
Durham, NC 27701
919-683-2080

**Karen Raposa**
*Banker to John and Bobbye Rives for over 40 years. Witnesses cognitive decline in Bobbye Rives. In 2010, after B. Rives mistakenly withdrew money from Pette checking account causing an overdraft and refused to admit that she made the mistake even when Ms. Raposa presented Rives with the withdrawal slip she signed, I told Ms. Rapsoa that is was time to put fraud alerts on B. Rives accounts. She agreed.*
Lead Teller
Wells Fargo Bank
2560 El Camino Real
Carlsbad, CA 92008
760-730-0692

**Loren Ibarra**
*Banker who serviced John Rives and Pette in the Fall of 2006 when Savings bonds in Rives and Pette names were cashed. The next day Ms. Ibarra was confronted by Bobbye Rives in bank for over 90 minutes about interest accrued on savings bonds. Rosita Coble was present and told Pette about the incident. As A result, Pette started seeking help for her mother because her behavior was irrational. After filing the lawsuits, Pette talked to Loren and she remembers the incident very clearly. We also discussed the fact that someone tried to access B. Rives bank accounts and that Ms. Rives claimed that B. Rives was saying that Pette was trying to get her money and that she had to go to the bank to straighten it out. Ms. Ilbarra stated she was aware of the accusations and that the bank knew that Pette was not involved.*
Service Manager
Wells Fargo Bank
Encinitas Main Branch
276a N. El Camino Real
Encinitas, CA 92024
760-942-9796

**Raymond I. Fink, MD**
*Bobbye Rives Endocrinologist (1/07-1/14)*
Diabetes & Endocrine Associates
Scripps Memorial Campus
9850 Genesee Avenue, Suite 415
La Jolla, CA 92037
858-622-7204

**Jeffery Wasserstrom, MD**
*Bobbye Rives Ophthalmologist Rives considered a non-compliant patient; concern
expressed over Rives living alone.*
5565 Grossmont Center Dr. #551
La Mesa, CA 91942
619-698-1088

**Dr. Nicholas Kubyk MD**
*Bobbye Rives Ophthalmologist Rives considered a non-compliant patient; willing to
assist Pette in referring Rives to a retinal specialist at Shiley to*
3405 Kenyon St. #513
San Diego, CA 92110
619-226-1877

**Dr. James Sinclair**
*Bobbye Rives Hematologist 2/07-9/14*
9850 Genesee Avenue, Suite 830
La Jolla CA 92037
858-552-1410

**Noli Cava, MD**
*Bobbye Rives PCP Multiple attempts made from 2006-2014 to get assistance to refer
Rives to Geriatric Specialists in Seniors medical specialty practice at UCSD. Attempted
to refer B. Rives to Geriatric Specialist; Psychiatrist; B. Rives refused; resisted referral
attempts.*
1933 Cable Street
San Diego, CA 92107-2522
619-221-4490

**Dr. Pen Fung Du**
*Bobbye Rives Cardiologist (2/2007-9/2014)*
345 Saxony Road, Suite 202
Encinitas, CA 92024
760-230-6660

# San Diego County Sheriff Department:

**Deputy Lewis Norman** (7/15/14, 7/22/14)
*7/15/14 - Responded to request by Det. Lawrence to evaluate B. Rives.*
P.E.R.T. Team

**Deputy Bronk** (12/20/10)
*Told Rosita Coble to give Pette and Rives space to work on their relationship
when she arrived at Rives home and interrupted P.E.R.T. follow-up interview
with Pette and Rives by telling Rives not to answer P.E.R.T. clinicians questions
"until her lawyer arrived." Also told Rives that if another call to the sheriff was
made that she would be taken in for follow-up.*
P.E.R.T. Team

**Detective William Thomas**
*Dectective lawrences case report of 7/15/14 was referred to Det. Thomas;
Pette reported suspicious death (Rives) to Det. Thomas; Det. Thomas
interviewed Sanders and B. Calcote.*
Sheriff's Elder Abuse Unit

**Detective Christopher Lawrence** (7/15/14)
*Referal of Suspected Domestic Violence against Larnita Pette by Scripps
Encinitas Memorial Hospital*

**Deputy Derek Sanders #5379** (2011)
Encinitas Sheriff's Station
175 North El Camino Real
Encinitas, CA 92024

**Christine Davies** (12/20/10, 7/15/14, 7/22/14)
P.E.R.T. Clinician
*7/15/14 After responding to Det. Lawrence's request to interview B. Rives, Ms.
Davies called and left voicemail for Pette stating that she had made a referral
to Geriatric specialist for B. Rives who could determine if her mother, Bobbye
Rives, problems were medical or mental.*

**Christine Jackson** (2/2011)
*2/18/11 - Removed guns and ammunition from B. Rives residence prior to her
release from the psych ward from the 5150 hold.*
Property Investigator
Property/Evidence Unit
5255 Mount Etna Drive
San Diego, CA 92117

**Rodney A. Sanders**
*Financial Advisor AND...*
*(Ralph Sanders brother who visited Rives at Scripps Mercy Behavioral Health Psych
Ward when she was on a 5150/5152 3-day Psychiatric  Hold in February 2011. Rodney*

*had previously visited Bobbye Rives no more than 3 times during the 40 years she lived at the same address)*
US Bancorp Investments, Inc.
12113 Hesperia Road
Victorville, CA 92395
800-872-2657

**George Sanders**
*Rives physically attacked Mr. Sanders hitting him in the back of the head. As children Rives was the one of the first to be in the middle of a fight.*
Bobbye Rives Half-Brother
303 E. Woodin Blvd.
Dallas, TX 75216-1827
214-421-5843 (work)

