Larnita Pette
2588 El Camino Real, Suite F-195
Carlsbad, CA 92008
E-Mail: larnita.pette@gmail.com

Plaintiff: Pro Se

> FILED
>
> MAR - 6 2019
>
> CLERK U.S. BANKRUPTCY COURT
> CENTRAL DISTRICT OF CALIFORNIA
> BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re Ralph E. Sanders, <br><br>     Debtor <br><br> -------------------------------------------- <br><br> Larnita Pette, <br><br>     Plaintiff, <br><br>     v. <br><br> Ralph E. Sanders, <br><br>     Defendant. | Bk. No. 8:17-bk-10265 MW <br><br> Chapter 7 <br><br> Adv. No. 8:17-ap--01068-MW <br><br> **PRE-TRIAL STIPULATION FOR CLAIMS FOR RELIEF** <br><br> DATE:    March 20, 2019 <br> TIME:    9:00 a.m. <br> PLACE:   Courtroom 6C <br>          Ronald Reagan Federal Building <br>          411 West Fourth Street <br>          Santa Ana, CA 92701 |

## PRE-TRIAL STIPULATION

Larnita Pette, plaintiff in this adversary proceeding ("Plaintiff") and Ralph E. Sanders, defendant

in this adversary proceeding ("Defendant") SUBMIT THE FOLLOWING PRE-TRIAL

STIPULATION pursuant to Local Bankruptcy Rule 7016-1(b)(2).

# I. UNDERLYING ISSUES OF FACT COMMON TO ALL CLAIMS FOR RELIEF

A. Defendant filed a petition for relief under Chapter 7 on January 25, 2017 (the "petition date").

> Not Contested

B. The Defendant did not include the following in his petition filed on January 25, 2017 that he was a co-trustee of the Bobbye J. Rives Trust ("Trust") and that he had inherited over $90,000 from the Trust.

> Not Contested

C. After the initial 341 hearings on March 9, 2017 and March 23, 2017, the Chapter 7 Trustee and the United States Attorney asked the Defendant to provide additional documentation and to amend his bankruptcy schedules to include information that was omitted from his initial petition. Appendix 1, Exhibit 3

> Not Contested

D. Plaintiff commenced this adversary proceeding by filing a complaint on May 8, 2017.

> Not Contested

E. Plaintiff filed an amended adversary complaint on July 13, 2017.

> Not Contested

F. Prior to the petition date, on May 8, 2015, Plaintiff filed a lawsuit for herself and as an interested party on behalf of her deceased mother, Bobbye J. Rives, against Defendant and Beverly Murray-Calcote in the San Diego County Superior Court case no. 37-2015-00015654. ("SDCSC").

> Not Contested

G. Prior to the petition date, on July 13, 2016, Plaintiff filed a Notice of Petition to Remove with Surcharges against Defendant and Beverly Murray-Calcote as Co-Trustees of the Bobbye J. Rives Trust ("Trust") in the Orange County Superior Court, Probate Division case no. 30-2016-00863391-PR-TR-CJC. ("OCSC").

> Not Contested

## II. CLAIMS FOR NONDISCHARGEABILITY OF PENDING LAWSUITS

A. First Claim:  The pending lawsuits should not be discharged because the Chapter 7 bankruptcy was specifically filed to defeat the pending lawsuits resulting in a willful and malicious damages to the Plaintiff. (11 USC § 523(a)(6)).

1. ELEMENTS OF THE CLAIM

a. An Anti-SLAPP motion was filed jointly by the Defendant and the co-trustee of the Trust, Beverly Murray-Calcote, in the SDCSC case on February 24, 2016.

Not Contested

b. The SDCSC Anti-SLAPP motion was heard on August 26, 2016. Defendant's motion was denied.

Not Contested

c. At the hearing denying the Defendant's Anti-SLAPP motion, the SDCSC jury trial date was scheduled for April 21, 2017. The trial readiness conference was scheduled for April 14, 2017.

Not Contested

d. At the OCSC case management conference held on November 17, 2016, the court ordered that "…no further trust assets be expended until further hearing". The order remains in effect to this date.

Not Contested

e. On January 3, 2017, Defendant fled an objection to the OCSC Petition to Remove.

Not Contested

f. On January 12 co-trustee, Beverly Murray-Calcote filed an objection to the OCSC Petition to Remove.

Not Contested

g. On January 13, 2017, Defendant filed a response to the probate petition in the OCSC.

Not Contested

h. On January 25, 2017, Defendant filed for Chapter 7 Bankruptcy in the Central District of California Bankruptcy Court, Santa Ana Division ("CDCBCSA")

1          Not Contested

2          i. On February 17, 2017, co-trustee, Beverly Murray-Calcote filed for Chapter 7

3     Bankruptcy in the Central District of California Bankruptcy Court, Los Angeles Division

4     ("CDCBCLA").

5          Not Contested

6          j. On March 10, 2017, Plaintiff prepared expert witness list for SDCSC trial.

7          Not Contested

8          k. On March 27, 2017, Defendant filed a Notice of Stay of Proceedings with the OCSC.

9          Not Contested

10         l. On March 29, 2017, Defendant filed a Notice of Stay o Proceedings with the SDCSC.

11         Not Contested

12    B. Second Claim:  Pursuant to 11 USC § (727(a)(4)(A)(B)), "(a) the court shall grant a

13        debtor a discharge, unless (4) the debtor knowingly and fraudulently, in or in connection

14        with the case (A)made a false oath or account: (B) presented or used a false claim.

15        1.  ELEMENTS OF THE CLAIM

16        a.  On January 25, 2017, Defendant signed a Voluntary Petition for Chapter 7

17            Bankruptcy stating "I have examined this petition, and declare under penalty of

18            perjury that the information provided is true and correct".

19               Contested

20    Plaintiff: Although the Defendant payed someone other than an attorney to prepare his

21    bankruptcy petition, the vouched for the accuracy of the contents of his petition under penalty of

22    perjury.

23         Evidence:

24         Case 8:17-bk-10265-MW Docket #1(page 6)

25    Defendant: "The preparer did not disclose that I was a Beneficiary and Co-Trustee and

26    that the Defendant had received an inheritance over $90,000 as a beneficiary even though he was

27    emailed a schedule of what was done with the money from the inheritance."

28

1  Evidence:

2  Docket 12, pp. 24-25.

3  b. On March 9, 2017, the initial 341 meeting was held.

4  Contested

5  Plaintiff: Chapter 7 trustee asked Defendant if he signed the petition schedule of

6  statements, if he read them before he signed them, if he was personally familiar with the

7  information in the documents, and to the best of his knowledge are the documents correct.

8  Defendant answered "yes" to all of the questions. The defendant answered "no" when asked if

9  there were any errors or omissions.

10  Evidence:

11  Exhibit  Transcript of March 9, 2017 341 hearing (L97408028) Page 2.

12  Defendant: When the trustee asked him about receiving an inheritance from the Bobbye

13  J. Rives Trust he admitted that he had received an inheritance.

14  Evidence:

15  (Exhibit)…Defendant's assertion that when the trustee asked about the trust and

16  inheritance he answered…statements/find in evidence/discovery exchanges.

17  c. During the March 23, 2017 341 hearing, Defendant was asked if he received an

18  inheritance. Defendant admitted that he received an inheritance of approximately

19  $90,000 from the Bobbye J. Rives Trust and that he was a co-trustee of the trust.

20  Contested

21  Plaintiff:  The Defendant lied under oath and under penalty of perjury twice about his

22  income on his BK schedules and only admitted to the discrepancy with his schedules when asked

23  directly about receiving an inheritance from the trust.

