FILED & ENTERED

JUN 03 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br>Ralph E Sanders<br>　　　　　　　　　　Debtor(s). | CHAPTER 7<br>Case No.:  8:17-bk-10265-MW<br>Adv No:   8:17-ap-01068-MW |
| Larnita Pette<br>　　　　　　　　　　Plaintiff(s),<br>　v.<br>Ralph E Sanders<br>　　　　　　　　　　Defendant(s). | **MEMORANDUM DECISION AND ORDER**<br>Date:　　　　May 20-21, 2019<br>Time:　　　　9:00 AM<br>Courtroom:　6C<br>　　　　　　　411 W Fourth Street<br>　　　　　　　Santa Ana, CA 92701 |

Larnita Pette, plaintiff *pro se*
Ralph E. Sanders, defendant-chapter 7 debtor
Gregory L. Bosse, for defendant Ralph E. Sanders

**WALLACE, J.**

　　　　The Court conducted a two-day trial on May 20-21, 2019 in this adversary proceeding brought by plaintiff Larnita Pette ("Ms. Pette") against defendant-chapter 7 debtor Ralph E. Sanders ("Mr. Sanders"). Ms. Pette seeks the entry of an order denying Mr. Sanders's discharge on the ground that he knowingly and fraudulently made a false oath or account in this case by filing false schedules and statement of financial affairs. 11 U.S.C. § 727(a)(4).

Mr. Sanders admits that there are omissions in these documents but attributes the errors to his bankruptcy petition preparer, Grady Vickers, who is now deceased. He also argues the omissions are not material.

Ms. Pette was self-represented throughout the entirety of these proceedings. Mr. Sanders was self-represented until the eve of trial, at which point he engaged the services of an attorney to represent him at trial.

## FINDINGS OF FACT

Ms. Pette is the only child of her mother, Bobbye Rives, who passed away in 2014. Mr. Sanders is Bobbye Rives's nephew and Ms. Pette's cousin.[1]

Ms. Pette contends that her mother began undergoing personality changes about four years before her death and that her condition eventually became full-blown dementia (although not Alzheimer's)[2] involving rage and anger, often directed at Ms. Pette. She states that she called the police after her mother attacked her (she had moved down from the Bay Area in 2010 to care for her mother) and that at least on one occasion her mother was placed on a three-day hold at a mental institution.

Serious conflict developed between Ms. Pette and Mr. Sanders after Mr. Sanders made accusations to Adult Protective Services that Ms. Pette was committing elder abuse against her mother. Ms. Pette vigorously denies these accusations. The entire record in this case, Ms. Pette's demeanor and her discussion of her mother's medical and mental condition in great and intricate detail all lead this Court to view with extreme skepticism any contention that Ms. Pette committed elder abuse against her mother.

Regarding testamentary arrangements, Ms. Pette alleges that Bobbye Rives and her husband had a joint will in which each of them left half of their estate to Ms. Pette (with the other half going to the surviving spouse).[3] However, at the time of Bobbye Rives's death, the operative document was a trust (the "Bobbye Rives Trust") that named Mr. Sanders and

---

[1] 1 Reporter's Transcript ("R.T."), May 20, 2019, at 54-55, 58.
[2] 1 R.T. at 55, lines 8-16.
[3] 1 R.T. at 57, lines 18-21.

Beverly Monique Murray-Calcote ("Ms. Calcote") as trustees and disposed of Bobbye Rives's estate as follows:  as to an interest in real property, one-fifth to Mr. Sanders, one-fifth to Ms. Pette, one-fifth apiece to each of three other distant relatives; as to the balance of the estate, Ms. Calcote as residuary legatee.

