# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

---

In re: RALPH E. SANDERS

Debtor

BAP No. CC-19-1153-FSTa

------------------------------

RALPH E. SANDERS

Appellant

v.

LARNITA PETTE

Appellee

Bankr. No. 8:17-bk-10265-MW
Adv. No. 8:17-ap-01068-MW
Chapter 7

---

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for California Central - Santa Ana.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is **AFFIRMED.**

### FOR THE PANEL,

Susan M Spraul
Clerk of Court

**By:** Vicky Jackson-Walker, Deputy Clerk

FILED

MAR 10 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.     CC-19-1153-FSTa |
| RALPH E. SANDERS, | Bk. No.     8:17-bk-10265-MW |
| Debtor. | Adv. Pro.   8:17-ap-01068-MW |
| RALPH E. SANDERS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| LARNITA PETTE, | |
| Appellee. | |

Argued and Submitted on February 27, 2020
at Pasadena, California

Filed – March 10, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark. S. Wallace, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Gregory Bosse argued for appellant; Appellee Larnita Pette argued pro se.

Before: FARIS, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Appellee Larnita Pette alleged that her cousin, chapter 7[1] debtor Ralph E. Sanders, made false and misleading statements on his bankruptcy documents. The bankruptcy court agreed and denied Mr. Sanders his discharge under § 727(a)(4)(A). Mr. Sanders appeals, arguing that the bankruptcy court's factual findings were clearly erroneous and blaming his bankruptcy petition preparer for the omissions and false statements.

We discern no error and AFFIRM.

## FACTUAL BACKGROUND

**A.    Prepetition events**

Ms. Pette's mother, Bobbye Rives, was Mr. Sanders' aunt. In or around 2010, Ms. Rives' behavior and her relationship with Ms. Pette, her only child, concurrently deteriorated.

Ms. Rives' original will dictated that Ms. Pette would receive her entire estate. In 2011, the testamentary documents were changed to a trust

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

("Rives Trust") that named Mr. Sanders and another cousin, Beverly Monique Murray-Calcote, as trustees. Under the Rives Trust, Mr. Sanders, Ms. Pette, and three distant relatives each received a one-fifth interest in Ms. Rives' residence. The rest of Ms. Rives' estate was left to Ms. Calcote.

Ms. Rives passed away in 2014. In or around 2015, Mr. Sanders and Ms. Calcote began making distributions from the Rives Trust. Mr. Sanders received approximately $98,000, and Ms. Calcote received approximately $85,000. Mr. Sanders said that he spent all of the funds by March 2016.

Ms. Pette filed two state court lawsuits against Mr. Sanders and Ms. Calcote: the first alleging elder abuse and defamation and the second seeking to preserve the remaining trust assets.

### B. Mr. Sanders' bankruptcy filings

Three months before trial in state court, Mr. Sanders filed a chapter 7 petition with the help of bankruptcy petition preparer Grady Vickers. He asserted that he informed Mr. Vickers about the Rives Trust and trust distributions. Nevertheless, the bankruptcy documents contained three significant omissions. First, Mr. Sanders failed to disclose his interest in the Rives Trust on his Statement of Financial Affairs ("SOFA") and schedules. Second, he omitted his receipt of the trust distributions, despite disclosing that he received unemployment benefits in 2015 and 2016. Third, Mr. Sanders did not disclose his employment with a nonprofit organization (of which he was CEO) that provided him with free housing in exchange

for his services as property manager.

The omissions only came to light at the second session of Mr. Sanders' § 341 meeting of creditors. Faced with questions about the Rives Trust, and with Ms. Pette in attendance, Mr. Sanders acknowledged the omissions; he later amended his schedules and SOFA.

A few weeks after Mr. Sanders filed his petition, Ms. Calcote also filed a chapter 7 petition and similarly failed to disclose her interest in the Rives Trust and the $85,000 in trust distributions. The irregularities in Mr. Sanders' case caused the U.S. Trustee to object to Ms. Calcote's discharge. Ms. Calcote agreed to the dismissal of her case with an eight-year bar on refiling.

**C.    Ms. Pette's adversary complaint**

Ms. Pette filed an adversary complaint against Mr. Sanders under §§ 523(a)(6) and 727(a)(4). As to § 727(a)(4), she alleged that Mr. Sanders filed fraudulent information in his bankruptcy documents and concealed the fact that he was a co-trustee and beneficiary of the Rives Trust.