**Margo Sanders-Randle**
10131 Maya Linda Rd. #94
San Diego, CA 92126
619-251-0327 (cell)

**Cynthia McNamee**
*B. Rives attacked McNamee at reception following J. Rives memorial reception held at Rives home.*
Beverly Murray-Calcote's sister
310-259-5097

**Rhonda A. Sanders**
*Real Estate Broker with The Sher Group*
*Owner of Perfect Solutions, Etc.*
321 W. Queen Street #16
Inglewood, CA 90301
323-304-2455, Fax: 323-375-0558

**Rosalyn Baxter-Jones, MD**
*Family friend (Rives/Pette) of over 20 years Attempted to assist Mrs. Rives in 2011 when she was placed on a 5150 hold....and attempted to help coordinate Mrs. Rives care when she was hospitalized on 9/1/14. Dr. Jones has always been listed on hospital records of Rives family as a contact...until Mr. Sanders blocked access.*

**Lynn Baum M.A. (Audiologist)**
*Bobbye Rives had an appointment scheduled for 7/28/14. Hearing and comprehension deficits of Bobbye J. Rives. Mrs. Rives audiologist for over 4 years prior to her death.*
Maria-Receptionist
171 Saxony Rd. #111
Encinitas, CA 92024
760-298-5028

**Theresa Whetstone**
*Overheard Bobbye Rives verbally abusing of Pette on multiple occasions*
334-288-8076

**Patty Fernandez**
*Overheard Rives verbal abuse of Pette attempted to reason with Rives without success.
Attempted to*
87 Candlewood Gardens
Baldwinsville, NY 13027
315-727-9120

**Tina Buchanan MSW**  (3/14)
*Vital Care Home Health Social Worker interviewed B. Rives and Pette; recommended
Dr. Noli Cava recommended psychological follow-up for Mrs. Rives to Dr. Cava. and
made APS referrals on behalf of Ms. Pette. Buchannan followed up with Dr. Cava and
APS multiple times.*
Vital Care Home Health
444 Camino del Rio S., #219
San Diego, CA 92108
619-291-7888

**Andrea Cangiano LCSW**
Southern Caregiver Resource Center (SCRC)
Case Manager 2011-2013
Gentiva Social Worker 2014
Returned to SCRC 11/14
Southern Caregivers Resource Center
3675 Ruffin Rd, Suite 230
San Diego,CA 92123
858-268-4432

**Annie** (Pette's Physical Therapist-7/28/2014-10/2014)
*Present when Larnita Pette found out her mother had passed away*
Gentiva Health Services
408-390-8827 (cell)

**Michelle Schatel MFT** with SCRC
*During a conversation with Larnita Pette on 7/22/14, Mrs. Rives threatened Ms. Pette.
Ms. Schatel heard the threat and told Ms. Pette that as a mandated reporter, she was
obligated to call Adult Protective Services to report Mrs. Rives threat.*
Case Manager 2014 for Larnita Pette
Southern Caregiver Resource Center (SCRC)
3675 Ruffin Rd, #230
San Diego, CA 92123
858-268-4432

**Karen Dee APS Specialist**
Adult Protective Services (North County)
760-754-5807 (9/3/14)

**Lois Kelly, Esq.**
*An Elder Law specialist referred to Pette by SCRC. Pette began consulting with Ms. Kelly in 2012 shortly after being told by Ed Kirkman that Ralph Sanders "made all decisions for Mrs. Rives". Consulted with Ms. Pette regarding Ms. Rives.; Attorney for Larnita Pette who prepared Ms. Pette's 51 page response with exhibits and pictures; documented Ms. Rives physical abuse of Ms. Pette; also represented Ms. Pette at the TPO hearing on 8/15/14. Hearing was continued to 10/24/14 to allow Ms. Rives time to have response read to her and understand what the 51-page response contained.*
246 Witham Rd.
Encinitas, CA 92024
760-942-1903

**Donna Arnicar, RN**
*Retired ER Nurse who was present at the Rives home on 2/16/11 and was present in the home when paramedics and sheriff deputies put Mrs. Rives on a gurney to be transported to the hospital ER on a 5150. Ms. Arnicar's affidavit was attached to Ms. Pette's 51 page TRO response.*
276 Rosebay
Encinitas, CA 92024
760 230-6677

**Anna Barasas RN**
*3/14 – referred by Dr. Cava, suggested that Dr. Cava prescribe anti-anxiety medication for Rives; set up interview with social worker, Tina Buchannan.*
Case Manager for Bobbye Rives
Vital Care Home Health
444 Camino del Rio S., #219
San Diego, CA 92108
619-291-7888

**Tim Brennan**
Bobbye Rives Tax Preparer in 2014
HR Block
258 El Camino Real, Suite B1
El Camino Real
Encinitas, CA 92024
760-942-2259 *(4/4/14 voicemail concern expressed)*

**David Wells**
*Coordinated final arrangements for B. Rives; created file for and received all documents from Sanders and Calcote. Communicated details of arrangements with Sanders and Calcote. Informed Pette that he could not provide any details of*

*arrangements because Sanders and Calcote wanted all arrangements to be kept
"private" and presented the legal documents necessary to make those types of
decisions. However, he did provide Pette with the location of Rives internment.*
Formerly Eternal Hills Memorial Park
1999 El Camino Real
Oceanside, CA 92054

**Gregory K. Morones**
*Provided Pette with a portion of Rives ashes and a certified copy of Rives death
certificate. Sanders and Calcote agreed to Pette receiving the ashes and death
certificate, HOWEVER, Calcote refused to pay for the costs ($46.00) associated with
providing Pette her mother's ashes and death certificate (even though 5 copies of the
DC were ordered).*
Location Manager
Eternal Hills Memorial Park, Mortuary and Cemetery
1999 El Camino Real
Oceanside, CA 92054
760-754-5301 (Direct Line)