24  Evidence:

25  Transcripts (Sanders BK 341 Hearing 3.23.27) L97408043 (Appendix 1, Exhibit

26  2 pp. 1-6)

27  Bobbye J. Rives Trust Preliminary Accounting dated November 30, 2015.

28  (Appendix 1, Exhibit 3 pp 6-10).

1    Defendant: "The Bankruptcy Trustee directed me to go to the filing office and amend the

2    Statement of Financial Affairs and it was amended on May 5, 2017." (Docket 12 p.16).

3    Evidence:

4    Docket 12, Exhibit p. 26

5    d. At the initial 341 hearing, which the Plaintiff attended, the Defendant stated that he

6    was the House Manager for RB Housing, that he didn't get a salary, but RB Housing paid for his

7    rent. Social Security was his only income. A continuance was scheduled for 3/23/17.

8    Not contested

9    e. At the 3/23/17 hearing, which the Plaintiff also attended, Defendant provided the

10    trustee with his tax returns indicating that he had wages of $20,858 in 2015.

11    Not Contested

12    f. When asked about his relationship to Bobbye Rives, the Defendant answered "Oh, it's

13    my aunt". When asked if he inherited anything from his aunt, the Defendant hesitates *"[Coughs]*

14    Uh, we, I got on fifth of the sale of the house". The Defendant was asked, " one fifth of the sale

15    of what house, sir"? his response…"Uh, her residence"…".Trustee "And how much did you

16    receive, sir? Response: "I think it was about $90,000."

17    Contested

18    Plaintiff: The Defendant did not volunteer any information about how much he his

19    inherited from the Trust. The Trustee had to ask very direct questions before the Defendant

20    admitted that he received $90,000 from the Trust (actually $98,800-$4,000 in 12/14, $8,000 in

21    2016).

22    Evidence:

23    Transcript (L97408043) Sanders BK 341 Hearing 3.23.17 Exhibit 2, pp. 4-17

24    Trust Preliminary Accounting dated 11/30/2015 (Appendix 1, Exhibit 3 pp 6-10).

25    Docket #12, p. 26

26    Defendant: "The Defendants Bankruptcy preparer failed to disclose that I was a

27    beneficiary and co-trustee and that the Defendant had received an inheritance of over $90,000 as

28    a beneficiary even though he was emailed a schedule of what was done with the money from the

inheritance. The Defendants Bankruptcy Trustee asked the Defendant if he had received any

inheritance and he replied yes..."

Evidence:

Docket #12, pp. 19, 24-25

g. During the March 23, 2017 341 hearing, the Defendant told the Trustee that he lived at 1251 W Bishop in a home that RB Housing, a non-profit, rented from Quan Chau that provided housing for seniors and that he has an agreement with RB Housing to act as the house manager. His duties include making sure that the seniors are okay. Defendant stated that there are currently eight residents at 1251 West Bishop. Defendants stated that the tenants pay rent to RB Housing.

Not Contested

h. The Defendant failed to disclose that:

1. RB Housing was also renting two 5 bedroom homes in La Habra (741 & 745 West 4th Street, La Habra) at the time he filed for bankruptcy.

2. The Defendant was the Director of Robbie Bobbye Housing, Inc ("RB Housing"). Defendant was required to amend his bankruptcy schedules to reflect his official capacity with RB Housing.

3. The Defendant was required by the Trustee to amend his schedules to reflect income that he received from RB Housing.

4. The Defendant was required by the Trustee to amend his schedules to reflect the inheritance he received from RB Housing.

5. The Defendant has not amended his schedules to include the homes RB housing was leasing in La Habra as early as December, 2016 (weeks before he filed for bankruptcy) when the Defendant filed for Temporary Restraining Orders against residents in the West Bishop and La Habra residences.

6. The La Habra residences are owned by Lambert Monte Vista, Inc

7. Rental Agreements and statements by the Defendant filed with the Temporary Restraining Order requests indicate that the tenants of the RB Housing rented homes were paying from $1,200-$1,400 (in cash) a month for a shared room.

8. One Tenant who was responded to the Defendant's Restraining order request indicated that the receipts that they received from the Defendant for their rent "payment to Ralph Sanders not "Robbie Bobbye".

Contested

Plaintiff: Although the Defendant has been required to amend his schedules numerous times. He has failed to disclose to the Trustee, the total number of homes (3) that were being leased by RB Housing when his petition on January 25, 2017. Thus, hiding potential income from the Bankruptcy Court.

Evidence: Appendix 1, Exhibit 4 ( Robbie Bobbye Housing, Inc.)

## III. REMEDIES

The Plaintiff seeks the determination that the pending lawsuits (SDCSC and OCSC) are deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and /or 11 U.S.C. § 727(a)(4)(A)(B) or, in the alternative, that the Defendant's response to this adversary complaint be dismissed.

## V. EXHIBITS TO BE OFFERED BY EACH PARTY AND OBJECTIONS TO EXHIBITS

A. PLAINTIFF'S EXHIBITS:  Plaintiff's exhibits are attached to this order as Appendix 1.

B. DEFENDANT'S EXHIBITS:  Defendant's exhibits are listed in and attached to Appendix 2. (Docket #29, Exhibits). Plaintiff contests the admissibility of the exhibits listed in the concurrently filed "Motion to Exclude Evidence".

## VI. WITNESSES TO BE OFFERED BY EACH PARTY

A. Plaintiff:

Beverly Murray-Calcote

Paul Gonzales

Marissa Knight

B. Defendant:

Russell Griffith

Wenetta Kosmala

1    Ed Kirkman

2    Jacinta Kirkman

3    Karen Dee

4    Daniel Given

5

6    .

7

8    **Signature of Plaintiff, Pro Se:**

9    March 5, 2019          Larnita Pette          _Larnita Pette_

10   Date                        Type Name                    Signature

11

12

13   **Signature of Defendant or Attorney for Defendant:**

14

15                    _Larnita Pette_

16   Could not come to an

17   agreement with the Defendant

18   on the basic issues of the case

19
20   So to expedite the documents I

21   filed the Stipulation to next deadline

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX 1

Plaintiff Exhibits:

      Exhibit 1: Pending Civil Cases Exhibits

      Exhibit 2: Transcripts of March 9, 2017 and March 23, 2017 341 hearings (Verbalink)

      Exhibit 3: Bankruptcy Exhibits

      Exhibit 4: Robbie Bobbye Housing, Inc Exhibits

APPENDIX 2

DEFENDANT Exhibits:

On October 29, 2018, the Defendant filed a status report with approximately 150 pages of attachments under the header "Exhibits". Docket #29 contains the status report with five attachments. A Motion to Exclude will be filed with the stipulation. Plaintiff will use the 🖉

APPENDIX 3

PLAINTIFF'S WITNESS

**1. Beverly Murray-Calcote is expected to testify**:

     A. About her duties as a co-trustee of the Bobbye J. Rives Trust.

     B. She filed for Chapter 7 BK within 3 weeks of the Defendant on 2/17/17

     C. The Plaintiff filed adversary complaint for omitting her $90,000 inheritance and other compensation from the Trust.

     D. The United States Trustee filed an adversary complaint for the Trust and other omissions.

     D. Ms. Murray-Calcote agreed to:

       "Stipulation between United States Trustee, Debtor Beverly Monique Murray-Calcote, and Chapter 7 Trustee Gonzalez to Voluntarily Dismiss Case with a Refiling Bar as to Chapter 7 Only in Lieu of Denial of Chapter 7 Discharge under 11 U.S.C. 727(a)(2), (a)(3), (a)(4) and (a)(5) ". (2:17-bk-11972 RK (Docket #85)).