Faced with near-disinheritance despite her status as the only child of Bobbye Rives, Ms. Pette commenced probate litigation in the California state courts against Mr. Sanders and Ms. Calcote for undue influence over her mother.  She commenced a second action against Mr. Sanders for defamation.[4]

While this state court litigation was proceeding, Mr. Sanders and Ms. Calcote as trustees of the Bobbye Rives Trust began making trust distributions to themselves and the other beneficiaries.  Mr. Sanders received approximately $90,000 from the Bobbye Rives Trust in a series of installments in 2015.  Mr. Sanders did not deposit the money in any bank but instead kept it in a safe.

With the litigation costs rising, Mr. Sanders alleges that his attorney advised him to file bankruptcy to wipe out any debts to Ms. Pette and thereby eliminate the need for him to spend more money on attorneys in defending the litigation brought by Ms. Pette.

Mr. Sanders engaged bankruptcy petition preparer Grady Vickers to prepare a chapter 7 petition for him.  He alleges that he emailed Mr. Vickers detailed information about the distributions he received from the Bobbye Rives Trust, but the evidence received by the Court falls short of establishing this point.  It's true that Mr. Sanders sent Mr. Vickers various emails with attachments, but the Court has only Mr. Sanders's testimony that the attachments included information about Bobbye Rives Trust distributions.  Based upon the entire record in this case and Mr. Sanders's demeanor on the witness stand, the Court does not regard such testimony as credible.

Mr. Sanders's bankruptcy petition under chapter 7 was filed on January 25, 2019.  Grady Vickers is shown as the petition preparer.  The petition contains three significant

---

[4] 1 R.T. at 58-59.

omissions.[5]

First, on page 14 of 76, under Part 4, the question is asked, "Do you own or have any legal or equitable interest in any of the following?" There is then listed various kinds of property, money, deposits, bonds, etc. One of the categories is in numbered paragraph 25 on page 16 of 76: "Trusts, equitable or future interests in property . . . and rights or powers exercisable for your benefit." Instead of answering "yes" to reflect his interest in the Bobbye Rives Trust, Mr. Sanders checked the "no" box.

Second, in the Statement of Financial Affairs, at page 42 of 76, the question is asked "Did you receive any other income during this year [i.e., 2017] or the two previous calendar years [i.e., 2015 and 2016]?" Mr. Sanders checked the box "yes "and disclosed the receipt of unemployment benefits in 2015 and 2016 but did not disclose his receipt of over $90,000 from the Bobbye Rives Trust in the 2015 – 2016 time period.

Third, on Schedule I at page 35 of 76, under "Part 1: Describe Employment," Mr. Sanders checked the box "Not employed" even though in fact he was employed by a non-profit organization that provided him with free housing and expense reimbursement in exchange for his services as property manager of the organization's residential housing property. (To complete the circle on this, in Part 11 on page 51 of 76, he checked the box "no" in answering a question as to whether he was a "sole proprietor or self-employed in a trade, profession or other activity, either full-time or part- time," so that even if there might or might not be technical reasons why he was not an employee but instead self-employed as an independent contractor, he would have given an untruthful answer in any event).

Thus, to summarize, there are untruthful answers to questions in the petition relating to Mr. Sanders' employment, his ownership of property and his income.

Mr. Sanders admits that the petition is untruthful in the respects discussed above. He contends, however, that he was unaware of these omissions when he signed the petition and swore under oath that the petition was true and correct. See Jurats on pages 40 and 52 of 76. He blames the mistakes on Grady Vickers and attributes the errors to Grady Vickers's

---

[5] The topic of materiality is discussed *infra*.

alleged ill health during the fall and early winter of 2016-17.

Mr. Sanders notes that he amended his schedules to correct these errors after they came to light at his section 341(a) examination. He points to his prompt admission of the errors at the examination as evidence that the omissions were unintentional. Ms. Pette counters that she was present at the section 341(a) examination, and that her presence left him with no alternative but to admit these errors.