**D.    Trial and decision**

At the trial on the § 727(a)(4) claim, Mr. Sanders testified that he filed a bankruptcy petition at the urging of his state court attorney, due to the costs of the state court litigation, and retained Mr. Vickers to prepare his bankruptcy petition. He further testified that he provided Mr. Vickers with his 2015 tax return and a breakdown of what he did with the money he

received from the Rives Trust with the expectation that Mr. Vickers would include that information in his bankruptcy filings. After Mr. Sanders commenced his bankruptcy case, Mr. Vickers passed away. The bankruptcy court admitted an e-mail from Mr. Sanders to Mr. Vickers and the breakdown concerning the distributions. It sustained Ms. Pette's hearsay objections to an e-mail that Mr. Sanders received from Mr. Vickers and two documents signed by Mr. Vickers' widow in which she stated that Mr. Vickers made mistakes in Mr. Sanders' filings.

Mr. Sanders also offered inconsistent testimony concerning whether he reviewed the bankruptcy petition. He acknowledged that he signed the petition but alternately testified that he did and did not review it prior to signing. When the court asked him about the inaccuracies in his filings, he blamed the omissions and false statements on Mr. Vickers and claimed that the omissions were not affirmatively false.

The court held that Ms. Pette had established all of the elements of § 727(a)(4)(A). It first stated that Mr. Sanders made a false statement or omission regarding his interest in the Rives Trust, his receipt of over $90,000, and his employment status. Second, it held that the omissions were material because they bore a relationship to Mr. Sanders' business transactions. Finally, the court held that Mr. Sanders knowingly and fraudulently concealed the information from creditors. It found Mr. Sanders not credible and discounted his testimony that he gave

5

Mr. Vickers the information relating to the Rives Trust.

Mr. Sanders timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). The bankruptcy court's order did not dispose of all claims in the adversary proceeding, but the court entered an order pursuant to Civil Rule 54(b) directing entry of final judgment against Mr. Sanders on the § 727(a)(4)(A) claim. We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting Ms. Pette judgment under § 727(a)(4)(A) and denying Mr. Sanders' discharge.

## STANDARDS OF REVIEW

Mr. Sanders acknowledges that his challenges to the court's factual findings are reviewed for clear error. Under § 727(a)(4)(A), whether a debtor made a false oath, whether the false statements were material, and whether the debtor had the requisite fraudulent intent are all questions of fact reviewed under the clearly erroneous standard. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Id.* at 1196. "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old,

unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985). We also give deference to inferences drawn by the trial court. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995).

We review the bankruptcy court's evidentiary rulings for an abuse of discretion. *See Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 885 (9th Cir. 2003). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The bankruptcy court did not clearly err in finding that Mr. Sanders knowingly and fraudulently made false statements and omissions in his bankruptcy documents.**

Mr. Sanders primarily challenges the court's finding that he had the requisite intent to omit certain information from his bankruptcy filings. He offers a number of explanations for his actions and blames the mistakes on

7

Mr. Vickers. We discern no clear error.

Section 727(a) provides that a court shall deny discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account[.]" § 727(a)(4)(A). "To prevail on this claim, a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" *In re Retz*, 606 F.3d at 1196 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)).

Section 727(a)(4)(A) is meant "to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) (citing *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999)). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *Id.* (citing *In re Roberts*, 331 B.R. at 882; *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (9th Cir. BAP 2004)).

At issue is whether Mr. Sanders acted knowingly and fraudulently. We have stated that a debtor "acts knowingly if he or she acts deliberately and consciously." *Id.* at 173 (citing *In re Roberts*, 331 B.R. at 883). The creditor may establish that the debtor acted fraudulently by proving

8

"(1) [that] the debtor made the representations [e.g., a false statement or omission in bankruptcy schedules]; (2) that at the time he knew they were false; [and] (3) that he made them with the intention and purpose of deceiving the creditors . . . ." *Id.* (citing *In re Roberts*, 331 B.R. at 884). The debtor's fraudulent intent may be demonstrated by circumstantial evidence and inference, and the court may infer fraudulent intent based on a "pattern of falsity." *In re Wills*, 243 B.R. at 62.

Mr. Sanders argues throughout that the bankruptcy court erred in finding him not credible. But we afford the bankruptcy court great deference in its determinations of witness credibility. *See Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017). The bankruptcy court evaluated Mr. Sanders' demeanor and considered his version of events. We find no clear error in its decision not to believe his testimony.