**Daniel Given, MD**
*Instructed staff at LVC not to notify Pette (as indicated on Rives face sheet) of Rives
death, but to notify Sanders who was not listed on the face sheet.*
Medical Director
Las Villas de Carlsbad
10666 N. Torrey Pines Rd.
La Jolla, CA 92037
858-956-4579
858-554-7876

**Terry CVS**
*Assisted B Rives with filling her prescriptions for over 30 years. Witnessed the decline
in Rives cognitive skills; hearing difficulty to hear and comprehension; increased
agitation and frustration with clerks and pharmacists.*
CVS & Longs Drug Pharmacy Clerk
129 N. El Camino Real
Encinitas, CA 92024
760-942-2134

**Cap-Tel**
*Called multiple times by B. Rives to "fix" Cap-Tel phone device due to improper
operation by B. Rives.*

**Pacific Sales**
*7/13 – B. Rives purchased new refrigerator, stove, microwave, and dishwasher. After
deliver and installation, Pette brought Rives back to the store because she was
insisting that the appliances that were delivered were not the ones she bought.*

*Salesman assured her by showing her that the appliances she received were the same ones that were on the showroom floor.*

## Rosita Coble

*12/20/10 – interrupted P.E.R.T. interview of B. Rives and Pette. Dep. Bronk asked her to leave and to give Rives and Pette the space needed to work on their relationship. Coble left the Rives home and called Adult Protective services (APS) to make a report that the police were at the Rives home.  On 2/16/11 visited B. Rives in Scripps Encinitas ER while Rives was being examined on a 5150 hold. Sanders called the ER claiming to be Rives grandson and talked to Rives while she was in the ER. Coble, Sanders, and his brother, Rodney Sanders, a financial Advisor visited B. Rives while she was on a 3-day psychiatric hold at the Scripps Behavioral Unit. Summer of 2011, Coble assisted Rives in finding an attorney because Rives wanted to change her will. Coble provided Rives with the name of an attorney. Sanders stopped returning Coble's calls. Rives started accusing Coble of hitting her and verbally abusive. It was only after Rives death, (Coble was not notified by any family member) that Coble learned that Rives had changed her will naming Sanders and B. Calcote as executors and trustees. Coble told Pette that if she had known that she would have advised B. Rives against it.*

1141 Avenida Esteban
Encinitas, CA 92024
760-942-1707

## Brenda Sharp

*Conversation with Sanders as far back as 2/ 2011 regarding B. Rive.s*

5659 #7 N. Arlington Blvd.
San Pablo, CA 94806
510-459-8729

## Joseph Calcote (Murray-Calcote's Husband)

*Hired by sanders and Calcote as real estate agent to sell the Rives residence.*

President
Saxxon & Associates (listing agent for sale of 363 Cerro Street, Encinitas, CA 92024)
5774 Rodeo Rd.
Los Angeles, CA 90016
818-624-6244

## Ed Kirkman

*11/18/12 told Ms. Pette that Ralph Sanders needed to be contacted about Mrs. Rives because Ralph Sanders was now making all decisions for Mrs. Rives. Mr. Kirkman told Pette that Sanders showed him a letter stating the same: reveived $1,000 from Sanders and Calcote for watching Rives residence despite fact that residence had a functioning and monitored whole house security system.*

359 Cerro Street
Encinitas, CA 92024
858-480-9013

**Jacinta Kirkman**
359 Cerro Street
Encinitas, CA 92024
858-480-9013

**Ganapathy Chockalingam (Ganz)**
*Professor of Computer Science at UCSD; Helping Pette develop Pet focused internet
start-up company. Agreed to act as an informal advisor to develop front end and back
end development for Pette's website and start-up company.*
369 Cerro Street
Encinitas, CA 92024
858-229-4364

**Renu Singh**
369 Cerro Street
Encinitas, CA 92024

**Bruno Gherardi**
*Buyer of residence in private sale of property; was prepared to increase purchase offer
if initial offer on residential property was rejected.*
363 Cerro Street
Encinitas, CA 92024

**Marie-Noelle Gherardi**
*Buyer of residence in private sale; was prepared to increase purchase offer if initial
offer on residential property was rejected.*
363 Cerro Street
Encinitas, CA 92024
760-753-4161

**Laura Makings**
337 Cerro Street
Encinitas, CA 92024
760-634-3878

## Scripps Mercy Behavioral Unit

**Claudio Cabrejos, MD** (Psychiatry) (2/11)
*Accepted transfer from Scripps Encinitas and admitted Rives to Scripps Mercy
Behavioral Unit on an involuntary 5150 hold that was updated to a 5152 hold.*
823 Gateway Center Way
San Diego, CA 92102
619-515-2300

**Melissa Helm, RN** (2/11)

*Discharge nurse; Rives left with Rosita Coble (friend) and Ralph (nephew), 2/19/11.*

**Arlene LaGary, MFT** (2/11)
*SW perspective Patient is vulnerable elderly woman. Mercy Behavioral Health Records 2/17/11.*

## Scripps Memorial Hospital Encinitas

**Pamela T. Corrington, RN-NG**
*Nursing Care Plan Summary 9/4-9/5/14, pages 27, 35 Rives wished she could work things out with her daughter.*

**Oceanna Gage MSW**
*Advance Directive Surrogates sent from Griffith placed in Pt. chart "no info" in hospital per Pt and Sanders. (9/2/14)*

**Jill Moldenhauer, LCSW**
*Talked to Karen Dee who stated she was not aware of niece Beverly DPOA or if there is an actual document stating so..."nephew appears to be most involved and trustworthy". (9/3/14)*