**2. Paul Gonzalez is expected to testify:**

     A. That he and his wife answered and Craigslist ad to a room to rent at 741 W. 4ᵗʰ St., La Habra, CA on or around March 1, 2017 that stated there were rooms for rent in Santa Ana and La Habra

     B. Mr. Gonzales talked to Ralph Sanders, the landlord.

     C. The Defendant told Mr. Gonzales that he rented out rooms for cash.

     D. Mr. Gonzales gave the Defendant $200 in cash and $1,000 in cash a week later for the $1,200 a month room rent. The Defendant signed a receipt under "Ralph Sanders".

     E. Mr. Gonzales was not informed that 741 and 745 (the back house) W. 4ᵗʰ St. were "Transitional Housing".

1        F. On August 5ᵗʰ, 2017, Mr. Gonzales, his wife, Marissa and son moved into the

2    master bedroom and agreed to pay $1,400 a month, paying in cash, and receiving receipts signed

3    by Ralph Sanders.

4        **3. Marissa Knight is expected to testify:**

5        A. Ms. Knight and her husband answered a Craigslist ad for a room in February

6    2017.

7        B. The Defendant had not mentioned transitional living.

8        C. The receipts stated payment to Ralph Sanders not "Robbie Bobbye".

9        D. In December, 2017 the Defendant asked my husband to sign a rental contract

10   for transitional living. Initially we refused to sign because never agreed to transitional living.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPENDIX 4

DEFENDANT'S WITNESSES

    1. Ed and Jacinta Kirkman:

        A. "Knowledge of Bobbye Rives mental capabilities. "

        B. "Knowledge of Bobbye Rives relationship with daughter Larnita Pette."

        C. "Their testimony will show that there was no willful or malicious conduct by the Defendant Ralph Sanders towards the Plaintiff Larnita Pette or her mother Bobbye Rives; but that willful and malicious conduct was performed by Plaintiff towards her mother Bobbye Rives."

    1. Karen Dee (Adult Protective Services):

        "Advocate for Bobbye J. Rives and helped her obtain a temporary restraining order vs the Plaintiff. Her testimony will show that there was no willful or malicious conduct by the Defendant Ralph Sanders towards the Plaintiff Larnita Pette or her mother Bobbye Rives; Karen Dee will show that willful and malicious conduct was performed by the Plaintiff towards her mother Bobbye Rives including a temporary restraining vs. The Plaintiff towards her mother Bobbye Rives and later an Emergency Protective order vs. the Plaintiff towards her mother Bobbye Rives to remove her from her mother Bobbye Rives home."

    2. Russell Griffith

        "Bobbye Rives Trust Lawyer"

        A. "Knowledge of Bobbye Rives mental capabilities, relationship with her daughter"

        B. "Russell Griffith will testify that there was no willful and malicious conduct by the Defendant Ralph Sanders towards the Plaintiff Larnita Pette or her mother Bobbye Rives; but that willful and malicious conduct was performed by the Plaintiff towards her mother Bobbye Rives including the Plaintiff filing a lawsuit vs. the Co-Trustees that the Deceased Bobbye Rives appointed and her estate."

1    lawyer Russell Griffith which caused a conflict of interest resulting in the estate

2    lawyer having to resign which has caused major delays in the Co-Trustees work.

3       4.  Daniel Given

4         A. "Knowledge of Bobbye Rives health prior to death."

5         B.  "Knowledge of relationship with daughter Larnita Pette."

6         C. "Dr. Given will give testimony that there was no willful or malicious conduct

7    by the Defendant Ralph Sanders towards the Plaintiff Larnita Pette or her mother

8    Bobbye Rives including no wrongful death or negligence by the Plaintiff towards

9    her mother Bobbye Rives and Bobbye Rives actual death."

10       5.  Wenetta Kosmala

11    "Wenetta Kosmala will testify in regards to the Defendant Ralph Sanders

12    Bankruptcy Petition. She will testify to her statement that, 'I hereby verify that the

13    above-named debtor has been fully administered'."

14

15

16

17

18    Dated This day of march 5th, 2019

19

20

21    _Larnita Pette_

22

23    Pro Se

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is:

*111 Taylor, Unit E, Vista, CA 92084*

A true and correct copy of the foregoing document described as <u>PRE-TRIAL STIPULATION</u> will be
served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to
controlling General Order(s) and LBR, the foregoing document will be served by the court via NEF and
hyperlink to the document.  On_____, I checked the CM/ECF docket for this bankruptcy
case or adversary proceeding and determined that the following person(s) are on the Electronic Mail
Notice List to receive NEF transmission at the email address(es) stated below:

☐ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL OR OVERNIGHT MAIL</u> (<u>indicate method for each person or
entity served</u>):**
On _____, I served the following person(s) and/or entity(ies) at the last known
address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in
a sealed envelope in the United States mail, first class, postage prepaid, and/or with an overnight mail
service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u> (<u>indicate method for
each person or entity served</u>):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____,
I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here
constitutes a declaration that personal delivery on the judge <u>will be completed</u> no later than 24 hours after
the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

_____    *Kimberly Thatcher*    _____
Date                           Type Name                  Signature

# APPENDIX 1

# EXHIBIT 1

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 11/17/2016                    TIME: 09:00:00 AM        DEPT:  C06

JUDICIAL OFFICER PRESIDING: Jamoa A. Moberly
CLERK:  Rosa Pena, Isabel Molina
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  C. Williamson

CASE NO: **30-2016-00863391-PR-TR-CJC**  CASE INIT.DATE: 07/13/2016
CASE TITLE: **Rives - Trust**
CASE CATEGORY: Probate              CASE TYPE: Trust Proceedings

EVENT ID/DOCUMENT ID: 72409510
**EVENT TYPE**: (P) Trust Petition
MOVING PARTY: Larnita Ann Pette
CAUSAL DOCUMENT/DATE FILED: Trust Petition, 07/13/2016

**APPEARANCES**

 Attorney for Larnita Pette - Daniel W. Abbott via CourtCall
Objectors - Beverly Calcote and Ralph Sanders - Pro Pers

CD:  07/13/2016

Court orders in the interim that no further trust assets to be expended until further hearing.

(P) Trust Petition continued to 01/12/2017 at 09:00 AM in this department.

Continued for written objections to be filed.  Objections are to be on file by 1/5/2017 or the Court may
deem them waived per CRC 7.801.

Counsel Daniel Abbott to give notice.

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 12/06/2018                    TIME: 09:00:00 AM        DEPT: C06

JUDICIAL OFFICER PRESIDING: Jacki C. Brown
CLERK:  Isabel Molina
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  V Moctezuma

CASE NO: **30-2016-00863391-PR-TR-CJC**  CASE INIT.DATE: 07/13/2016
CASE TITLE: **Rives - Trust**
CASE CATEGORY: Probate            CASE TYPE: Trust Proceedings

EVENT ID/DOCUMENT ID: 72821585
**EVENT TYPE**: (P) Trust Petition
MOVING PARTY: Larnita Ann Pette
CAUSAL DOCUMENT/DATE FILED: Trust Petition, 07/13/2016

**APPEARANCES**

Attorney for Larnita A. Pette - Stephen D. Blea (via CourtCall)

Attorney Stephen D. Blea informs the Court there is still one stay in effect with a future date of 3/20/2019.

(P) Trust Petition continued to 03/21/2019 at 09:00 AM in this department.

Matter continued due to one remaining stay in the Bankruptcy matter.

Court orders counsel to provide a verbal report of what occurs on the 3/20/2019 hearing, and file a written report re Bankruptcy stay and stays terminated by 3/18/2018.

Counsel including beneficiaries are directed to be present on 3/21/2019 at 9:00 AM in this department.