Mr. Sanders's co-trustee, Ms. Calcote, filed a bankruptcy petition on February 17, 2017, a few weeks after Mr. Sanders filed his petition. Ms. Calcote's attorney, Alon Darvish, Esq., signed her petition as her attorney. Ms. Calcote's petition, like Mr. Sanders's petition, fails to disclose her interest in the Bobbye Rives Trust or her receipt of distributions from the Bobbye Rives Trust during 2015 or 2016 (or any other time).

Ms. Calcote's omissions came to the attention of the United States Trustee (the "UST"). The UST commenced an adversary proceeding against Ms. Calcote by filing a complaint on September 27, 2017 to deny her a discharge. Numbered paragraphs 22 and 23 of the complaint accuse Ms. Calcote of intentionally and fraudulently concealing her interest in the Bobbye Rives Trust and her receipt of approximately $85,000 in distributions from the Bobbye Rives Trust. Numbered paragraph 5 of Ms. Calcote's answer to the complaint alleges the omission of her interest in the Bobbye Rives Trust was "inadvertent." In numbered paragraph 8 of the answer she generally and specifically denies the allegations of numbered paragraphs 22 and 23 of the UST's complaint.

On January 25, 2018, the UST, Ms. Calcote, Ms. Calcote's chapter 7 trustee Rosendo Gonzalez and other parties filed a stipulation dismissing Ms. Calcote's chapter 7 case without a discharge and with an eight-year bar to re-filing. The stipulation recited that it was intended to fully resolve the UST's adversary proceeding to deny Ms. Calcote a discharge and therefore required the UST to voluntarily dismiss it.

//

//

## CONCLUSIONS OF LAW

11 U.S.C. § 727(a)(4)(A) provides that the bankruptcy court shall grant the debtor a discharge unless the debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account . . ."

Ms. Pette bears the burden of proving by a preponderance of the evidence that Mr. Sanders's discharge should be denied. *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007). A false statement or an omission in a debtor's bankruptcy schedule or statement of financial affairs can constitute a false oath. *Id.; Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005), *aff'd,* 24 Fed. Appx. 420 (9th Cir. 2007). However, a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge. *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999).

To prevail in this adversary proceeding, Ms. Pette must show by a preponderance of the evidence that (1) Mr. Sanders made a false statement or omission; (2) regarding a material fact, and (3) he did so knowingly and fraudulently. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), *aff'd,* 212 Fed. Appx. 589 (9th Cir. 2006). The Court finds that Mr. Sanders made a false omission of his interest in the Bobbye Rives Trust, his receipt of over $90,000 from the Bobbye Rives Trust and his employment status with respect to the non-profit organization mentioned above.

"Materiality" is defined broadly for purposes of the denial of discharge rules. A fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of the debtor's property." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, *supra,* 379 B.R. at 173. Under this test, the failure to disclose Mr. Sanders's beneficial interest in the Bobbye Rives Trust and his receipt of over $90,000 therefrom is material. Mr. Sanders testified that he used some of the moneys he received from the Bobbye Rives Trust to fund the non-profit organization that employed him. Thus, the Bobbye Rives Trust "bore a relationship" to Mr. Sanders's business transactions, namely, forming the non-profit organization and becoming

employed by it. Additionally, the $90,000-plus distribution relates to the discovery of the existence and disposition of Mr. Sanders's property: the $90,000-plus existed in Mr. Sanders's hands for a period of time, and he testified that he disposed of the entirety of this sum.[6] (The Court also notes the common-sense point that $90,000 is a material sum of money in the overall context of Mr. Sanders's property and income as shown in the amended schedules). Finally, Mr. Sanders's failure to disclose his employment status with the non-profit organization is material because it bears a relationship to his business transactions namely, his employment in the sense that he was in the trade or business of being an employee for the non-profit organization. For these reasons, the Court concludes that each of the three omissions described above is "material."

The third and final element is intent. A debtor acts "knowingly" if he or she acts deliberately and consciously. *Id.* at 173. To prove a debtor acted "fraudulently," a creditor must show that (1) the debtor made the representations or omission in the bankruptcy schedules, (2) the debtor knew at the time they were false, and (3) the debtor made them with the intention and purpose of deceiving creditors. *Id.* at 173.