Similarly, the bankruptcy court did not err in rejecting Mr. Sanders' documentary evidence to support his testimony. The court noted that the e-mail to Mr. Vickers regarding the trust distributions does not establish that the breakdown of the trust distributions was attached to that e-mail. The court properly found Mr. Sanders' testimony not credible on this point, so it was within its discretion to reject Mr. Sanders' testimony that he had disclosed the trust distributions to Mr. Vickers. And whether he told Mr. Vickers about the Rives Trust or not, Mr. Sanders still had a duty to review his schedules and SOFA personally before signing them. *See Cusano*

*v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001) ("[T]he debtor has a duty to prepare schedules carefully, completely, and accurately." (citations omitted)); *AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante)*, 215 B.R. 444, 447 n.8 (9th Cir. BAP 1997) ("Adopting a cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to ferret out the truth is not acceptable conduct by debtors or their counsel.").

Mr. Sanders contends that his willingness to amend his schedules and SOFA demonstrates that he did not intend to deceive the court or his creditors. But his later corrective actions (only after being caught) do not vitiate the bankruptcy court's finding that he intended to conceal material information in the first place. "Amending bankruptcy schedules to disclose material facts after those facts come out at a meeting of creditors do not preclude denial of discharge: 'foxhole conversions are not necessarily convincing, and disclosures made after a debtor realizes exposure is imminent do not absolve fraud.'" *U.S. Tr. v. Ellis (In re Ellis)*, 591 B.R. 32, 51 (Bankr. W.D. Wash. 2018) (quoting *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 877 (9th Cir. BAP 2007)).

Mr. Sanders argues that the court clearly erred by: (1) finding that he engaged in a scheme with Ms. Calcote; (2) mistakenly considering the "badges of fraud" against him; (3) failing to consider his lack of sophistication; and (4) improperly inferring his wrongful intent in filing for bankruptcy protection. We reject each of these arguments. The court

10

carefully weighed the testimony, evidence, and circumstances of the case. The court's findings were not illogical, implausible, or without support in the record.

**B.     The bankruptcy court did not err in conducting the trial.**

Mr. Sanders argues that there were many "irregularities" in the trial. We again discern no error.

Mr. Sanders argues that the bankruptcy court was prejudiced by Ms. Pette's testimony about her mother's condition and the allegations of elder abuse. But we have carefully reviewed the trial transcript, and there is no indication that the bankruptcy court improperly focused on extraneous matters. In order to understand the background of the case, the bankruptcy court invited both parties to provide testimony as to certain topics. Ms. Pette, who was unrepresented, did present some lengthy narrative, but Mr. Sanders did not object, so he waived this argument on appeal. *See Price v. Kramer*, 200 F.3d 1237, 1252 (9th Cir. 2000) (stating that failure to object to trial testimony waives the argument on appeal). The bankruptcy court's order included certain information relating to Ms. Rives for context, but we disagree that the court displayed an "errant focus" that distracted from the relevant issues.

Mr. Sanders also complains that the bankruptcy court guided Ms. Pette's testimony and improperly prompted her to testify as to facts showing Mr. Sanders' fraudulent intent. He has waived this argument as

11

well because he did not object at trial to the court's questions. Furthermore, it is entirely proper for a court to tell a pro se litigant that she has strayed beyond the issues that are relevant to the case and to direct her back to the right path. The court did not improperly coach or guide Ms. Pette.

C.     **The bankruptcy court did not err in excluding as hearsay three of Mr. Sanders' exhibits.**

Mr. Sanders argues briefly that the bankruptcy court erred in sustaining Ms. Pette's hearsay objections to three of his exhibits. He essentially argues that it was unfair to exclude the exhibits because they evidence his intent or state of mind. We discern no error.

A hearsay statement is defined as one that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Absent an exception, hearsay statements are not admissible in court. *See* Fed. R. Evid. 802.

Exhibit B1 is an e-mail from Mr. Vickers to Mr. Sanders apologizing for being "overwhelmed with emergencies." Exhibits B6 and B7 appear to be signed letters from Mrs. Vickers in which she states that Mr. Vickers made mistakes on Mr. Sanders' bankruptcy documents due to his illness.

There is no dispute that these exhibits contain hearsay statements. They are out-of-court statements by Mr. Vickers and his wife offered to prove the truth of the matter asserted. Although Mr. Vickers has passed

away, Mr. Sanders does not explain why Mrs. Vickers could not testify in person.

Additionally, Mr. Sanders fails to establish any exception to the hearsay rule. There is an exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) . . . ." Fed. R. Evid. 803(3). The proffered documents related only to Mr. Vickers' state of mind. Only Mr. Sanders' mental state was relevant.

## CONCLUSION

The bankruptcy court did not err in entering judgment in favor of Ms. Pette on the § 727(a)(4)(A) claim. We AFFIRM.