**Lerida Rabara RN PCN**
*Ralph Sanders will make the final decision on SNF placement (9/4/14).*

**Diane Slayton RN PCN**
*SNF facility options discussed with Ralph Sanders (9/5/14).*

**Mark Saverino, LCSW**
*Patient discharged to LVDC SNF - Karen Dee left message informing her of patient's discharge. (9/5/14).*

## Las Villas de Carlsbad

**Cynthia Waller**
*Talked to Sanders and Dee who told her that Pette mentally, physically and emotionally abused my mother. (9/14)*
Las Villas de Carlsbad
1088 Laguna Drive
Carlsbad, CA 92008
760-4343-7116

**Cannot read initials LVN** 9/14/14
*Reported Rives death, talked to Dr. Given who told LVN <u>not to call Pette</u>, NOTE: Pette was listed as the primary emergency contact. Beverly Calcote listed as alternate contact. Sanders was <u>not</u> listed as a contact on the LVC face sheet. Information*

*provided by B. Rives; LVN instructed by Dr. Givens to contact Sanders and was provided with Sanders phone number by Dr. Given. LVN noted Sanders responses.*

# EXHIBIT 2

**EA-120**

## Response to Request for Elder or Dependent Adult Abuse Restraining Orders

*Clerk stamps date here when form is filed.*

FILED
~~~~~~~~~~ DIVISION
~~~ ~~~ 13 AM 9: 29
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**Use this form to respond to the *Request* (Form EA-100)**

- Read *How Can I Respond to a Request for Elder or Dependent Adult Abuse Restraining Orders? (Form EA-120-INFO)*, to protect your rights.
- Fill out this form and take it to the court clerk.
- Have someone age 18 or older—**not you**—serve the person requesting protection in ① by mail with a copy of this form and any attached pages. *(Use Form EA-250, Proof of Service of Response by Mail.)*

*Fill in court name and street address:*

Superior Court of California, County of San Diego

① **Elder or Dependent Adult Seeking Protection**

Name: Bobbye Rives

☐ Name of person asking for the protection, if different *(This is the person named in item ③ of the request (Form EA-100).)*: _____

*Court fills in case number when form is filed.*

**Case Number:**
37-2014-00024600-CU-PT-NC

② **Person From Whom Protection Is Sought**

a. Your Name: Larnita Pette

Your Lawyer *(if you have one for this case)*:

Name: Lois B. Kelly          State Bar No.: 138798

Firm Name: Law Office of Lois Brown Kelly

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or e-mail.)*:

Address: 246 Witham Rd.

City: Encinitas          State: CA     Zip: 92024

Telephone: (760)942-1903       Fax: Same

E-Mail Address: Loisbrownkellylaw@gmail.com

Present your response and any opposition at the hearing. Write your hearing date, time, and place from Form EA-109 item ③ here:

| Hearing Date | ➔ Date: 8/15/2014 | Time: 8:30 |
| | Dept.: 21 | Room: |

**If you were served with a Temporary Restraining Order, you must obey it until the hearing.** At the hearing, the court may make orders against you that last for up to five years.

③ ☐ **Personal Conduct Orders**

a. ☐ I agree to the orders requested.

b. ☒ I do not agree to the orders requested.

c. ☐ I agree to the following orders *(specify)*: _____

_____

_____

④ ☐ **Stay-Away Orders**

a. ☐ I agree to the orders requested.

b. ☒ I do not agree to the orders requested.

c. ☐ I agree to the following orders *(specify)*: _____

_____

_____

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2014, Mandatory Form
Welfare & Institutions Code, § 15657.03

**Response to Request for Elder or Dependent Adult Abuse Restraining Orders**
**(Elder or Dependent Adult Abuse Prevention)**

EA-120, Page 1 of 3



Case Number:
37-2014-00024600-CU-NPT-NC

**(5)** ☐ **Move Out Orders**
    a. ☐ I agree to the orders requested.
    b. ☒ I do not agree to the orders requested.
    c. ☐ I agree to the following orders *(specify):* _____

_____

_____

**(6)** ☐ **Additional Protected Persons**
    a. ☐ I agree that the persons listed in item **(6)** of Form EA-100 may be protected by the order requested.
    b. ☐ I do not agree that the persons listed in item **(6)** of Form EA-100 may be protected by the order requested.

**(7)** **Guns or Other Firearms and Ammunition**
If you were served with Form EA-110, *Temporary Restraining Order,* you cannot own or possess any guns, other firearms, or ammunition. (See item **(8)** of Form EA-110.) You must sell to or store with a licensed gun dealer, or turn in to a law enforcement agency, any guns or other firearms in your immediate possession or control within 24 hours of being served with Form EA-110. You must file a receipt with the court. You may use Form EA-800, *Proof of Firearms Turned In, Sold, or Stored* for the receipt.
    a. ☒ I do not own or control any guns or firearms.
    b. ☐ I have turned in my guns and firearms to the police or sold them to or stored them with a licensed gun dealer.
        A copy of the receipt    ☐ is attached.    ☐ has already been filed with the court.