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 01/04/2019                    TIME: 10:30:00 AM          DEPT: C-74

JUDICIAL OFFICER PRESIDING: Ronald L. Styn
CLERK: Kim Mulligan
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: K. Harris

CASE NO: **37-2015-00015654-CU-PO-CTL** CASE INIT.DATE: 05/08/2015
CASE TITLE: **PETTE vs. MURRAY-CALCOTE[IMAGED]**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: PI/PD/WD - Other

---

**EVENT TYPE**: Status Conference (Civil)

---

**APPEARANCES**

Stephen Blea, counsel, present for Plaintiff(s), telephonically.

Court and counsel confer regarding case status, service issues, and bankruptcy issues.

Per counsel, the bankruptcy is still pending.

Status Conference (Civil) is continued pursuant to Court's motion to 04/26/2019 at 10:30AM before Judge Ronald L. Styn.

-kbm-

---

*Law Office of Luis E. Ventura*
*960 Cordova Drive*
*Chula Vista, CA 91910*

Invoice submitted to:
Ralph Sanders and Beverly Murray-Calcote


~~May 19, 2016~~ Sanders' Portion
            November 29, 2016

INVOICE #     10464


Professional Services

|  | Hrs/Rate | Amount |
|---|---|---|
| 5/2/2016 Review memoranda from L. Woodward re rescheduling MSC before Judge Bloom to 1pm on May 5; prepare memorandum to and review response from P. Hosey confirming me not to attend and re anticipated anti-SLAPP opposition | 0.10 250.00/hr | NO CHARGE |
| 5/3/2016 Review Register of Actions re Plaintiff's filing of anti-SLAPP opposition papers; prepare memoranda to and review responses from co-counsel re same and re errata re same; initial review of Pette declaration; review memoranda from and respond to P. Hosey re need for objecting to same and bases of objections; phone with attorneys Hosey and C. Albence re ideas re reply memorandum and re considerations re same; phone with opposing counsel's secretary, C. Stonehouse, re email | 1.20 250.00/hr | 300.00 |
| 5/4/2016 Prepare memorandum re balance of work for reply re anti-SLAPP motion and re options re same; research standing issue raised in opposition; phone with P. Hosey re standing and re additional arguments; phone with, review memoranda from and prepare responses to R. Sanders re two letters at issue; phone with B. Calcote re same; phone with opposing counsel S. Blea re failure to serve opposition papers on me and effect of time crunch on reply | 2.50 250.00/hr | 625.00 |
| 5/5/2016 Prepare memorandum to R. Sanders re Sept. 2014 letter; phone conference with co-counsel re letters re anti-SLAPP motion and other issues re motion; research and prepare evidentiary objections; prepare memorandum to co-counsel re same and review response from Hosey; review memoranda from and prepare responses to co-counsel L. Woodward re TRO pleadings; phone with opposing counsel S. Blea re lack of service issues re opposition and his view that service on me not required; phone with B. Calcote re motion and possible bankruptcy filing; conference call with P. Hosey and R. Sanders re motion and possible bankruptcy filing | 6.20 250.00/hr | 1,550.00 |

Case 8:17-ap-01068-MW   Doc 38   Filed 03/06/19   Entered 03/08/19 11:59:22   Desc
Case 8:17-ap-01068-MW   Doc 36   Filed 06/19/17   Entered 06/19/17 09:15:00   Desc
Main Document   Page 29 of 49
Main Document   Page 23 of 40

16A

Ralph Sanders and Beverly Murray-Calcote

Page    2

| | Hrs/Rate | Amount |
|---|---|---|
| **5/6/2016** Phone with P. Hosey re considerations re proceeding with motion; phone calls, prepare memoranda to, and review responses from R. Sanders, C. Albence, and B. Calcote re same; research and prepare reply memorandum; finalize evidentiary objections; prepare memoranda to and review responses opposing counsel Blea re agreement re e-service, re service of Evidentiary Objections, and re they not in agreement with any additional time; prepare memoranda to and review responses from R. Sanders re 'hospital would have received letter from Rives' attorney, Russell Griffith' | 8.00 250.00/hr | 2,000.00 |
| **5/7/2016** Phone with and review memorandum from B. Calcote re Sept. 2012 letter; phone with P. Hosey re same; prepare memorandum to and phone with Sanders re same; prepare and finalize Reply Memorandum of P&A and Declaration re same; prepare memorandum to all counsel re same | 8.40 250.00/hr | 2,100.00 |
| **5/11/2016** Prepare and finalize memorandum to B. Calcote-Murray, R. Sanders, C. Albence, and P. Hosey re status of anti-SLAPP motion, court reporter re same, inherent risk motion can be denied, evidentiary objections re same, and re deciding on whether to file for bankruptcy with input from bankruptcy attorney; review Plaintiff's 'Response to Evidentiary Objections'; research same; review minute order re anti-SLAPP hearing moved to May 20; prepare separate memoranda to clients and to opposing counsel re same; review responses from Hosey, Sanders, and Calcote re same | 1.80 250.00/hr | 450.00 |

For professional services rendered

28.20     ~~$7,025.00~~

Invoice limited to **$6000** total via email of
May 19, 2016 per agreement that any fees
in excess of $6000 may still be claimed
in attorney fee motion if anti-SLAPP motion
is successful.

$3000 of invoice to be paid by Murray-Calcote
and **$3000** to be paid by Sanders.

```
                        $3000
    July 22, 2016 Pymt. -$200
            Subtotal  $2800
    Aug. 25, 2016 Pymt.-$ 300
            Subtotal  $2500
    Oct. 7, 2016 Pymt.- $ 600
            Subtotal  $1900
    Nov. 14, 2016 Pymt.-$ 200
            Subtotal  $1700
            Balance   $1700
```



5/28/2017

   

Q All     ralph sanders, search your mailbox                                    🏠 Home   👤 ralph   ⚙

✏ Compose

| Add Gmail, Outlook, AOL and more |
| Inbox (18) |
| Drafts (20) |
| Sent |
| Archive |
| **Spam (15)** |
| Trash |
| ˅ Smart Views |
|   Important |
|   Unread |
|   Starred |
|   People |
|   Social |
|   Shopping |
|   Travel |
|   Finance |
|   for pops |
|   temlynnvaughn7@gmai... |
|   LUIS VENTURA |
|   FOUNDATION GROUP |
|   dan kalili |
|   stephanie dufour |
|   jared eugene |
|   PATRICK HOSEY |
| ˅ Folders (6) |
|   it |
|   **preschool le... (6)** |
| › Recent |
| ⁵ Sponsored |

← Search results    ← ≪ →    📁 Archive    📁 Move ˅    🗑 Delete    Spam All    ↑ More ˅

## Hosey & Bahrambeygui, LLP Accounting (2)

**JMS** <jstieg@hbattorneys.com>                                    11/14/16 at 11:02 AM
To ralph sanders
CC PLH

Good Morning Ralph,

I have reviewed the Hosey & Bahrambeygui, LLP invoices for the Sanders adv. Pette matter.  Please see the summary below:

Payments to H&B:
   07-14-2015 - $10,000
   10-16-2015 - $10,000
   03-03-2016 - $ 7,000

**TOTAL PAYMENTS: $27,000**

**TOTAL AMOUNT INVOICED BY H&B: $36,763.34**

Accordingly, the balance is $9,763.34

Please let me know if you have any questions or need additional information.

Sincerely,

Jennifer M. Rivera
Paralegal
Hosey & Bahrambeygui
Attorneys at Law, LLP
225 Broadway, Suite 1460
San Diego, CA 92101
619 231 0500
f) 619 238 1097

*****************Confidentiality Notice************************

The information contained in this e-mail message is information protected by attorney-client and/or attorney-work product privileges.  It is intended for use of the individual named above and the privileges are not waived by virtue of this having been sent by e-mail.  If the person actually receiving this e-mail or any other reader of the e-mail is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail or telephone and delete the original message.