The Court does not believe this was, like *Khalil*, a case of reckless disregard for the truth. To the contrary, the Court believes (and finds) that Mr. Sanders deliberately and consciously took steps to ensure that both his interest in the Bobbye Rives Trust and the $90,000-plus distribution he received from it were concealed from creditors.

Mr. Sanders's attorney contended at closing argument that the fact that both Mr. Sanders and Ms. Calcote, each a trustee of the Bobbye Rives Trust, failed to disclose the Bobbye Rives Trust and the high five-figure distributions received by them from the Bobbye Rives Trust is a "pure coincidence." The Court does not regard this as a coincidence at all. Rather, this dual failure to disclose is compelling evidence that Mr. Sanders and Ms. Calcote were in league with one another to deceive their creditors, fly under the radar of their chapter

---

[6] If the word "discovery" is interpreted to pertain only to "assets" and not to "business dealings, or the existence and disposition of the debtor's property," the distribution of the $90,000-plus can be said to concern the discovery of assets, because his chapter 7 trustee was interested in how the $90,000-plus was spent by Mr. Sanders and whether any portion of it remained and constituted bankruptcy estate property.

7 trustees and eliminate their potentially large liability to Ms. Pette for undue influence in getting Bobbye Rives to nearly disinherit her only child. The central element of the scheme was to intentionally fail to disclose the existence of their beneficial interests in the Bobbye Rives Trust and their receipt of high five- figure distributions from it.

If, as Mr. Sanders testified, the main purpose of the bankruptcy was to shed his liability to Ms. Pette in regard to the formation of the Bobbye Rives Trust through alleged undue influence and the receipt of a distribution of $90,000-plus from the Bobbye Rives Trust as the alleged fruits of such undue influence, then wouldn't the beneficial interest in the Bobbye Rives Trust and such distribution be the very first and most important things Mr. Sanders would want to list in his bankruptcy petition along with the lawsuits themselves?[7] And wouldn't the listing of those items in the schedules and SOFA be the very first thing Mr. Sanders would want to check and double-check before signing the petition?

Having had an opportunity to consider Mr. Sanders's demeanor on the witness stand, the Court does not consider credible his assertion that the three omissions were inadvertent or an oversight.

Overall, Mr. Sanders's bankruptcy petition, when considered in the context of the matters discussed above, shows an effort to minimize assets and sources of income (the beneficial interest, the $90,000-plus distribution and his employment with the non-profit) and maximize liabilities (listing the lawsuits against him but not the assets associated with those liabilities). All of this shows an effort to paint a portrait for creditors and the chapter 7 trustee of an impecunious debtor with minimal assets and maximum liabilities. The scheme unraveled quickly after Ms. Pette appeared at the section 341(a) meeting, but this was likely a development Mr. Sanders had not foreseen.

To summarize, the Court finds and determines that (1) Mr. Sanders made three material omissions in the bankruptcy schedules and statement of financial affairs, namely, the omission of his beneficial interest in the Bobbye Rives Trust, the omission of the $90,000-

---

[7] The two lawsuits are disclosed in the petition, but note that these are liabilities, not assets – things not as likely to draw the attention of a chapter 7 trustee or a creditor.

plus distribution he received from the Bobbye Rives Trust and the omission of his employment by the non-profit organization referenced above; (2) Mr. Sanders knew the schedules and statement of financial affairs were false in this regard at the time he signed the jurats and at the time the petition was filed; and (3) Mr. Sanders made these omissions and signed the jurats with the intention and purpose of deceiving both creditors and the chapter 7 trustee.

For these reasons, it is adjudged, ordered and decreed that Mr. Sanders is denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

IT IS SO ORDERED.

###

Date: June 3, 2019

Mark S. Wallace
United States Bankruptcy Judge