**(8)** ☐ **Other Orders**
    a. ☐ I agree to the orders requested.
    b. ☒ I do not agree to the orders requested.
    c. ☐ I agree to the following orders *(specify):* _____

_____

_____

_____

**(9)** ☒ **Denial**
I did not do anything described in item **(7)** of Form EA-100. *(Skip to **(13)**.)*

**(10)** ☐ **Justification or Excuse**
If I did some or all of the things that the person in **(1)** has accused me of, my actions were justified or excused for the following reasons *(explain):*

    ☒ *Check here if there is not enough space below for your answer. Put your complete answer on an attached sheet of paper and write "Attachment 10—Justification or Excuse" as a title. You may use Form MC-025,* Attachment.
See Attachment-10-Justification or Excuse

_____

_____

_____

_____

Revised July 1, 2014

**Response to Request for Elder
or Dependent Adult Abuse Restraining Orders**
(Elder or Dependent Adult Abuse Prevention)

EA-120, Page 2 of 3

 →

Case Number:
37-2014-00024600-CU-PPT-NC

**(11)** ☐ **Lawyer's Fees and Costs**

    a. ☒ I ask the court to order payment of my   ☒ Lawyer's fees   ☐ Court costs
       The amounts requested are:

| Item | Amount | Item | Amount |
|---|---|---|---|
| Attorney fees 6 hours at $150/hr | $ 900.00 | | $ |
| Court time at $150.00/hr. est 1 hr. | $ 150.00 | | $ |
| | $ | | $ |
| | | | $ |

      ☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or Form MC-025 and write "Attachment 11—Lawyer's Fees and Costs" for a title.*

    b. ☒ I ask the court to deny the request of the person asking for protection named in **(1)** that I pay his or her lawyer's fees and costs.

**(12)** Number of pages attached to this form, if any: _____

Date: _8/12/2014_

Lois Kelly
*Lawyer's name (if any)*

      ▶ _Lois B. Sully_
      *Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: _August 12, 2014_

Larnita A. Pette
*Type or print your name*

      ▶ _Larnita A. Pette_
      *Sign your name*

Revised July 1, 2014

**Response to Request for Elder
or Dependent Adult Abuse Restraining Orders
(Elder or Dependent Adult Abuse Prevention)**

EA-120, Page 3 of 3

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Rives v. Patte | 37-2014-00024600-CU-PT-NC |

ATTACHMENT (Number): __1__

*(This Attachment may be used with any Judicial Council form.)*

ATTACHMENT 10 - JUSTIFICATION OR EXCUSE

Page 1

Introduction

Mrs. Rives, hereafter Mom, was free to go anywhere on July 13th in the evening in the garage. She had taken Larnita's I- phone and wouldn't return it. Larnita had her hand in Mom's Duster Housecoat pocket on her phone. Mom was only restrained if she chose to be. She could eat, go into the house, make food, anything she wanted, only Larnita would be going with her. When Mom let down her guard and Larnita grabbed her I-phone Mom became violent injuring Larnita severely.

Please see further explanation of the behavior of Mom on July 13, 2014 on page 3.

In order to understand what has happened to Larnita the Court must view the time line of abuse to Larnita.

Mom was always high strung. Larnita didn't realize Mom had become physical until after her Father died and she wanted to have his beloved ostrich cowboy boots in March of 2008. Mom attacked her and pulled her hair and hit Larnita as she sat on the floor in the Master Bedroom of Mom's house. That night Larnita left Mom's house.

When Larnita talked to her Father on the phone and visited her parents for Thanksgiving and again on Christmas in 2007, her Father told her Mom was getting mean. Her father never elaborated and Larnita never pressed him to explain, but in hindsight, Mom's reaction to his boots told Larnita that Mom must have been physically attacking her Father. He told Larnita both Holidays he was going to look for a place for himself. Had Larnita realized how bad Mom's behavior had gotten, she would have tried to help her Father get help for Mom. Two days before her father died on January 7, 2008, Larnita's Father asked her to talk Mom. Mom was still arguing with him about tires he purchased for Larnita's car during Larnita's Thanksgiving 2007 visit. Mom told Larnita she "ate him out" for not finding out how much tread was left on the tires. Larnita still feels that if she had acted earlier, her father would be alive today.

Larnita and her father had been subject all of her life to Mom's paranoia, great swings in emotional behavior and abusive behavior. She has tried to get Mom's physician to refer Mom to a program at UCSD called Seniors Only Care. He referred her once, about 4 years ago, but she refused to get out of the car at UCSD.

Despite referrals requests for Mom made by several social workers, Mom's physician refused to make another such a referral. Mom blames everyone else for the results of these behaviors. Mom tells everyone Larnita hit her or bit her which is what she had done to Larnita.

Set out below is a chronological outline of the verifiable abuses to which Larnita has been subject, Mom's being 5150'd, being declared a vicious person and Mom's explanations of the abuse to others.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __1__ of __43__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

| | MC-025 |
|---|---|
| SHORT TITLE:<br>Rives v. Pette | CASE NUMBER:<br>37-2014-00024600-CU-PPT-NC |

## ATTACHMENT (Number): 2

*(This Attachment may be used with any Judicial Council form.)*

Continued Page 2

SEPTEMBER 7, 2010 – Mom threw a bag of garbage over Larnita on a bed. Larnita while  living with Mom supported herself with her savings. Exhibit No 1

DECEMBER 3 2010 – Mom bit Larnita because Larnita would not give mom her cell phone because Larnita refused to tell Mom whom she was talking to. Mom was paying the cell phone bill at that time. Exhibit 2, Bites

DECEMBER 15, 2010 - Mom hit Larnita with a vacuum cleaner hose attachment and Larnita called 911. Mom told the Deputy she could hit Larnita whenever she felt Larnita wasn't doing what she wanted her to do. The Deputy scheduled a follow up visit by the PERT Team.   EXHIBIT 3 (Notes from Diary re hit with vacuum cleaner hose)

DECEMBER 20, 2010 - PERT (Deputy Bronk and PERT Clinician Christine Davis)- told Mom if there was another incident she would be taken in for an evaluation. EXHIBIT 3

FEBRUARY 15, 2011 – Larnita spent the day at the Senior Center with friend, Donna. She returned to Mom's home at 7:30 p. m. to an outraged Mom who shouted at Donna about Larnita not being home to fix her dinner at a certain time. Donna a retired ER nurse with 30 years ER experience, tried to calm Mrs. Rives down by accepting the blame for keeping Larnita out so late.