› Show original message

↩ Reply    ↩ Reply to All    → Forward    ••• More



**TruthFinder**
Type In Any Name, Wait 10 Seconds, Brace Yourself

**ralph sanders**  Hello Luis, I hope you are doing well but busy. I do n                11/17/16 at 6:52 PM

**From:** PLH [mailto:phosey@hbattorneys.com]
**Sent:** Tuesday, March 01, 2016 1:01 PM
**To:** Dan Abbott <abbott@wmalawfirm.com>
**Cc:** Caroline Stonehouse <stonehouse@wmalawfirm.com>; Stephen Blea
<blea@wmalawfirm.com>; 'Chris Albence' <Chris@albence.com>
**Subject:** RE: Pette - request for service of ex parte papers

Hi Dan, I just got off the phone with Steve B and reviewed much of what you are
asking. We will be sending over the moving papers a little early. I think I laid out my
thinking in there. In short, the FAC and recent discovery responses as well as
discussions related to your client's attitude on the case all support the need for 2
additional affirmative defenses.
As I told Steve, the application for leave is liberally granted unless there is a showing a
prejudice to the other side. As such we are confident that the court will grant the
request given that the request was made shortly after the operative answer was filed
and immediately after the initial discovery responses by Plaintiff were received.

As to other law and motion, and at the risk of providing too much in the way of case
strategy, our thoughts and position on the case are pretty simple. We do not think
Plaintiff has any viable claims and will move toward positioning our defense as needed.
The SLAPP Motion was filed because the defamation and negligence claims are based
in whole or in part on protected activities. We are confident that the identified causes of
action are subject to the statute and that they will be stricken. In addition, we will be
seeking an award of mandatory attorney fees against your client. Subsequent to that
award and the lifting of the discovery stay, we will be moving for summary judgement
and/or adjudication on all causes of action and specifically on the Elder abuse/neglect
claim (which we have discussed). Since no admissible evidence has been provided to
date on that claim and given the facts known (as well as pled) cannot support it, that
theory will disappear. All other claims are subject to factual proof and, even if viable,
are of such little value that they will not total the amount of the now expired 998 (much
less the attorney fee award from the SLAPP Motion). Thus, at the end of the day (or
year), we anticipate that Plaintiff will have a judgment against her and will be writing a
check to Mr. Sanders and Beverly.

It was and remains our hope that your client will appreciate the situation and understand
that she will be spending tens of thousands of dollars prosecuting a case which has the
probable result of her owing money to the defendants. We have attempted to settle the
case but Plaintiff seems to have motivations beyond what can be attained in this
litigation. However, we remain hopeful and trust that Plaintiff will eventually be
persuaded to dismiss the case before the economics of it make settlement impossible.

As always, call anytime.

Patrick L. Hosey
Hosey & Bahrambeygui

Attorneys at Law, LLP
225 Broadway, Suite 1460
San Diego, CA 92101
O)619 231 0500
C) 619 339 8000
www.hbattorneys.com


*********************Confidentiality Notice************************

The information contained in this e-mail message is information protected by attorney-client and/or
attorney-work product privileges.  It is intended for use of the individual named above and the privileges
are not waived by virtue of this having been sent by e-mail.  If the person actually receiving this e-mail or
any other reader of the e-mail is not the named recipient or the employee or agent responsible to deliver it
to the named recipient, any use, dissemination, distribution or copying of the communication is strictly
prohibited.  If you have received this communication in error, please immediately notify us by return e-mail
or telephone and delete the original message.


**From:** Dan Abbott [mailto:abbott@wmalawfirm.com]
**Sent:** Tuesday, March 01, 2016 12:36 PM
**To:** PLH <phosey@hbattorneys.com>
**Cc:** Caroline Stonehouse <stonehouse@wmalawfirm.com>; Stephen Blea
<blea@wmalawfirm.com>; 'Chris Albence' <Chris@albence.com>
**Subject:** RE: Pette - request for service of ex parte papers

Dear Pat,

It would be helpful if you could cite me some authority for leave to file an amended
answer at this point in the case.

It would also be helpful if you could explain the rationale behind waiting to seek leave to
amend your answer after you filed the Anti-SLAPP motion, and after the extensive meet
and conferral regarding our amended complaint.

These are questions my client will surely ask, and thus your answers will assist me in
discussing the matter productively with my client.

Thank you,

Dan

**Daniel W. Abbott, Esq.**
WITHAM MAHONEY & ABBOTT, LLP
401 B Street, Suite 2220
San Diego, CA 92101
619-407-0505
619-872-0711 – fax

abbott@wmalawfirm.com
www.wmalawfirm.com

*IRS Circular 230 Notice.*  In accordance with Circular 230 of the Internal Revenue Service, we inform you that any tax advice contained in this e-mail, including any attachments, is not intended or written to be used, and cannot be used, by you or any other recipient for the purpose of (a) avoiding penalties that may otherwise be imposed by the IRS, or (b) supporting, promoting, marketing, or recommending any transaction or matter to any third party.

*Confidential Communication.*  This message contains confidential information intended only for the use of the addressee named above and may contain information that is legally privileged. If you are not the addressee, or the person responsible for delivering it to the addressee, you are hereby notified that reading, disseminating, printing, distributing or copying this message is strictly prohibited. If you have received this message by mistake, please immediately notify us by replying to the message and then deleting the original message.

Daniel W. Abbott, Esq. (SBN 218334)
Stephen D. Blea, Esq. (SBN 294339)
WITHAM MAHONEY & ABBOTT, LLP
401 B Street, Suite 2220
San Diego, California  92101
Telephone (619) 407-0505
E-Mail: abbott@wmalawfirm.com

Attorneys for Plaintiff Larnita Pette

# SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

## CENTRAL DIVISION

| | |
|---|---|
| LARNITA PETTE, as an interested person on behalf of BOBBYE RIVES (deceased); LARNITA PETTE, as an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>BEVERLY MURRAY-CALCOTE; RALPH SANDERS; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 37-2015-00015654-CU-PO-CTL<br><br>**PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION** |

Plaintiff LARNITA PETTE, as an individual and as an interested person on behalf of BOBBYE RIVES, pursuant to Code of Civil Procedure section 2034.260, hereby submits her list of expert witnesses whose expert opinion she expects to offer in evidence at trial.

///

///

///

///

1

**RETAINED EXPERTS:**

    **(1) Michael G. Plopper, M.D.**
        7850 Vista Hill Avenue
        San Diego, CA 92123
        (858) 836-8355

    **(2) Karl Steinberg, M.D.**
        3608 Napa Court
        Oceanside, CA 92056
        (760) 473-8253

    See Declaration of Stephen D. Blea pursuant to CCP § 2034.260 attached hereto.

**NON-RETAINED EXPERTS:**

    Plaintiff intends to call the following non-retained experts at trial:

    **(1) Dr. Jeffery Wasserstom, M.D.**
        5565 Grossmont Center Dr., Suite 551
        La Mesa, CA 91942
        (619) 698-1088

    **(2) Dr. Zubic, M.D.**
        3405 Kenyon St., Suite 513
        San Diego, CA 92110
        (619) 226-1977

    **(3) Dr. Fink, M.D.**
        8852 Center Dr., Suite 404
        La Mesa, CA 91942
        (619) 463-1293

    Plaintiff also designates every expert designated by any party to this action and incorporates by reference those parties' expert designations.

    Plaintiff reserves the right to submit the names of additional expert witnesses for the purpose of expressing an opinion on a subject to be covered by experts designated by any party in this proceeding. (Cal. Civ. Proc. Code, §2034.280.)

**PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION**

Plaintiff further reserves the right to augment this expert witness designation and declaration by adding the name and address of any expert witness she has subsequently retained.  (Cal. Civ. Proc. Code §2034.610(a)(1).)

Plaintiff further reserves the right to amend the Declaration of Stephen D. Blea with respect to the general substance of the anticipated testimony of all designated expert witnesses.  (Cal. Civ. Proc. Code §2034.610(a)(2).

Plaintiff also reserves the right to call at trial any expert witness, regardless of whether the expert has been previously designated by any party, to impeach the testimony of an expert witness offered by any other party to this proceeding. (Cal. Civ. Proc. Code §2034.310(b).)

Plaintiff's designated experts will be made available for deposition at a time and date mutually convenient to all parties.

Dated: March 10, 2017                           WITHAM MAHONEY & ABBOTT, LLP




By:  _____
            Stephen D. Blea, Esq.
            Daniel W. Abbott, Esq.
            Attorneys for Plaintiff Larnita Pette

3

**PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION**

## DECLARATION OF STEPHEN D. BLEA, ESQ.

I, STEPHEN D. BLEA, ESQ., declare:

1.      I am an attorney at law duly licensed to practice before all the Court of the State of California. I am an associate attorney with the law firm of Witham Mahoney & Abbott, LLP, attorneys of record for Plaintiff Larnita Pette. I am one of the attorneys responsible for the above-entitled case and as such have personal knowledge of the contents of our files, especially as pertains to the issues and facts presented in this declaration. I am competent to and do testify to the matters herein on personal knowledge.

2.      Accompanying this Declaration is a list of the persons whose expert opinion testimony Plaintiff intends to offer at the trial of this action, either orally or by deposition testimony, in accordance with Code of Civil Procedure section 2034.260(b)(1).

3.      This Declaration is provided in accordance with Code of Civil Procedure section 2034.260(c).

4.      Michael Plopper, M.D. and Karl Steinberg, M.D. have agreed to testify at trial.

5.      Attached as **Exhibit A** and **Exhibit B** are resumes describing the professional qualifications of Dr. Plopper and Dr. Steinberg, respectively.

6.      The following is a brief narrative statement of the general substance of the testimony that Dr. Plopper and Dr. Steinberg are expected to give at trial:

(a) Dr. Plopper is expected to testify regarding Bobbye Rives' mental capacity and her susceptibility to undue influence at all relevant times.  Dr. Plopper is also expected to testify regarding any opinions offered by other medical experts concerning mental capacity and undue influence designated by any other party to this proceeding.

(b)    Dr. Steinberg is expected to testify regarding the level of care Bobbye Rives required at all relevant times to meet her medical and personal care needs, and the risks and

4

**PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION**

consequences to her of those levels of care not being met. Dr. Steinberg is also expected to testify regarding any opinions offered by other medical experts concerning required levels of care and risks and consequences of those levels of care not being met designated by any other party to this proceeding.

7.    Dr. Plopper and Dr. Steinberg will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the testimony described above including their expert opinions and the basis therefor.

8.    Dr. Plopper charges $400 per hour for records review, deposition testimony, court appearance and/or providing a written report. Additionally, Dr. Plopper charges $600 per hour for consultation with counsel. Dr. Steinberg charges $800 per hour for deposition testimony and $600 per hour for consultation with counsel.

I declare under penalty of perjury under the laws of the State of California that the foregoing is correct and true.

Executed this 10th day of March 2017, in San Diego, California.

Stephen D. Blea, Esq.

4847-3099-8085, v. 1

**PLAINTIFF LARNITA PETTE'S EXPERT WITNESS DESIGNATION AND DECLARATION**

*Curriculum Vitae*

# KARL E. STEINBERG, MD, CMD

**3608 Napa Court**
**Oceanside, CA 92056**

**(760) 473-8253 (M) •** *karlsteinberg@MAIL.com* **• (760) 637-2710 (F)**

## CURRENT EMPLOYMENT

- **Village Square Healthcare Center**, 05/09 to present. Duties: Medical Director for 118-bed Skilled Nursing Facility (SNF). Location: 1586 W. San Marcos Blvd., San Marcos, CA 92069. Contact: Gavin Wiswell, Administrator, 760-471-2986.
- **Life Care Center of Vista**, 01/13 to present. Duties: Medical Director for 134-bed SNF. Location: 304 N. Melrose Ave., Vista, CA 92083. Contact: Kim Kincaid, Administrator. 760-724-8222.
- **Carlsbad by the Sea Care Center**, 07/15 to present. Duties: Medical Director for 33-bed SNF and Continuing Care Retirement Community. Location: 2855 Carlsbad Blvd., Carlsbad, CA 92008. Contact: Joan Johnson, Executive Director, 760-435-2331.
- **Hospice By The Sea**, 08/95 to present. Duties: Medical Director. Location: 312 S. Cedros Ave., Ste. 205, Solana Beach, CA 92075. Contact: Kathie Jackson, Administrator, 858-794-0195.
- **Rancho Santa Fe Medical Group (Mobile Doctors Medical Group)**, 11/12 to present. Duties: Employed Physician, making SNF, RCFE and home visits. Location: 1582 W. San Marcos Blvd., San Marcos, CA 92078. Contact: Luis Navazo MD, Medical Director, 760-591-9975.
- **Stone Mountain Medical Associates, Inc.,** Oceanside, CA, 09/03 to present. Duties: President & CEO of healthcare and medicolegal consulting firm, providing medical direction, risk management services, QI, case review, testimony.
- **Scripps Coastal Medical Center**, 07/90 to present (Previously [Sharp] Mission Park Medical Grp.) Duties: Employed M.D.; Geriatrics, Family Medicine, Urgent Care, Palliative Care. Created SNF Team in 1994. From 1997-2012, supervised a team of six providers attending patients in post-acute and long-term care settings. Location: 130 Cedar Road, Suite 210, Vista, CA 92083. Contact: Anthony Chong MD, Medical Director. 760-827-7278.
- **Case Western Reserve University, Graduate School of Biomedical Engineering**, 09/12 to present. Location: 6540 Lusk Blvd, Suite C274,San Diego, CA 92121. Duties: Adjunct Faculty, teaching graduate level course on the U.S. Health Care System. Contact: Enrique Saldivar MD, 619-992-3905.
- **California State University, San Marcos, Institute for Palliative Care**, San Marcos, CA, 07/14 to present. Duties: Affiliate Faculty, curriculum development, teaching, content expert. Location: Craven Hall #6206. 333 S. Twin Oaks Valley Road, San Marcos, CA 92096. Contact: Helen McNeal, Executive Director, 760-750-7290.
- **Elsevier Publishing,** *Caring for the Ages,* Rockville, MD, 03/09 to present. Duties: Editor-in-Chief of AMDA's monthly periodical, print circulation >28,000. Contact: Carey Cowles, Managing Editor, 240-221-4500.

## EDUCATION AND POSTGRADUATE TRAINING

- **University of California San Diego (UCSD) Medical Center**, Residency in Family Medicine (including internship 1987-88), San Diego, CA, 6/87-6/90.
- **Ohio State University College of Medicine**, Columbus, OH, Graduated (M.D.) 6/12/87. Member, American Medical Student Association, Director (Ohio) of Medical Education/Community Orientation Project, Commendation in Psychiatry, Recipient of Landacre Society Award for Student Research.
- **Harvard College**, Cambridge, MA, Graduated (A.B. Biochemistry & Molecular Biology) 6/80. *Cum Laude* General Studies, Member Hasty Pudding Institute of 1770, Sophomore Standing Candidate, National Merit Scholarship Recipient.