FEBRUARY 16, 2011 – Mom, that morning still complaining about Donna and the night before,  attacked Larnita while she was in the kitchen trying to hurry to fix her breakfast.  Mom caused large bruises and visible bite marks. Larnita had a 4" scratch on her left inner thigh, a 4"x3" deep black bruise with a full mouth impression of Mom's teeth on her right inner thigh, a trail of bite marks on the back of Larnita's shoulder and visible tooth marks on Larnita's right forearm where Mom broke the skin with her teeth. Larnita called 911. Larnita required treatment for the bite marks. EXHIBIT 4

FEBRUARY 16, 2011 – 911 call responser was the same Deputy who responded to the December 15, 2010 911 call and who made the referral to the PERT Team.   The Deputy sent Mom to Scripps Encinitas for evaluation. She was 5150'd by the hospital and sent to Scripps Mercy facility where she stayed for three days. Mom was declared a violent person by the Sheriff because of the injuries she inflicted on Lanita.  EXHIBIT  4 (ER notes, Thigh Bruise, Right Shoulder Injury, Diary- Note of the Bite)
The Deputy said a court order was obtained declaring Mom a violent person. This required removal of all guns from the home before Mrs. Rives could be released from the Psychiatric Ward. Mom told the Deputy, who visited her in the hospital to get her signature on the form for the removal of all guns, that she only gave Larnita little bites.  Larnita showed the female Deputy the bruises and bite marks she had received from her mother. Larnita was in the process of packing to leave her mother's home. Apparently the Sheriff had a restraining order against Mrs. Rives because she was not able to return to her home while Larnita was in the house. Larnita was planning to be moved out of the house before her mom was released from the Psychiatric

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 2 ~~PDF~~ of 43

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Rives v. Pette | 37-2014-00024600-CU-PPT-NC |

ATTACHMENT (Number): __3__

(This Attachment may be used with any Judicial Council form.)

Continued Page 3

Hospital. The hospital was not to release Mom until Larnita got her personal belongings out of Mom's house. But a former neighbor and a nephew brought her home while Larnita was packing. Mom wanted her purse. Larnita gave it to the nephew but had looked inside it the day before to use Mom's credit card to put gas in mom's car and found a cell phone on loan to Larnita for business use only and for which Larnita had been looking and had even asked Mom if she had seen it because Larnita needed to return it to the organization that loaned it to her. Larnita also found her own personal mail.

JULY 2013- Larnita returned to Mom's house. They had been talking and visiting over the past several months. Larnita was taking her Mom to the grocery store, shopping for clothes, community events and to doctor appointments. Larnita saw all of the appliances were broken (the main refrigerator in the kitchen, the microwave and the oven) and the house was filthy. Larnita was now receiving her pension.

NOVEMBER 6, 2013 - Mom took Larnita's In Home Phone saying that Larnita was using it to listen in on mom's phone calls. Larnita reached for the phone. Mom raised the hammer in a threatening manner. EXHIBIT 5

Mom's sister-in-law, Ann wrote Mom a letter in mid-November 2013 regarding a phone call from Ann and Mom's treatment of Larnita. EXHIBIT 6.

In the beginning of 2014, Mom began verbally threatening Larnita again. It escalated to a point that Larnita began getting her possessions together and packing them. Larnita slept on an inflatable mattress in the family room so that she had an avenue of escape when Mom became upset.

JULY 13, 2014 - around 9:30 p. m. Mom took Larnita's I-Phone on the pool table in the garage and refused to give it back. She put it in her pocket. Knowing that Mom had taken her other phones which were never seen again, having a lot of personal information on the I-Phone, and not wanting to have to pay several hundred of dollars to replace the phone, Larnita reached into Mom's duster pocket to grab the phone.
  At no time during the stand-off was Mom restrained. Mom stayed in the garage of her own volition. She sat on the couch in the garage and Larnita sat on an ottoman next to the couch. Mom could get up and move around, get something to eat and do what she wanted to do, but Larnita would be right next to her. There was food in the refrigerator in the garage as well as in the kitchen refrigerator. During this time, Larnita called her cousin, a LAPD officer discussing the problem in retrieving her phone. She also called other people all of whom heard Mom's threats toward Larnita. Mom did not want to let Larnita have her I-phone.

While Larnita's hand was in the Duster pocket, Mom bit Larnita on the right and left forearms. Mom then hit Larnita in the chest with her elbow and again on the forearm. Mom broke the skin on Larnita's upper right arm when she bit Larnita three to four times. Mom stomped on Larnita's big toe and she thought it was broken. Larnita retrieved her phone from the duster pocket and ran into the house and attempted to call 911. She sat on her inflatable mattress to call 911 Mom ran into the house behind Larnita with her shoe in her hand. Mom started hitting Larnita on the head and arms and body with the shoe as Larnita sat on the raised inflatable mattress that was her bed. As she attempted to all 911, Mom attacked her by grabbing her hair and started biting her again. The 911 operator heard the attack.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page __3__ of __43__

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

ATTACHMENT
to Judicial Council Form

www.courtinfo.ca.gov

| | MC-025 |
|---|---|
| SHORT TITLE:<br>Rives v. Pette | CASE NUMBER:<br>37-2014-00024600-CU-PPT-NC |

ATTACHMENT (Number): __4__

*(This Attachment may be used with any Judicial Council form.)*

Continue Page 4

JULY 14.2014 - A Deputy responded in the early morning and took a report.

JULY 15, 2014 - Larnita went to the ER to have her toe x-rayed. The doctor saw the bruises and bites and asked what happened. He said the hospital was mandated to report the Domestic Violence on Larnita. Larnita was then interviewed by the hospital social worker. Larnita told the social worker that she preferred to have the sheriff call her and set up a meeting place for the interview. Larnita's mother, who was in the ER waiting room, twice sent someone back to the examining room to see what was taking so long. Larnita's mother thought she had a doctor's appointment that morning. The social worker who interviewed Larnita went to the waiting room to tell Larnita's mom that her doctor's appointment was for the 16th, not the 15th. Larnita's mom left the ER angry, agitated and loudly protesting because she would not get to talk to Larnita's ER doctor.