## LICENSURE

Ohio #35-05-5734, issued 08/87
Florida #61418, issued 12/91
Passed FLEX I and II, 06/87.
DEA #BS1325376, XS1325376
TIRF-REMS Certification, 2014

California #A45736, issued 01/89
Hawaii #MD-7229, issued 08/90
Passed NBME I and II, 1984 & 1986.
NPI# 1144248915

Karl E. Steinberg MD CMD *Curriculum Vitae* Page 2 of 2

## SPECIALTY CERTIFICATIONS

- Diplomate, **American Board of Family Medicine** (formerly **American Board of Family Practice**), passed initial certification examination 07/90. Scored in 97th percentile among all applicants (Composite Score 650). Recertified 07/02 (92nd percentile), 08/08 (95th percentile), 11/14.
- Diplomate, **American Board of Hospice and Palliative Medicine**, awarded January 2004, recertified with **ABMS** Certificate of Added Qualification, inaugural class, awarded 2008.
- Certified Medical Director (CMD), **American Medical Directors Association** (now known as AMDA—The Society for Post-Acute and Long-Term Care Medicine), awarded June 2004, recertified 2010.
- Certified Hospice Medical Director (HMDC), **Hospice Medical Directors Certification Program (HMDCP)**, inaugural class, awarded July 2014.
- **Life Care Planning** coursework completed 2005, Kaplan College.

## PROFESSIONAL ORGANIZATIONS/MEMBERSHIPS/APPOINTMENTS

- AMDA—The Society for Post-Acute and Long-Term Care Medicine (Chair Public Policy Committee; Member Communications & Publications Committees)
- National POLST Paradigm Task Force (Executive Committee)
- National Quality Forum (Member, Standing Committee on Palliative Care and End-of-Life Care)
- California Association of Long-Term Care Medicine [CALTCM] (Secretary & Past President, Leadership Award Recipient 2016)
- Coalition for Compassionate Care of California (Immediate Past Chair)
- American Academy of Hospice & Palliative Medicine (Chair, Geriatrics & Long-Term Care Special Interest Group; Public Policy Committee)
- American Medical Association
- California Medical Association (House of Delegates)
- S.D. County Medical Society (Board of Directors, member of Bioethics Commission)
- American Academy of Family Physicians (Fellow since 1998)
- Society of Teachers of Family Medicine
- American Geriatrics Society
- International Society of Addiction Medicine
- American Academy of Hospice & Palliative Medicine
- International Psychogeriatric Association
- Society of Hospital Medicine
- Southern California Bioethics Committee Consortium
- California Association of Health Facilities (Government Relations Committee)

## OTHER EXPERIENCE

- Shea Family Health, 02/14 to 12/14, Duties: Chief Medical Officer for corporation providing post-acute and long-term care services, including 8 skilled nursing facilities, a home health agency and an RCFE in San Diego County.
- CareMinders Home Health, Cardiff, CA, 2012-2013, Medical Director for Home Health Agency.
- La Paloma Healthcare Center, Oceanside, CA, 1995-2007, Medical Director for 90-bed SNF.
- Las Villas de Carlsbad Health Center, Carlsbad, CA, 2007-2012, Medical Director for 34-bed SNF and adjoining Continuing Care Retirement Community (CCRC) with Assisted Living & Dementia Care units.
- Research Activities: Compliance in iron-deficient adolescents, Reduction of exercise-induced muscle damage by diclofenac, Investigator in multiple postmarketing studies on diabetes, dementia, agitation, smoking cessation, weight loss, advance care planning, care transitions.
- Editorial Advisory Board for *JAMDA*. Author/Contributor to AMDA Clinical Practice Guidelines (multiple, including the lead on 2012 revision of Pain CPG), White Papers, Tool Kits, Resolutions, etc.
- Consultant, Gerson Lehrman Group, various topics (Dementia, Remote Monitoring, LTC, Hospice, Pharmaceuticals, Diagnostics, etc.), 2002 to date.
- Clinical Instructor (Preceptor): Naval Hospital Camp Pendleton Family Medicine, UCSD Family Medicine, Samuel Merritt Univ., Point Loma Nazarene College, CWRU, others.
- High school science teacher (and coach), Fieldston School, Bronx, NY, 1981-83.

# MICHAEL GREGORY PLOPPER, MD

7850 Vista Hill Avenue, San Diego, CA  92123  (858) 836 8355   michael.plopper@sharp.com

## Work Experience

**Chief Medical Officer**, Sharp Healthcare Behavioral Health Services (includes 244 inpatient psychiatric beds, full continuum of outpatient services) (1998 – present)

Roles and responsibilities include

- Oversight of admissions, utilization management, payor relationships, consultation/liaison in medical settings
- Principal investigator of Clinical Research, over 300 clinical trials of investigational psychotropic medications
- Medical staff liaison; recruitment and supervision of medical directors
- Responsibility for civil commitment procedures; adherence to CMS, JC, FDA, HIPAA, EMTALA regulatory requirements
- Quality measure reporting, sentinel event review and process improvement
- Inpatient and outpatient therapeutic program development
- Community health partnership development
- Patient experience enhancement
- Development recovery oriented patient care

**Medical Director**, Mesa Vista Hospital  (1994-1998)

**Vice President**, Direct Care Division, Vista Hill Foundation (1995 – 1998)

**Medical Director**, Senior Programs, Mesa Vista Hospital  (1992 – 2000)

**Medical Director**, Older Adult Program, Sharp Cabrillo Hospital  (1990 – 1994)

**Chief of Staff**, Mesa Vista Hospital (1990 – 1991)

**Clinical Assistant Professor of Psychiatry**, USC School of Medicine (1983 – 1989)

**Assistant Professor of Psychiatry**, USC School of Medicine (1979 – 1982)

**Co-Chief and Training Director**, USC/Rancho Los Amigos Hospital Research and Training Center on Aging    (1980 – 1982)

Clinical practice of inpatient and outpatient general adult psychiatric care; gero-psychiatric speciality focus  (1983 – 2007)

Expert Witness Activity
    Dr. Plopper provides expert witness evaluations and testimony regarding capacity, undue influence and standard of care issues

## Education

| | |
|---|---|
| **University**: | Northwestern University<br>B.S., Biological Sciences (1970) |
| **Medical School**: | Indiana University School of Medicine<br>M.S., Physiology (1972)  M.D. (1975) |
| **Residency**: | Los Angeles County/University of Southern California<br>Medical Center, Dept. of Psychiatry  (1975 – 1978) |
| **Psychiatric Fellowships** | Consultation/Liaison Psychiatry (1978 – 1979)<br>Geropsychiatry (1979 – 1980)<br>LAC/USC Medical Center |
| **Board Certifications**: | Diplomate, American Board of Psychiatry and Neurology (1981)<br>Added qualifications in Geriatric Psychiatry,<br>American Board of Psychiatry and Neurology (1994) |

## Professional Activities

Sharp Institutional Review Board; Sharp Wellbeing Committee; Sharp CME Committee (1998 – Present)

California Psychiatric Association Council; San Diego Psychiatric Society (1996 – 2002)

President, San Diego Psychiatric Society (2000 – 2001)

Board of Directors, Integrated Mental Health Professionals (IPA) (1993-1997)

## Awards

Distinguished Fellow, American Psychiatric Association (2003)

Clinician of the Year, San Diego County Mental Health Association (2003)

San Diego Magazine, Top Doctors 2004, 2005, 2006

## Publications

Plopper, M.G., Commonly Encountered Psychiatric Problems, in Ambulatory Geriatric Care, Moby-Year Book Inc., 1993

Plopper, M.G., Evaluation and Treatment of Depression, in Geriatric Rehabilitation, Little, Brown & Co., 1990

Lopez-Aqueres, W., Kemp, B., Plopper, M.G., Staples, F.R., Brummel-Smith, K., Health Needs of the Hispanic Elderly, Journal American Geriatrics Society, Volume 32, pp 191-198, 1984

Plopper, M.G. and Chui, Helena, Evaluation and Treatment of Dementia, USC Press, 1983

Plopper, M.G., Mental Health in the Elderly, Aging Prospects and Issues, R. David (ed.), University of Southern California Press, 1980

# MICHAEL GREGORY PLOPPER, MD
7850 Vista Hill Avenue, San Diego, CA  92123  (858) 836 8355
michael.plopper@sharp.com

Legal Fee Schedule

| | | |
|---|---|---|
| Record review, deposition, court appearance and written report | $ | 400  per hour |
| Attorney phone consult | $ | 150 per 15 minutes |
| Retainer | $ | 1600 non refundable (initial 4 hours) |
| Independent medical examination | $ | 600 per hour |

Fee must be paid in full within two weeks of receipt.