When Larnita and Mom arrived home from the hospital, the sheriff's Detective Lawrence and two other Deputies were waiting at the house in response to the hospital report. The PERT team also arrived including Christine Davis who had been there on the 2011 PERT call. That evening, Christine Davis called Larnita stating that she had made a referral to a Geriatric Specialist and someone would be contacting her, Larnita, next week. She stated "it is good for a family to have such a specialist especially when there is an individual who believes that she/he doesn't need any help and it will be determined if it is medical or mental health related". Larnita also received an e-mail from Det. Lawrence again referring APS as follow up to the elder abuse against her by her mother. EXHIBITS 7 (ER notes, bruises and bites)

JULY 21, 2014 – Larnita had access to a rental car and started packing her belongings that she was not using to move them to the storage unit she had purchased when she moved back into her mother's house. Seeing the packing boxes further incensed Mom.

Larnita had been attending support classes through Southern Caregiver Resource Center since 2011 when she had set up a Caregiver Action Plan with a caseworker . She spoke to her case worker, Michelle, on the phone. While on the phone, Mom again started acting up. Michelle told Larnita she was mandated to call APS for elder abuse against Larnita. EXHIBIT 8 (Care plan for 2011 and 2012)

JULY 22, 2014 - In response to Det. Lawrence's referral, Karen Dee, an APS worker, arrived ostensibly to investigate the many referrals (three) to APS about elder abuse against Larnita. She interviewed Larnita. As Ms. Dee was walking toward the front door, Larnita asked if she would like to talk to Mom. Ms. Dee responded, "Yes." Larnita went upstairs and got her Mom and introduced Ms. Dee to her Mom as "a lady from the county." Ms. Dee talked to Mom in the Dining Room while Larnita stayed in the Family Room. Ms. Dee took Mrs. Rives outside and continued their conservation on the front patio. The next thing Larnita knew she saw Sheriff's deputies standing in front of the garage. She asked them what was going on. Larnita noticed the PERT team arrived again with Christine Davis. Apparently Mom told Karen Dee that Larnita had bitten her on the 13th and showed Ms. Dee a small mark. EXHIBIT 9

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Rives v. Pette | 37-2014-00024600-CU-PPT-NC |

ATTACHMENT *(Number):*  *5*

*(This Attachment may be used with any Judicial Council form.)*

Continued Page 5

Deputy Norman who requested the ERO and served it on Larnita told her that the mark on her mother did not exist or was not there on 7/15/14 when the hospital reported suspected domestic violence against Larnita to the Sheriff's Department and he was at the house on the follow-up.

The next thing Lanita heard was that she had to leave the house and had fifteen minutes to do so. A Five-Day Emergency Protection Order was taken out against Larnita, the real victim, in this whole episode.

Larnita stuffed as much of her possessions and her dog into her rental car after leaving boxes in the outside shed and went to a friend's house, still upset and not understanding how she could be the "bad guy" in all of this. While mulling this over in her head as she walked her dog, she mis-stepped and fell down severely breaking her left ankle which required surgery and hospitalization. Once her ankle heals, Larnita is leaving California for good. EXHIBIT 10    Broken Ankle

Larnita's mom has repeatedly tried to contact Larnita by telephone while the restraining orders were in place. Larnita's mom called her 3 times while Larnita was in the hospital recovering from surgery. Her mom has called Larnita 2 times since she was released from the hospital. The latest call was received on 8/6/14. Larnita told her mother, "I cannot talk to you" and hung up.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page  *5*  of  *43*

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

ATTACHMENT
to Judicial Council Form

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Rives v. Pette | 37-2014-00024600-CU-PT-NC |

ATTACHMENT (Number): _____

*(This Attachment may be used with any Judicial Council form.)*

I, Donna Arnicar, declare:

I am a competent person over the age of 18 and if called to testify in this case would testify to the following from personal knowledge.

1. Larnita Pette and I met as volunteers less than three years before these February, 2011 events. Larnita (I'll call her Nita) was staying with her mother at the time. Nita had explained to me that her father passed away, and she moved back home because of her mother's age and condition.

2. Nita accompanied me shopping to IKEA (San Diego) on Tuesday, February 15, 2011; I drove. Nita started calling her mother around 3:30 in the afternoon and did not reach her till about 4 p.m. Nita's mother is hard-of-hearing and does not always hear the telephone ring. Nita told me that she was concerned because her mother would want to know where she was and when she would be home.

3. Nita and I returned to her mother's home later than expected. When we arrived, Nita's mother was angry, and blamed us both that she had not eaten. While shouting at us, Nita's mother was standing in the kitchen, cooking for herself (eggs?). I remember that I tried to convince Nita's mother that it was my fault that we (Nita and I) were late getting home from IKEA.

4. The next morning, (Wednesday, February 16, 2011) Nita telephoned me and sounded very upset. Nita asked me to 'come over right away.' I went to Nita's mother's house as quickly as I could; our houses are just a couple of miles apart.

5. When I arrived at Nita's mother's house, I saw two San Diego County Sheriff vehicles parked in front. I found Nita, who appeared to be experiencing both physical and emotional pain.

6. Sherriff's Deputies were taking information for their report. Nita's mother was blaming and argumentative with everyone at the scene. Nita's mother 'escalated,' her tone and Sherriff's Deputies were forced to carry her off - one person holding each limb. She was placed on a (72 hour) psychiatric hold.