Cancellations will require 48 hours' notice. If not, attorney will be billed legal fee schedule rate.

This agreement is with attorney, not the client, and attorney's firm is bound to this agreement.

My expert opinion is independent of terms of retention.

Signature of retraining attorney:

_____          Date: _____

# MA

W I T H A M   M A H O N E Y   &   A B B O T T

December 9, 2015

**VIA EMAIL**

Patrick L. Hosey, Esq.
Hosey & Bahrambeygui, LLP
225 Broadway, Suite 1460
San Diego, CA 92101

     *Re*:    ***Pette v. Murray-Calcote, et al. (Case No. 37-2015-00015654)***
            **REQUEST TO MEET AND CONFER**

Dear Mr. Hosey,

My office has received Ralph Sanders' discovery responses to the first set of discovery propounded by Larnita Pette. As discussed in more detail below, several of Mr. Sanders's responses do not provide complete answers, and we request that supplemental responses be provided. Please allow this to serve as our effort to meet and confer regarding Mr. Sanders's responses.

## Responses to Special Interrogatories

### Preliminary Statement to the Special Interrogatories

The Preliminary Statement to Mr. Sanders's Special Interrogatory responses asserts that Ms. Pette has "in [her] possession documents and information that substantiate claims set forth in the complaint, however, has refused and/or will refuse to produce such information based on claims of privilege." Ms. Pette has made no such contentions, and thus, this verified statement appears to be false. Please provide more detail in support of this statement..

### Special Interrogatories Nos. 2-10, 13-23 Non-Responsive or Insufficient Answers

Interrogatory No. 2 seeks the name of all individuals with knowledge of the facts justifying Mr. Sanders' response to Interrogatory No. 1. Mr. Sanders' response fails to name such knowledgeable individuals, yet it does not deny the potential for their existence. Instead, Mr. Sanders merely responds that he is "unable to provide the information requested at present." This is not an acceptable response under the Code. (Code Civ. Proc., § 2030.210). Ms. Pette requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response



WITHAM MAHONEY & ABBOTT

to Interrogatory No. 1. If no such individual exists, Ms. Pette requests that Mr. Sanders respond accordingly. In any event, Mr. Sanders must provide an appropriate response to Interrogatory No. 2, as his present answer is incomplete.

Interrogatory No. 3 asks whether Mr. Sanders engaged in any actions on Bobbye J. Rives' behalf between 2011 and her death on September 14, 2014. The information sought by this interrogatory does not simply encompass actions typically taken by attorneys, healthcare managers, or executors, however Mr. Sanders improperly imposes that limitation on the interrogatory. The types of "actions" sought include, but are not limited to: (1) whether Mr. Sanders made telephone calls to/for Bobbye J. Rives during the pertinent period; (2) whether Mr. Sanders discharged Bobbye J. Rives from medical or psychological treatment during the pertinent period; and (3) whether Mr. Sanders corresponded with Bobbye J. Rives' doctors concerning her health and treatment plan. Ms. Pette requests that Mr. Sanders remove his limitation from his response and respond fully regarding the actions he took on behalf of Bobby J. Rives.

Interrogatory No. 4 requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response to Interrogatory No. 3. Because Mr. Sanders' response to Interrogatory No. 3 is insufficient and requires additional consideration, Mr. Sanders' response to Interrogatory No. 4 will similarly need to be revised.

Interrogatory No. 5, while it admittedly could have been clearer, is asking whether Mr. Sanders ever signed discharge papers for Bobbye J. Rives to be released from Scripps Memorial Hospital on or around September 7, 2014. If Mr. Sanders did sign such discharge papers, the interrogatory seeks all information that would substantiate that fact. With that clarification, we request that Mr. Sanders please revise his response to Interrogatory No. 5.

Interrogatory No. 6 requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response to Interrogatory No. 5. Because Mr. Sanders' response to Interrogatory No. 5 is insufficient and requires additional consideration, Mr. Sanders' response to Interrogatory No. 6 will similarly need to be revised.

To clarify, Interrogatory No. 7 is asking whether Mr. Sanders assisted in finding an assisted living facility for Bobbye J. Rives when she was released from Scripps Memorial Hospital on September 7, 2014. If Mr. Sanders did assist in finding an assisted living facility, the interrogatory seeks all information that would substantiate that fact. With that clarification, we request that Mr. Sanders please revise his response to Interrogatory No. 7.



WITHAM MAHONEY & ABBOTT

Interrogatory No. 8 requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response to Interrogatory No. 7. Because Mr. Sanders' response to Interrogatory No. 7 is insufficient and requires additional consideration, Mr. Sanders' response to Interrogatory No. 8 will similarly need to be revised.

Interrogatory No. 9, to clarify, is requesting whether Mr. Sanders assisted Bobbye J. Rives in any way in pursuing a restraining order against Ms. Pette. Such assistance would include, but is not limited to, providing transportation to court, attending court hearings, helping with legal paperwork, etc. If Mr. Sanders did assist in this process, the interrogatory seeks all information that would substantiate that fact. With that clarification, we request that Mr. Sanders revise his response to Interrogatory No. 9.

Interrogatory No. 10 requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response to Interrogatory No. 9. Because Mr. Sanders' response to Interrogatory No. 9 is insufficient and requires additional consideration, Mr. Sanders' response to Interrogatory No. 10 will similarly need to be revised.

Interrogatory No. 13 asks that Mr. Sanders list all the medical facilities that he helped Bobbye J. Rives find in order for Ms. Rives to: (1) receive treatment for any medical conditions; or (2) receive any other medical service. Mr. Sanders has objected to this interrogatory and refused to respond, stating he was unable to determine what the term "assisted" meant in context of the interrogatory. Section 1 of Ms. Pette's special interrogatory requests provides a list of definitions which are meant to be incorporated within those interrogatories, and Item 6 defines "ASSIST" or "ASSISTED" as "to accommodate, aid, support, contribute, participate, or help." Given the existence of this definition, Mr. Sanders' objection is improper. Accordingly, please provide a full response to Interrogatory 13.

Interrogatory No. 14 requests that Mr. Sanders state the name of any individual who can corroborate or attest to Mr. Sanders' response to Interrogatory No. 13. Because Mr. Sanders' response to Interrogatory No. 13 is insufficient and requires additional consideration, Mr. Sanders' response to Interrogatory No. 14 will similarly need to be revised.

To clarify, Interrogatory No. 15 is asking whether Mr. Sanders assisted in providing groceries to Bobbye J. Rives, or whether Mr. Sanders ever took groceries to Bobby J. Rives. If Mr. Sanders did provide such assistance with Ms. Rives' groceries, the interrogatory seeks all information that would substantiate that fact. With that clarification, we request that Mr. Sanders please revise his response to Interrogatory No. 15.