7. Nita had wounds on her leg,, shoulder and back. I am a Registered Nurse and treated her wounds. She had superficial (not deep) scratches and human bite marks on her right shoulder, back and on her thigh. It was necessary to clean and dress her wounds for several days before they healed. I took photos of her wounds because I thought that she might need them for documentation at some point.

8. Additional Information: Nita's mother was released from her hospitalization some days later and returned to the home sooner than Nita expected. Nita called me again, this time in a panic state. Her mother was very angry, demanding that Nita move out. Nita was so emotionally traumatized that she truly had trouble getting her things together. I helped Nita prioritize and quickly pack, moving items, boxes into the back of my small SUV.

9. There was so much noise and commotion; the next-door neighbor offered and loaned us his larger pick-up truck. I had never met this man, and he let me drive off in his (newer looking) truck. I hope this statement provides worthwhile information.

DATE: 8/14/2014

_____
Donna Arnicar

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page ___1___ of ___1___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form

www.courtinfo.ca.gov



## San Diego County Sheriff's Department
### Public Records Request
### Victim Copy

| | |
|---|---|
| Primary Victim: **PETTE, LARNITA ANN** | Case No. **11108347** |
| | Report No. **11108347.1** |

**1**

Page 1 of 3

### GENERAL CASE INFORMATION

Primary Charge: **242 - PC - SIMPLE BATTERY (M)**

Location, City, State, ZIP:
**363 Cerro St, Encinitas, CA 92024**

| Occurrence Date/Time | Call For Service Date/Time |
|---|---|
| **02/15/2011 19:00:52 (Tuesday)** | **02/16/2011 10:23:44 (Wednesday)** |
| | Call For Service Event Type: **PSYCHO** |

### VICTIM/S

**Victim #1**

| Name: **PETTE, LARNITA ANN** | Sex: **F** | Age: **61** | Injury: **M - Apparent Minor Injury** |
|---|---|---|---|

Home Address, City, State, ZIP:
**363 Cerro St, Encinitas, CA 92024**

Victim Of:
**242 - PC - SIMPLE BATTERY (M)**

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |
|---|---|---|---|

### IBR/UCR OFFENSE/S

| Offense Description: **242 - PC - SIMPLE BATTERY (M)** | Level: **M** | Against: **PE** | Completed? **Yes** | Counts: |
|---|---|---|---|---|
| Offense Description: **5150 - WI - MENTAL DISORDER 72 HR OBSERVATION** | Level: **O** | Against: | Completed? **Yes** | Counts: |

### ARRESTEE/S

**Arrestee #1**

| Name: **RIVERS, BOBBY JEAN** | Sex: **F** | Date of Birth / Age: **10/23/1927 - 83** | Height: | Weight: | Hair Color: | Eye Color: |
|---|---|---|---|---|---|---|

Home Address, City, State, ZIP:
**363 Cerro St, Encinitas, CA 92024**

| Employment Status: | Occupation/Grade: | Employer/School: | Employer Address, City, State Zip: |
|---|---|---|---|

### ARREST INFORMATION

| Arrested Type: **O - Probable Cause Arrest - New Case** | LE Disposition: **2 - Turned over to another LE agency (Adult / Juvenile)** | JUS 750 Type: **3 - Other** | Booking No.: |
|---|---|---|---|

Arrested for:
**5150 - WI - MENTAL DISORDER 72 HR OBSERVATION**

| | Level: **O** | Completed: **Yes** | Counts: |
|---|---|---|---|

| Arrest Date and Time: **02/16/2011 11:40:20** | Arrest Location, City, State, ZIP: **363 Cerro St, Encinitas, CA 92024** |
|---|---|

| Booking Date/Time: | Booked Location: | Armed With: **01 - Unarmed** |
|---|---|---|

### SUSPECT/S (Not Yet Arrested)

### WITNESSES

**Witness #1**

| Name: **SANDERS, DEREK** | Sex: | Age: | Injury: |
|---|---|---|---|

Home Address, City, State, ZIP:

| Employment Status: **Employed** | Occupation/Grade: **DEPUTY SHERIFF** | Employer/School: **SDSD** | Employer Address, City, State Zip: **175 N El Camino Real, Encinitas, CA 92024** |
|---|---|---|---|

### OTHER ENTITIES

**Entity #2**

| Name: **WELINSKY, KATHLEEN** | Sex: | Injury: |
|---|---|---|

This report has been recorded as being
Released pursuant to California Penal
Code 11076 11081. Subsequent distribution
of information contained is restricted
by SEC. 11167 11144 CPC.
SAN DIEGO COUNTY SHERIFF'S DEPT.

| Reporting Officer: **SH5379 - SANDERS, DEREK** | Division / Organization: **Encinitas Station** **ENCINITAS PATROL** | |
|---|---|---|
| Report Date: **02/16/2011 13:19:14** | Detective Assigned: | |

NetRMS_CASDCR rif v11-18-09

Printed By SH6231

Printed: June 24, 2015 - 10:20 AM

# PROOF OF SERVICE

I, _____Kimberly Richardson_____ (name), declare as follows.  I am over the age of 18 years. My address is:

_____220 E. Connecticut St. Ave ·_____

_____Vista, CA 92084_____

_____

On _October 9, 2017_____ (date), I served the foregoing document described as:

**Plaintiff** _____Larnita Pette_____**'s Initial Disclosures Pursuant to FRCP 26**

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in the United States mail in_____Encinitas, California_____, addressed to:

(city, state)

_Ralph E. Sanders_____ (name)        _____ (name)

_1251 W. Bishop_____ (address)       _____ (address)

_Santa Ana, CA 92703_____ (address) _____ (address)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _October 9, 2017_____ at _Encinitas, California_____.

(date)                    (place of signing)

_____ (signature)

_Kimberly Richardson_____ (name)